KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  rkendall@kbkfirm.com
Laura W. Brill (195889)
  lbrill@kbkfirm.com
Richard M. Simon (240530)
  rsimon@kbkfirm.com
Cassie D. Palmer (268383)
  cpalmer@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   310.556.2700
Facsimile:   310.556.2705

Attorneys for CBS Interactive Inc.
and CNET Networks, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALKIVIADES DAVID, *et al.*,<br><br>               Plaintiffs,<br><br>       v.<br><br>CBS INTERACTIVE INC., CNET NETWORKS, INC.,<br><br>               Defendants. | Case No. CV11-9437 DSF (JCx)<br><br>**NOTICE OF MOTION AND MOTION OF CBS INTERACTIVE INC. AND CNET NETWORKS, INC. TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. Dale S. Fischer<br><br>Date:   April 9, 2012<br>Time:   1:30 p.m.<br>Crtrm.: 840 |

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

MOTION TO DISMISS COMPLAINT

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 9, 2012, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Dale S. Fischer, located in the United States Courthouse, Courtroom 840, 255 East Temple Street, Los Angeles, California 90012, CBS Interactive Inc. and CNET Networks, Inc. ("Defendants") will and hereby do move this Court to dismiss the Plaintiffs' complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 12, 2012.

This Motion is made on the grounds that each of the three claims for relief in the Complaint fails as a matter of law: (1) the Third Claim for Relief, for vicarious copyright infringement, fails because the Complaint does not allege that Defendants possessed the right and ability to control the alleged direct infringement of Plaintiffs' musical works by users of peer-to-peer network services; (2) the Second Claim for Relief, for contributory copyright infringement, fails because the Complaint does not allege that the Defendants had actual knowledge of specific acts of infringement of Plaintiffs' copyrighted works; and (3) the First Claim for Relief, for inducement of infringement, fails because the Complaint does not allege the requisite "purposeful, culpable expression and conduct" by Defendants, as it is not alleged that Defendants induced conduct they knew to be unlawful, that they knew of Plaintiffs' copyrights, or that they promoted the use of their own products to infringe copyrights.

In addition, the Complaint must be dismissed with respect to nineteen of the Plaintiffs,[†] because these Plaintiffs have not alleged that they have obtained copyright registrations for any works alleged to have been infringed, as is required to state a claim for copyright infringement pursuant to the Ninth Circuit's construction of 17 U.S.C. § 411(a).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

1

MOTION TO DISMISS COMPLAINT

1    This Motion is based on this Notice of Motion, the attached Memorandum of

2  Points and Authorities, all of the pleadings, files, and records in this proceeding, all

3  other matters of which the Court may take judicial notice, and any argument or

4  evidence that may be presented to or considered by the Court prior to its ruling.

5

6  Dated:  March 5, 2012                     KENDALL BRILL & KLIEGER LLP

7

8

9                                   By:  _____

10                                          Richard B. Kendall
                                            Attorneys for CBS Interactive Inc.
11                                          and CNET Networks, Inc.

12

13

14

15

16

17

18

19

20

21

22

23
_____
24  † The following nineteen plaintiffs have not alleged registered works alleged to be
    infringed: Solid Productions, Steven Batiz, pka DJ CMS, Tony Bell, pka TC Izlam,
25  Derrick Braxton, Reginald Brooks, member of High Council, Eliza Brown, pka DJ
    Chipman, Oscar Brown, Jonathan Carlton, pka Lord Piff, Dayquan Davis, pka
26  Droptop Slim, member of Square Off, Nacolbie Edwards, pka GLAM.I.ROCK,
    Isaac Freeman, Jr., pka Fat Man Scoop, Mitchell Graham, pka Peso 131, Keith
27  Jones, pka DJ Alamo, Nailah Lamees, pka Nicole Lyles, Gerald Spence, pka Jerry
    Hubcap, Irene Stokes, pka Mama, William Tennyson, Kevin Williams, pka OJ Kev-
28  Ski, Raheem Williams, pka Amen.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5                                     2
                            MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 1

II. BACKGROUND ............................................................................... 3

    A.    Allegations of the Complaint ................................................. 3

    B.    Legal Background .................................................................. 7

III. ARGUMENT ................................................................................. 10

    A.    Legal Standard On A Motion To Dismiss ........................... 10

    B.    Plaintiffs Fail to State A Claim For Vicarious Copyright
          Infringement ......................................................................... 11

          1.    Standard For Vicarious Infringement Liability ......... 11

          2.    Plaintiffs' Vicarious Infringement Claim Fails Because
               Plaintiffs Have Not Alleged That Defendants Have The
               Ability To Supervise Or To Control Infringement By The
               Users Of Peer-to-Peer Services ................................... 13

    C.    Plaintiffs Fail To State Claim A Claim For Contributory
          Infringement ......................................................................... 15

          1.    Standard For Contributory Liability ........................... 15

          2.    Plaintiffs' Contributory Infringement Claim Fails Because
               Plaintiffs Do Not Allege That Defendants Had Actual
               Knowledge Of Specific Acts Of Infringement Of
               Plaintiffs' Works ....................................................... 17

    D.    Plaintiffs Fail To State A Claim For Inducement Of Infringement ...... 19

          1.    Standard For Inducement Liability ............................. 19

          2.    Plaintiffs' Inducement Claim Fails Because Plaintiffs'
               Allegations Do Not Support An Inference Of "Purposeful,
               Culpable Expression And Conduct" By Defendants ............... 20

    E.    The Overbroad Application Of Secondary Liability Sought By
          Plaintiffs Would Constrain Speech Rights ............................ 22

    F.    The Complaint Must Be Dismissed As To Nineteen Plaintiffs
          For Failure To Allege Copyright Registration ...................... 24

IV. CONCLUSION .............................................................................. 25

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

## <u>CASES</u>

5

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001).................................................................passim

6

*Adobe Systems Inc. v. Canus Productions, Inc.*,
7   173 F. Supp. 2d 1044 (C.D. Cal. 2001)...........................................................14

8

*Arista Records LLC v. Lime Group LLC*,
715 F. Supp. 2d 481 (S.D.N.Y. 2010).............................................................16

9

*Ashcroft v. Iqbal*,
10   556 U.S. 662, 129 S. Ct. 1937 (2009)................................................10, 11, 13

11

*Balistreri v. Pacifica Police Department*,
901 F.2d 696 (9th Cir. 1988).............................................................................10

12

*Bartnicki v. Vopper*,
13   532 U.S. 514 (2001)............................................................................................23

14

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)............................................................................................10

15

*Columbia Pictures Indusustries, Inc. v. Fung*,
16   No. CV 06-5578 SVW (JCx), 2009 WL 6355911
(C.D. Cal. Dec. 21, 2009).................................................................................16

17

*Compuware Corp. v. Moody's Investors Services, Inc.*,
18   499 F.3d 520 (6th Cir. 2007)............................................................................23

19

*Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*,
606 F.3d 612 (9th Cir. 2010)............................................................................25

20

*First Equity Corp. v. Standard & Poor's Corp.*,
21   690 F. Supp. 256 (S.D.N.Y. 1988)...................................................................23

22

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
443 F.2d 1159 (2d Cir. 1971)...........................................................................15

23

*Global-Tech Appliances v. SEB S.A.*,
24   563 U.S. __, 131 S. Ct. 2060 (2011).........................................................passim

25

*Harper & Row Publishers Inc. v. Nation Enterprises*,
471 U.S. 539 (1985)............................................................................................22

26

*Hurley v. Irish-American Gay Group of Boston*,
27   515 U.S. 557 (1995)............................................................................................23

28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

ii

*IO Group, Inc. v. Veoh*,
    586 F. Supp. 2d 1132 (N.D. Cal. 2009) ....................................................11, 12

*Jefferson County School District No. R-1 v. Moody's Investor's Services, Inc.*,
    175 F.3d 848 (10th Cir. 1999) ..........................................................................23

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ..........................................................................10

*Luvdarts LLC v. AT&T Mobility, LLC*,
    No. CV 10-05442 DDP (RZx), 2011 WL 997199
    (C.D. Cal. Mar. 17, 2011) ...........................................................................12, 20

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
    629 F.3d 928 (9th Cir. 2010) *amended* Feb. 17, 2011 ..............................10, 25

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    380 F.3d 1154 (9th Cir. 2004), *rev'd* 545 U.S. 913 (2005) .......................9, 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006)................................................................9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................................*passim*

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007)................................................................*passim*

*Perfect 10, Inc. v. Visa International Service Association*,
    494 F.3d 788 (2007) ...................................................................7, 11, 12, 14

*Reed Elsevier Inc. v. Muchnik*,
    __ U.S. __, 130 S.Ct. 1237 (2010) ..................................................................24

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ...............................................................15

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Board*,
    502 U.S. 105 (1991) .........................................................................................23

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...............................................................................*passim*

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    667 F.3d ___, 2011 WL 6357788 (9th Cir. Dec. 20, 2011).................9, 12, 16

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
    No. C-10-4458 EMC, 2011 WL 4079231
    (N.D. Cal. Sept. 12, 2011)...............................................................................11

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

MOTION TO DISMISS COMPLAINT

**STATUTES**

112 Stat. 2860 (Oct. 28, 1998) (Digital Millennium Copyright Act)..........................8

17 U.S.C. § 411...........................................................................................................24

17 U.S.C. § 512...........................................................................................................11

35 U.S.C. § 271.............................................................................................................7

**OTHER AUTHORITIES**

Bill Keller, *Steal This Column*,
    N.Y. Times, Feb. 6, 2012, at A23 ......................................................................8

Mark A. Lemley, *et al.*,
    Introduction to Professors' Letter in Opposition to [PIPA],
    Nov. 15, 2011 .....................................................................................................8

Protect IP Act (PIPA),
    S. 968, 112th Cong. (2011) ................................................................................8

Stop Online Piracy Act (SOPA),
    H.R. 3261, 112th Cong. (2011) .........................................................................8

**RULES**

Central District Local Rule 3-1..................................................................................25

Federal Rule of Civil Procedure 12(b)(6)............................................................10, 12

**Kendall Brill
& Klieger LLP**

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This lawsuit marks an unprecedented attempt to expand the law of copyright infringement to impose liability not on direct copyright infringers, nor on alleged secondary infringers (such as a peer-to-peer ("P2P") file-sharing service that end-users may use to commit acts of direct infringement), but rather on alleged tertiary infringers that operate comprehensive informational websites (CNET and download.com) offering descriptions, analysis, ratings, and web links to an enormous range of software products and services.

The liability that Plaintiffs seek to impose is not based on any allegation that Defendants directly copied Plaintiffs' works, or, for that matter, on allegations that any primary infringers – which the Complaint identifies as "unemployed college students and housewives" – used CNET or download.com to make or disseminate unauthorized copies of Plaintiffs' works.  Plaintiffs do not claim that CNET is itself a P2P service or a repository of unauthorized copies.  On the contrary, the crux of Plaintiffs' claims is that by listing P2P file-sharing services in the CNET directory and by providing editorial reviews and links to the services on download.com, Defendants are liable for any copyright infringement carried out by end users of such unaffiliated third-party file-sharing services.

This theory of tertiary liability does not fall within any class of secondary infringement that the courts have recognized to date.  Instead, it is an expansion of liability that has never been recognized and that would create grave uncertainties for writers and publishers – including search engines, web encyclopedias, blogs and most technology journalists – that seek to communicate truthful information about emerging technologies including P2P file-sharing services.

Neither Congress nor the courts have ever designated all P2P file sharing services as *per se* unlawful.  *See infra* p. 8; *see also* Complaint ("Compl.") ¶ 154

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

(noting existence of "P2P clients who operate legally").  Indeed, Congress and the courts have recognized that P2P technology that enables internet users to share files, including their own works, public domain works, and licensed media files, is one of the great benefits of the digital age.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 920 (2005) ("*Grokster*") (describing "benefits in security, cost, and efficiency").

Despite this, Plaintiffs seek to impose liability for conduct far removed from any act of direct infringement of any of Plaintiffs' works and without alleging the predicate facts that both the Ninth Circuit and Supreme Court require to support claims of secondary (or in this case, tertiary) infringement liability.  Under the new expansive tort that Plaintiffs ask the Court to create, numerous restrictions that courts have consistently placed on secondary liability would be eliminated:

- The Complaint does not allege that Defendants control or have the ability to control any act of direct infringement.  Such control, however, has always been the hallmark and necessary basis for liability for vicarious copyright infringement.  *See infra* pp. 11-14.

- The Complaint does not allege that Defendants know of any specific act of infringement by end users.  Yet, where a product is capable of substantial non-infringing uses, as here, such knowledge is required as a basis for contributory liability of the kind addressed in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), and *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ("*Napster*").  *See infra* pp. 15-18.

- The Complaint does not allege that Defendants knew that their activities, linking to and reviewing P2P services, were unlawful, or that they knew about or targeted Plaintiffs' copyrights, or that they promoted the use of their own websites specifically to infringe copyrights.  The "inducement rule . . . premises liability on purposeful culpable expression and conduct," *Grokster*, 545 U.S. at 937, and the Supreme Court has recently affirmed that knowledge

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

2

MOTION TO DISMISS COMPLAINT

of one's unlawful conduct is required for the requisite culpable intent for an inducement claim. *Global-Tech Appliances v. SEB S.A.*, 563 U.S. __, 131 S. Ct. 2060, 2066-67 (2011) (describing consistency between knowledge requirements in the patent law and culpable intent requirement in *Grokster*).

- The Complaint admits that not all P2P services are secondary infringers and acknowledges that Defendants have ceased linking to P2P services that a court has determined to be unlawful. Compl. ¶¶ 12, 89. The Complaint does not allege that Defendants knew facts necessary to determine that P2P services they describe and link to are secondary infringers or that Defendants promoted any such service after knowing that the P2P service was unlawful.

- Plaintiffs cannot reconcile imposing liability on information service providers like Defendants (as opposed to product manufacturers or sellers) with principles of freedom of expression and the Supreme Court's guarantee in *Grokster* that inducement liability will do "nothing to compromise legitimate commerce or discourage innovation having a lawful promise." *Grokster*, 545 U.S. at 937.

No court has ever gone as far as Plaintiffs request in imposing liability on third-party informational websites and linking services like Defendants'. This Court should not be the first.

## II.

## BACKGROUND

### A.   Allegations of the Complaint

CNET is a popular technology media website network that publishes news articles, blogs, reviews, and podcasts about technology, software, and consumer electronics. *See generally* http://www.cnet.com. Download.com is one of CNET's websites, and is, as the Complaint admits, the world's largest comprehensive software directory and rating service, providing reviews, ratings, and download links for a vast range of third-party software, including "software of all types."

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

3

MOTION TO DISMISS COMPLAINT

Compl. ¶¶ 1, 117; *see generally* http://www.download.com.  CNET and download.com are owned and operated by Defendant CBS Interactive, Inc.[1]  Among hundreds of thousands of products listed in the download.com directory, a tiny fraction are alleged to be third-party client software used to install and join certain P2P file-sharing services, such as Frostwire (*www.frostwire.com*), BitComet (*www.bitcomet.com*), BitTorrent (*www.bittorrent.com*), and µTorrent (*www.utorrent.com*).  *See, e.g.*, Compl. ¶ 101.  It is undisputed that P2P file-sharing services can operate without violating copyright law, *id.* ¶ 154, and that CNET and download.com have removed the P2P client software, such as the LimeWire software, from the download.com directory immediately after a federal district court judge held that LimeWire was liable for inducing copyright infringement.  *Id.* ¶¶ 89 & 110.  The Complaint admits that download.com and CNET offer "legitimate" services as one of the "most heavily visited sites in the world" providing download support for "non-infringing licensed software such as Quickbooks accounting software or Adobe Acrobat."  *Id.* ¶ 1.

As alleged in the Complaint, Plaintiffs are several dozen individual owners of copyrights in musical works.  Compl. ¶¶ 18-78.[2]  One of the Plaintiffs, Alkiviades David, is also the owner of the website FilmOn.com.  FilmOn is currently defending a lawsuit filed by a number of broadcasting companies (including Defendants' sister company) concerning FilmOn's business of re-transmitting their transmissions to FilmOn's paid subscribers.  *Id.* ¶ 5.  David organized the Plaintiffs to pursue this lawsuit in apparent retaliation for that action.  *See id.*

---

[1] The Court may take judicial notice of the fact that defendant "CNET Networks, Inc." is no longer an operating entity, having changed its name to CBS Interactive Inc. in early 2009 following the acquisition of CNET by CBS Corporation.  *See* Fed. R. Evid. 201; CBS Corp. Form 10-Q, dated Aug. 6, 2009, *available at* www.sec.gov/edgar (Central Index Key: 0000813828).

[2] Nineteen of the fifty-seven plaintiffs fail to allege that they have registered copyrights, and the Complaint must be dismissed as to them.  *See infra* p. 24.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

4

1    The Complaint asserts three claims for indirect copyright infringement: (1)

2    inducement of infringement; (2) contributory infringement; and (3) vicarious

3    infringement.  Despite fifty pages of discursive allegations, the three claims for

4    relief are essentially predicated on a sole conclusory assertion found in the final

5    paragraph of the general allegations: namely, that "Plaintiffs' copyrighted works

6    were and are available on P2P file sharing networks developed, distributed and

7    promoted by Defendants."  Compl. ¶ 149.[3]

8        Beyond this threadbare assertion, however, there are no substantive

9    allegations anywhere in the preceding one hundred and forty-eight paragraphs that

10   Defendants "developed" P2P software, and there are no allegations that CNET or

11   download.com owned or operated any P2P network or software.  There is no

12   allegation that the copyrighted work of any particular Plaintiff (let alone any

13   particular song) is available on, or was infringed by means of, any particular P2P

14   network.  And it is not alleged when any particular infringement might have

15   occurred, who the primary infringer(s) may have been, and whether they were the

16   same persons who obtained the P2P software via download.com.

17       The Complaint also does not allege that Defendants were aware of the

18   existence of any of the Plaintiffs' works or aware of any infringement of Plaintiffs'

19   works.  There is no allegation that Plaintiffs ever notified Defendants of any

20   instances of alleged infringement of their works or of the availability of their songs

21   on P2P networks.  Plaintiffs also do not allege that they ever sent formal takedown

22   notices or even informal requests to any of the P2P networks that are alleged to be

23   tools of infringement, let alone to Defendants.  And while the Complaint

24   conclusorily claims that Defendants had the ability to "control" infringement, the

25   ─────────────────

26       [3] Plaintiffs mis-describe P2P file-sharing services.  As explained by the
     Supreme Court in *Grokster* (and central to its analysis), music and other files are not

27   stored "on" P2P networks; instead, P2P services allow users to locate other users
     and to directly share files with them through the internet.  545 U.S. at 921.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Complaint recognizes that the extent of this "control" is the ability to "refuse to list" or to de-list P2P client software from the download.com directory.  *Id.* ¶ 109.  What Plaintiffs do not allege, and what they cannot allege, is that Defendants have any ability actually to identify, to monitor, to control, or to limit acts of infringement accomplished through the P2P networks, which are wholly independent of Defendants.[4]  And although it is alleged that Defendants can remove P2P client software or refuse to list it, it also is acknowledged in the Complaint that P2P networks are *not* unlawful as a whole.  *Id.* ¶ 154 (referring to "P2P clients who operate legally"); *see also id.* ¶ 7 (Gnutella protocol "survived the court decision" against LimeWire).

Many of the allegations in the Complaint, insofar as they are directed at Defendants' conduct (as opposed to the practices of the various P2P services which are not named in the lawsuit), are merely an assemblage of selectively-quoted statements published by CNET editors and journalists over a ten-year period covering developments in the software industry.  Many of the excerpts quoted in the Complaint come from news reporting pieces on CNET.com, which cannot reasonably be understood as commercial advertising or promotions.  Many of them predate the Supreme Court's *Grokster* decision, and thus arose during a time when P2P file-sharing was expressly held to be lawful in the Ninth Circuit.  *See, e.g.*, Compl. ¶ 10 (Mar. 29, 2001 CNET article); ¶ 102 (Jan. 5, 2005 CNET article); ¶ 135 (Feb. 1, 2002 comparison piece); ¶ 138 (Oct. 18, 2000 ZDNet.com article).  In addition to these news articles, the Complaint also quotes selectively from the CNET editors' software reviews, which necessarily involved testing the P2P

---

[4] Even after installing a P2P client, a user must find and download the actual files, legal or otherwise, that she wishes to share, with aid of a search engine.  *See* Compl. ¶ 100 ("A simple [G]oogle search of 'torrent music' yields a half billion results and page after page of websites providing copyrighted music and movies via torrent").  This process is wholly disparate in time and manner from the act of downloading the P2P client software itself and is not alleged to involve Defendants.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

6

MOTION TO DISMISS COMPLAINT

services and commenting on their functionality for sharing files.  *See, e.g.*, *id.* ¶¶ 127-33.  The Complaint does not allege that any of these articles and reviews is false or misleading, or that Defendants knew the P2P services being reviewed were unlawful at the time of the reviews.  In essence, and taking the substantive allegations of the Complaint as true, Plaintiffs' legal theory is that Defendants, by offering truthful descriptions, evaluations, and links to lawful P2P software, are liable for U.S. copyright law violations by end-users of that software.

**B.    <u>Legal Background</u>**

"The U.S. Copyright Act does not expressly render anyone liable for infringement committed by another."  *Sony Corp.*, 464 U.S. at 434.  Over the decades, courts have developed three discrete (although sometimes confused) doctrines for holding certain parties liable for infringement committed by others: vicarious, contributory, and inducement liability.  The scope of each doctrine has been carefully circumscribed in light of the lack of express authorization by Congress.  In its 1984 decision in *Sony*, for example, the Supreme Court recognized the "reluctance" of the judiciary "to expand the protections afforded by the copyright without explicit legislative guidance" in view of the "settled" principle "that the protection given to copyrights is wholly statutory."  *Id.* at 417.  The Court expressed the need to be "circumspect in construing the scope of rights," in cases in which "Congress has not plainly marked our course."  *Id.* at 431.

In defining the scope of secondary liability, courts have drawn on  common law principles of imputed liability, as well as frameworks for secondary liability for patent infringement under the Patent Act, 35 U.S.C. § 271.  *See Sony*, 464 U.S. at 435, 437 n.18, 440-42 (discussing 35 U.S.C. § 271(b) & (c)); *Grokster*, 545 U.S. at 932-37 & nn.10 & 11 (citing *Sony* and 35 U.S.C. §§ 271(b) & (c) and discussing patent cases); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-95 (2007), *cert. denied*, 128 S Ct. 2871 (2008) ("*Perfect 10-Visa*").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

7

MOTION TO DISMISS COMPLAINT

Since the blossoming of the Internet over the past fifteen years, Congress has been actively involved in addressing issues of digital piracy and how to balance the interests of copyright holders with the interests of technological advancement.  *See, e.g.*, Digital Millennium Copyright Act (DMCA), 112 Stat. 2860 (1998), *codified at, inter alia*, 17 U.S.C. §§ 512, 1201-05, 1301-32.  No act of Congress, however, has either expressly or by implication authorized liability under circumstances such as those alleged in the Complaint.  On the contrary, one of the professed concerns of some opponents of the recently proposed and abandoned antipiracy legislation – Stop Online Piracy Act, H.R. 3261, 112th Cong. (2011) ("SOPA") and the Protect IP Act of 2011, S. 968, 112th Cong. (2011) ("PIPA") – was whether the legislation might "make YouTube, Google, and numerous other web sites liable for copyright infringement."[5]

In the judicial arena, no court has come close to imposing liability of the kind proposed in this action.  *Grokster* is the centerpiece of the Complaint because it was in *Grokster* that the *potential* liability of a P2P service for acts of copyright infringement by its users was first recognized.  Before *Grokster*, however, P2P services (in contrast to direct download services like Napster) had been exonerated under the *Sony* rule because of their substantial non-infringing uses and their

_____

[5] Mark A. Lemley, *et al.*, Introduction to Professors' Letter in Opposition to [PIPA], Nov. 15, 2011, *available at* https://www.cdt.org/files/pdfs/ SOPA_House_letter_with_PROTECT_IP_letter_FINAL.pdf.

The New York Times recently reported that Wikipedia's founder was fearful that "a site like Wikipedia could be punished because its very informative article about the aptly named site 'Pirate Bay' includes a link to the offending destination," although the report noted, "[t]hat kind of prosecutorial overkill seems unlikely, but it would be appalling."  Bill Keller, *Steal This Column*, N.Y. Times, Feb. 6, 2012, at A23, *available at* http://www.nytimes.com/2012/02/06/opinion/steal-this-column.html.  Warranted or not, the response to the prospect of liability predicated on describing and linking to infringing websites (whether by an ad-driven search engine like Google or user-generated resources like Wikipedia) is a clear indication that the liability Plaintiffs seek to impose is far-reaching and unprecedented.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  inability to supervise direct infringement.  *Metro-Goldwyn-Mayer Studios Inc. v.*
2  *Grokster, Ltd.*, 380 F.3d 1154, 1164 (9th Cir. 2004), *rev'd* 545 U.S. 913 (2005).

3  　　　Yet secondary liability after *Grokster* is not nearly as broad as Plaintiffs
4  would have it.  The Supreme Court made clear that it was dealing only with the
5  discrete facts before it concerning particular Grokster and StreamCast services,
6  which had won summary judgment below, and that it was *not* prepared to declare all
7  P2P software unlawful.  545 U.S. at 921-22 nn.3 & 4 (noting products not at issue);
8  *id.* at 948 (Ginsburg, J., concurring) ("this case is not about" "uses of peer-to-peer
9  technology generally").  Indeed, defendants Grokster and KaZaA settled on remand
10  without an adjudication of the merits.  *Metro-Goldwyn-Mayer Studios Inc. v.*
11  *Grokster, Ltd.*, 454 F. Supp. 2d 966, 971 (C.D. Cal. 2006).  It simply is not the case
12  that there is now or ever has been an open indictment against all P2P services.

13  　　　Moreover, *Grokster* involved allegations that the defendants had designed
14  *their own product* for the specific purpose of infringement, 545 U.S. at 925-26, and
15  thus the Court had no occasion to address how theories of secondary liability might
16  apply in other circumstances.  The cases that have involved efforts to expand
17  *Grokster* to tertiary actors have failed on the pleadings.  *See*, *e.g.*, *Perfect 10 -Visa*,
18  494 F.3d 788 (credit card companies offering payment services to various websites
19  not liable for infringement occurring on those sites with their knowledge); *UMG*
20  *Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d __, 2011 WL 6357788,
21  at *20 (9th Cir. 2011) ("*Shelter Capital* (*Veoh*)") (investors controlling board of
22  video-posting site not liable for acts of infringement said to occur on that site with
23  their knowledge).

24  　　　*Grokster* also involved allegations that the defendants had actual knowledge
25  that millions of infringing files of the plaintiffs' works were available through their
26  services.  *Id.* at 936 ("[M]ere knowledge of infringing potential or of actual
27  infringing uses would not be enough"); *id.* at 923 (plaintiffs had notified defendants
28  "of 8 million copyrighted files that could be obtained using their software"); *id.* at

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

9

MOTION TO DISMISS COMPLAINT

947 n.3 (Ginsburg, J., concurring) (vast majority (75%) of files available through Grokster were of the plaintiffs' copyrighted works); *id*. at 952 (Breyer, J., concurring) (same).  As described further below, *Grokster* does not recognize potential liability on the facts alleged here, and dismissal is required.

**III.**

**ARGUMENT**

**A.    Legal Standard On A Motion To Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  Dismissal is appropriate where the allegations of a claim do not establish a cognizable legal theory or fail to allege facts that would support such a theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept as true all of the well-pleaded allegations of the complaint, this rule "is inapplicable to legal conclusions."  129 S. Ct. at 1949.  Thus, a complaint that merely offers "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to survive a motion to dismiss.  *Id*. (quoting *Twombly*, 550 U.S. at 557).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are likewise insufficient.  *Id*.  The "plausibility standard . . . asks for more than the sheer possibility that a defendant has acted unlawfully."  *Id*.  Courts should dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

In order to state a claim for secondary liability for copyright infringement, a plaintiff must also competently allege underlying direct infringement for which defendants are liable.  *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir. 2010) *amended* Feb. 17, 2011; *Napster*, 239 F.3d at 1013 n.2.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

10

MOTION TO DISMISS COMPLAINT

Moreover, where culpable intent is an element of liability, as is the case under a theory of inducement liability, *infra* p.19, conclusory allegations of such intent or knowledge are insufficient to sustain a claim. *Iqbal*, 129 S. Ct. at 1953-54; *Global-Tech*, 131 S. Ct. at 2066-67 (as embraced in *Grokster*, inducement liability requires that defendant had knowledge that induced activity constitutes infringement); *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 4079231, at *5-6 (N.D. Cal. Sept. 12, 2011) (citing *Global-Tech* and granting motion to dismiss "for failure to plead nonconclusory facts establishing a plausible claim of knowledge").

**B.    Plaintiffs Fail to State A Claim For Vicarious Copyright Infringement**

**1.    Standard For Vicarious Infringement Liability**

Vicarious liability for copyright infringement recognizes that under a narrow set of circumstances one party may be held liable for infringement carried out by another.  "[V]icarious [copyright] infringement's roots lie in the agency principles of *respondeat superior*," and, as such, the hallmark of the doctrine is the nexus of control between the two parties.  *Perfect 10-Visa*, 494 F.3d at 802.  To state a claim for vicarious liability, a plaintiff must adequately allege two elements: (1) that the defendant has the right and ability to supervise the infringing conduct; and (2) that the defendant has a direct financial interest in the infringing activity.  *Sony Corp.*, 464 U.S. at 437-38 & n.18; *Perfect 10-Visa*, 494 F.3d at 802.

With respect to the first element, "a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("*Perfect 10-Amazon*").  The control is specific to the acts of infringement: "the defendant must have the right and ability to supervise and control the infringement, not just affect it."  *IO Group, Inc. v. Veoh*, 586 F. Supp. 2d 1132, 1154 (N.D. Cal. 2009) (citing *Perfect 10 - Visa*, 494 F.3d at 802-05, and applying to analysis of DMCA § 512(c) safe harbor).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

11

MOTION TO DISMISS COMPLAINT

Thus, in *Perfect 10 - Amazon*, the Ninth Circuit affirmed that a search engine did not vicariously infringe by linking to copies of infringing works on third-party websites, because search engines typically have no legal right or practical ability to stop or limit the third parties' direct infringement.  508 F.3d 1146, 1174 ("Without image-recognition technology, Google lacks the practical ability to police the infringing activities of third-party websites.  This distinguishes Google from the defendants held liable in *Napster* and *Fonovisa*."); *see also IO Group*, 586 F. Supp. 2d at 1153 (video hosting site's "spot checks" and removal of infringing videos insufficient control to negate DMCA safe harbor:  "Veoh's right and ability to control its system does not equate to the right and ability to control infringing activity").

A critical consequence of the control requirement is that it is difficult to conceive of the situation in which a party with a *tertiary* relationship to the infringement has a sufficient identity of interest with the *primary* infringer to establish vicarious liability.  Indeed, such liability has been rejected in each of the cases featuring a degree of separation, even if not framed in such terms.  *See, e.g.*, *Perfect 10 - Amazon*, 508 F.3d at 1173-75 (affirming denial of preliminary injunction under vicarious liability theory due to lack of showing that Google had ability to limit third-party websites from reproducing or displaying plaintiff's images); *Perfect 10 - Visa*, 494 F.3d at 803 (affirming dismissal of vicarious infringement claim against companies providing payment services to third-party piracy and file-sharing websites); *Shelter Capital (Veoh)*, 667 F.3d __, 2011 WL 6357788, at *20 (affirming dismissal of vicarious infringement claim against controlling investors in video-sharing site); *Luvdarts LLC v. AT&T Mobility, LLC*, No. CV 10-05442 DDP (RZx), 2011 WL 997199, at *3 (C.D. Cal. Mar. 17, 2011) (holding wireless carriers not vicariously liable for infringing content with multimedia text messages transmitted over their network and granting Rule 12(b)(6) motion to dismiss).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

12

MOTION TO DISMISS COMPLAINT

**2.      Plaintiffs' Vicarious Infringement Claim Fails Because Plaintiffs Have Not Alleged That Defendants Have The Ability To Supervise Or To Control Infringement By The Users Of Peer-to-Peer Services**

The Complaint does not even attempt to allege that the Defendants have the right and ability to control any directly infringing conduct, which is fatal to Plaintiffs' Third Claim for Relief for vicarious infringement.  Although Plaintiffs parrot the legal conclusion that Defendants have "the right and ability to control and/or supervise the infringing conduct (either by direct contractual relation and/or as a matter of practical control)," Compl. ¶ 167, the Complaint contains no factual allegations that support this claim.[6]  *Iqbal*, 129 S. Ct. at 1949.

It is not alleged, for example, that CNET and download.com host or index copies of Plaintiffs' works.  Indeed, unlike Google in *Perfect 10-Amazon*, it is not even alleged here that CNET and download.com can be used *to find* copies of Plaintiffs' works.  Someone who wants to download a copy of Plaintiff Doug E. Fresh's song "Bustin' Out," for example, is not going to find the song on the download.com website or by using download.com.  Even assuming the person obtains P2P software through download.com, he would need at some later time to find the "Bustin' Out" file and copy it through the P2P network.  *See* Compl. ¶ 100.  There is not a single allegation that Defendants exercise *any* control over, indeed that they even can identify, those who use the service to find infringing files.

Plaintiffs dodge this gaping defect altogether by ignoring Defendants' lack of control over primary infringers and focusing on Defendants' putative control of the

---

[6] Although Defendants need not address the "direct financial benefit" element given Plaintiffs' inability to satisfy the "control" element, *see Perfect 10-Amazon*, 487 F.3d 731 n.15, it is worth noting that Plaintiffs' speculative allegation (on "information and belief") that download.com was "paid per download" for P2P software downloads, Complaint ¶ 110, is simply wrong.  Even taking the allegation as true, any benefit from the download of P2P software would not show a "direct financial benefit" from infringement of Plaintiffs' copyrights.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   P2P services.  *See, e.g.*, Compl. ¶ 109 ("Download.com possessed the ability to

2   refuse to list the publisher's software . . . ."); ¶ 149 (Defendants had control through

3   "their ability to cut off distribution of P2P clients").  But the law is clear that the

4   ability to block or remove links to P2P client software altogether is not sufficient

5   control.  *See Perfect 10-Amazon*, 506 F.3d at 1174-75 (search provider's ability "to

6   avoid indexing websites with infringing content and linking to third-party infringing

7   sites" insufficient); *Perfect 10-Visa*, 494 F.3d at 805-06 (credit card companies'

8   ability to withhold services, making infringement unviable, insufficient).

9        Indeed, Plaintiffs have not even alleged that the P2P services themselves

10  exercise the requisite control of direct infringement to be vicariously liable, and

11  there is no basis in the Complaint to draw any such inference.  *See, e.g.*, Compl. ¶¶ 7

12  n.1, 102 (explaining how P2P networks are decentralized and self sustaining).

13  Indeed, in the *Grokster* litigation, the Ninth Circuit affirmed summary judgment for

14  Grokster on vicarious liability precisely because of the decentralized P2P networks'

15  lack of control.  380 F.3d at 1165;[7] *accord Sony*, 464 U.S. at 418 ("the only contact

16  between petitioners and the users of the VTR's occurred at the moment of sale");

17  *Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1055 (C.D. Cal. 2001)

18  (holding no vicarious liability where computer fair operator lacked "identity of

19  interest" and "pervasive participation" with infringing vendors).

20       Simply put, Plaintiffs have not and cannot allege that Defendants had the right

21  and ability to identify or supervise, let alone stop, primary infringers from sharing

22  allegedly infringing recordings on third-party P2P networks.  The third claim fails as

23  a matter of law.

---

25  [7] When the Supreme Court reversed the grant of summary judgment in
26  *Grokster* on the issue of inducement, it did not squarely address vicarious liability,
    *see* 545 U.S. at 931 n.9, and the issue was not considered on remand.  Nothing in
27  more recent Ninth Circuit or Supreme Court decisions suggests that the standards
    governing vicarious liability for copyright infringement have changed.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5
14
MOTION TO DISMISS COMPLAINT

C.    **Plaintiffs Fail To State Claim A Claim For Contributory Infringement**

    1.    **Standard For Contributory Liability**

Contributory liability for copyright infringement is a theory that developed in the Second Circuit in the 1960s.  Contributory liability arises from the common law principle that "one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor."  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Perfect 10-Amazon*, 508 F.3d at 1171 (quoting same).

As technology has evolved, courts have recognized important limitations on the scope of contributory liability.  Significantly, in 1984 the Supreme Court examined whether U.S. copyright law could impose liability on Sony based on allegations that its Betamax machine could be used by third parties for infringement.  Following the example of patent law, under which contributory liability cannot be based on the distribution of staple articles of commerce that have non-infringing uses, the Court held that the "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes.  Indeed, *it need merely be capable of substantial noninfringing uses*."  464 U.S. at 442 (emphasis added).  Moreover, although it was alleged that Sony knew its machine was widely used for infringement, the Court refused to impute knowledge of specific acts of infringement in light of the legitimate uses.  *Id.*

The Ninth Circuit addressed contributory liability in the context of internet file-sharing in its 2001 decision in *Napster*, holding that "in an online context, evidence of *actual knowledge of specific acts of infringement* is required to hold a computer system operator liable for contributory infringement."  239 F.3d at 1021 (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1371 (N.D. Cal. 1995)).  In *Napster*, the Ninth Circuit upheld a preliminary injunction despite Napster's potential for non-infringing use, but did so in light of

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

15

MOTION TO DISMISS COMPLAINT

significant evidence of Napster's "actual knowledge that specific infringing material is available using its system, that it could block access to the system by suppliers of the infringing material, and that it failed to remove the material," including specific notice of "12,000 infringing files." *Id.* at 1021-22 & n.6.  The Court cautioned that "absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material." *Id; see also id.* at 1021 ("We are bound to follow *Sony*, and will not impute the requisite level of knowledge to Napster merely because peer-to-peer file sharing technology may be used to infringe plaintiffs' copyrights.").

These limitations on contributory liability continue to be the law following the Supreme Court's decision in *Grokster*, as has been recognized by the Ninth Circuit on several occasions, including in the *Perfect 10* cases and more recently in the *Veoh* appeal.  *See, e.g.*, *Perfect 10-Amazon*, 508 F.3d at 1171-72 & n.11 (noting that Google could not be held liable under *Grokster* because it did not induce infringement and that in order to proceed under pre-*Grokster* caselaw, including *Napster*, the plaintiff would have to show, among other things, that Google "had knowledge that infringing . . . images [of plaintiff's works] were available using its search engine") (quoting *Napster*, 239 F.3d at 1022); *see also Shelter Capital (Veoh)*, 2011 WL 6357788, at *20.[8]

_____

[8] "Inducement" liability, the form of secondary liability imposed in *Grokster*, has confusingly been described by courts alternately (a) as a distinct theory of liability, separate from contributory infringement, and also (b) as a subset of a larger category of contributory liability along with "material contribution" (*e.g.*, *Napster*). The approaches are different only in terminology, and courts following both taxonomies recognize and apply distinct elements to the alternate theories. *See Arista Records LLC v. Lime Grp. LLC*, 715 F. Supp. 2d 481, 508 & 525 (S.D.N.Y. 2010), opinion withdrawn and superseded, 784 F. Supp. 2d 398 (S.D.N.Y. 2011); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCx), 2009 WL 6355911, at *7-8 (C.D. Cal. Dec. 21, 2009).  The Complaint follows the former

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

16

MOTION TO DISMISS COMPLAINT

Thus, following *Sony* and *Napster* and binding Ninth Circuit precedent since *Grokster*, when a defendant's product has substantial non-infringing uses, the plaintiff alleging contributory infringement must establish that the defendant had knowledge of specific acts of direct infringement of the plaintiff's works.

### 2. Plaintiffs' Contributory Infringement Claim Fails Because Plaintiffs Do Not Allege That Defendants Had Actual Knowledge Of Specific Acts Of Infringement Of Plaintiffs' Works

The Second Claim for Relief asserts that Defendants are contributorily liable for infringement because they "have knowledge of the massive infringement that has occurred and continues to occur through P2P client software that they created, distributed and promoted." Compl. ¶ 160. As noted above, there are no allegations supporting the assertion that defendants "created" P2P network software, and Defendants also dispute that publishing an online directory with reviews and web links for free third-party software may justly be categorized as "distribution" or "promotion." Setting these issues aside, however, the Complaint fails to state a claim for contributory infringement for the simple reason that the Complaint does not allege that Defendants have *actual knowledge* of *specific acts* of infringement of Plaintiffs' works. *Perfect 10 -Amazon*, 508 F.3d at 1172; *Napster*, 239 F.3d at 1022.

The Complaint claims that "actual and constructive" "knowledge of infringement" may be inferred based on user comments posted on CNET and download.com and reviews, side-by-side comparisons, and product demonstrations by CNET editors wherein copyrighted songs (of non-parties) were allegedly used as test bogies. Compl. ¶¶ 135, 161. Yet none of this alleged activity, even when taken as true and as characterized by Plaintiffs, has anything to do with specific instances

(footnote continued)
approach. For convenience and to avoid confusion, so does this Motion. References to "contributory liability" in this Motion refer to the species of liability recognized in *Sony* and *Napster*. References to "inducement" refer to the type of liability recognized in *Grokster*.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

17

MOTION TO DISMISS COMPLAINT

of infringement of Plaintiffs' works.  To wit, the Complaint does *not* allege that (1) Defendants knew of the existence of Plaintiffs' songs; (2) Defendants knew of any infringement targeting Plaintiffs' songs; (3) Defendants knew or could have known anything about the primary infringers, including their identity; (4) there existed any means for Defendants to learn whether and what infringement was taking place on the P2P networks; (5) there existed any way for Defendants to purge or control specific instances of infringement on P2P networks; or (6) Plaintiffs ever gave notice of infringement to Defendants or to any of the P2P networks (as was done in both *Napster* and *Grokster*).  Under these circumstances and in stark contrast to *Napster*, the Complaint does not support an inference that Defendants knew of any specific act of direct infringement; indeed, given that Defendants' alleged involvement with P2P networks does *not* include *operation* of those networks, the opposite inference is far more plausible.

Indeed, rather than attempting in vain to meet an insurmountable pleading hurdle, Plaintiffs appear to be trying to allege constructive knowledge predicated on alleged knowledge of pervasive general infringement.  Compl. ¶ 161.  But this is precisely what the Supreme Court rejected in *Sony*.  464 U.S. at 417 & 439 (finding "no precedent in the law of copyright for the imposition of" liability based on the theory that the defendant had "sold equipment with constructive knowledge of the fact that their customers may use that equipment to make unauthorized copies of copyrighted material" so long as the product is "capable of substantial noninfringing uses"); *see also Grokster*, 545 U.S. at 932-33 (as distinct from the inducement theory, "the [contributory infringement] doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses").  Here, Plaintiffs admit facts showing that CNET and download.com, as well as the P2P networks, have substantial non-infringing uses.  Compl. ¶¶ 1, 154.

The black letter rule is a bright line: "absent any specific information which identifies infringing activity, a computer system operator cannot be liable for

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

18

MOTION TO DISMISS COMPLAINT

contributory infringement merely because the structure of the system allows for the exchange of copyrighted material." *Napster*, 239 F.3d at 1022.  Defendants are not alleged to have the requisite degree of knowledge for contributory liability, and the contributory infringement claim thus fails as a matter of law.

**D.**     **Plaintiffs Fail To State A Claim For Inducement Of Infringement**

     **1.**     **Standard For Inducement Liability**

     In *Grokster* the Supreme Court responded to the situation where evidence of a defendant's culpable intent to cause acts of copyright infringement was abundantly clear, but where the defendant might not have had the requisite knowledge of specific acts of infringement to support contributory liability under *Napster*. Drawing again from patent law's statutory authorization of secondary liability, the Supreme Court held that a defendant could be liable for "inducement of infringement" upon proof of the defendant's "intent to bring about infringement and distribution of a device suitable for infringing use." *Grokster*, 545 U.S. at 940. Recognizing that inducement, so defined, could "compromise legitimate commerce or discourage innovation having a lawful purpose," the unanimous Supreme Court held that liability applies only where there is also clear proof of the defendant's "purposeful, culpable expression and conduct." *Id.* at 937-38 (finding that Grokster's "unlawful objective is unmistakable").  Subsequent decisions have elaborated the substantive limitations imposed on inducement liability and the culpable intent requirement.

     The Ninth Circuit, which in the last five years has addressed *Grokster* inducement claims filed against search engines, payment services, and video-hosting sites (and declined to find liability in each instance), has held that an inducement plaintiff must plead and prove that the defendant promoted its *own services* for purposes of infringement. *See Perfect 10-Amazon*, 508 F.3d at 1171 n.11 (Google could not be held liable for inducement because it "has not promoted *the use of its search engine* specifically to infringe copyrights.") (emphasis added); *see also*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

19

MOTION TO DISMISS COMPLAINT

1  *Luvdarts LLC*, 2011 WL 997199, at *2 (granting cellular carrier defendants' motion

2  to dismiss inducement claim stemming from hosted mobile service on grounds that

3  "[p]laintiffs have not alleged that *[d]efendants' network[]* was designed with the

4  'object of promoting' infringement of [p]laintiffs' copyright") (emphasis added).

5      In the past term, the Supreme Court revisited the law of inducement in a

6  patent case and confirmed that inducement liability is confined to instances of

7  clearly culpable action, requiring "knowledge that the induced acts constitute patent

8  infringement" and "requires knowledge of the existence of the patent that is

9  infringed." *Global-Tech*, 131 S. Ct. at 2068.  The Court explained that the

10  "purposeful, culpable expression and conduct" requirement adduced in *Grokster*

11  showed that it had been the Court's longstanding view of existing precedents that

12  such knowledge was required.  *Id.* at 2067.  The Court also noted that in *Grokster*

13  "the Court found ample evidence that Grokster and StreamCast were fully aware –

14  in the ordinary sense of the term – that their file-sharing software was routinely used

15  in carrying out the acts that constituted infringement . . . and that these acts violated

16  the rights of copyright holders."  *Id*. at 2070; *see also Grokster*, 545 U.S. at 923

17  (noting that plaintiffs had given Grokster notice of *8 million* copyrighted files).

18  **2.    Plaintiffs' Inducement Claim Fails Because Plaintiffs' Allegations
        Do Not Support An Inference Of "Purposeful, Culpable Expression**

19  **And Conduct" By Defendants**

20      For all the broadsides seeking to inspirit CNET as the virtual reincarnation of

21  Grokster, the Complaint is devoid of the allegations required under *Perfect 10-*

22  *Amazon* and *Global-Tech* to make out the requisite malicious intent necessary to

23  render Defendants liable for the unlawful acts of users of P2P software.

24      First, the Complaint does not allege that Defendants promoted their *own*

25  service specifically to infringe copyrights.  *Perfect 10-Amazon*, 508 F.3d at 1171

26  n.11 (inducement claim against Google not viable due to lack of such an allegation).

27  The Complaint instead asserts that Defendants "distribute and promote several P2P

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

20

MOTION TO DISMISS COMPLAINT

1   clients," while "inform[ing] their users that the clients were optimized for

2   unauthorized copying," Compl. ¶ 152, but says nothing about Defendants' own

3   sites, which are advertising-supported information and location tools like Google

4   and the Amazon "product search engine" exonerated in *Perfect 10-Amazon*.   Failure

5   to allege that Defendants' own sites were intended for infringement is fatal;

6   *Grokster* is, after all, a case about imposing liability on a company "whose principal

7   object was use of their software to download copyrighted works," 545 U.S. at 926,

8   not a condemnation of P2P, which the Court recognized as having "benefits in

9   security, cost, and efficiency." *Id.* at 920.  That Defendants are not alleged to

10  promote their own businesses, CNET and download.com, as tools of infringement

11  demonstrates that they do not have infringement as their "principal object."

12      Second, the Complaint does not allege that Defendants had "knowledge that

13  the induced acts constitute . . . infringement." *Global-Tech*, 131 S. Ct. at 2068.

14  Plaintiffs admit that there are "P2P clients who operate legally."  Compl. ¶ 154.

15  They admit that the 2006 *Grokster* decision was "groundbreaking," and they do not

16  dispute that P2P services had not theretofore been prohibited. *Id.* ¶ 11.  They admit

17  that when LimeWire was ruled liable for secondary infringement, Defendants

18  removed it from their sites. *Id.* ¶¶ 89 & 110.  And they do not allege that any other

19  torrent-based P2P networks, including any currently listed on Defendants' sites,

20  have been adjudicated to infringe.  Nor do they deny that determining whether or

21  not such services are secondary infringers would involve knowledge of detailed

22  facts beyond any Defendants are claimed to know.

23      In short, Plaintiffs do not allege that Defendants supported or promoted any

24  P2P service that was known to be unlawful at the time, and as such they have not

25  alleged that Defendants knew they were inducing an activity constituting copyright

26  infringement.  There is no precedent for placing the burden on Defendants to decide

27  which P2P services are legal and which are not; to impute liability to Defendants in

28  circumstances where the P2P services might themselves be outside the scope of

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

21

MOTION TO DISMISS COMPLAINT

liability; or to use the threat of liability as a cudgel to outlaw Defendants' publication of reviews and links to lawful P2P products and services.[9]  Especially in light of the chilling effect such liability would have both on freedom of expression and the development of "innovation having a lawful promise," *Grokster*, 545 U.S. at 937, this Court should not be the first to stretch the law so far.

**E.     The Overbroad Application Of Secondary Liability Sought By Plaintiffs Would Constrain Speech Rights**

Defendants are not the designers, manufacturers, owners, publishers, or operators of P2P software.  Nor is there a single material allegation supporting the assertion that Defendants "developed" or "created" P2P software.  Compl. ¶ 149.  Rather it is clear from the lengthy allegations that Defendants are not Grokster or LimeWire.  CNET and download.com provide software location tools, technology news, and product reviews for a vast array of software and technology products.  Compl. ¶¶ 1, 3.  Their reporting, opinions, descriptions are matters of public interest and concern.

As explained above, there is no statutory authorization for the imposition of liability under the circumstances alleged in the Complaint, *supra* p. 8, and no precedent in the case-law, *supra* p. 9.  The expansion of secondary liability that Plaintiffs seek to impose would raise serious First Amendment issues, and the Court should reject this construction of the copyright law.  *Harper & Row Publishers Inc. v. Nation Enters.*, 471 U.S. 539, 582 (1985) (observing that limitations on copyright are appropriate when necessary to "ensure[] consonance with our most important First Amendment values.").

---

[9] Plaintiffs also do not allege that Defendants knew of Plaintiffs' copyrighted works.  Under such circumstances, Defendants cannot be liable for inducement as to the direct infringement of Plaintiffs' works, because the intent requirement demands that a defendant know of a legally protected interest before it can be charged with inducing infringement of that interest.  *Global-Tech*, 131 S. Ct. at 2068.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

22

MOTION TO DISMISS COMPLAINT

1   Opinions are protected by the First Amendment.  *Hurley v. Irish-Am. Gay*

2   *Grp. of Boston*, 515 U.S. 557, 573 (1995) ("general rule" protecting freedom of

3   speech applies to "expressions of value, opinion, or endorsement"; the point of this

4   rule "is simply the point of all speech protection, which is to shield just those

5   choices of content that in someone's eyes are misguided, or even hurtful.").  This

6   protection includes product reviews and ratings.  *Compuware Corp. v. Moody's*

7   *Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (affirming dismissal of

8   claims based on opinions about third-party products); *Jefferson Cnty. Sch. Dist. No.*

9   *R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 856 (10th Cir. 1999) (same);

10  *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y.

11  1988) (same).

12  Moreover, efforts to impose liability on a party on the grounds that its speech

13  caused *someone else* to act unlawfully are constitutionally suspect.  *See, e.g.*,

14  *Bartnicki v. Vopper*, 532 U.S. 514, 532 (2001) (holding wire-tapping statute invalid

15  as applied to disclosure by third party who had not directly engaged in unlawful

16  interception; "it would be quite remarkable to hold that speech by a law-abiding

17  possessor of information can be suppressed in order to deter conduct by a non-law-

18  abiding third party."); *Simon & Schuster, Inc. v. Members of N.Y. State Crime*

19  *Victims Bd.*, 502 U.S. 105, 116 (1991) (invalidating Son-of-Sam law, finding statute

20  burdened speech and was not narrowly tailored, where state interests could be

21  accomplished by punishing crime directly).

22  The liability scheme that Plaintiffs propose would abrogate the culpable intent

23  requirement imposed by the Supreme Court in *Grokster*, which in addition to

24  protecting against "compromis[ing] legitimate commerce or discourag[ing]

25  innovation having a lawful promise," *Grokster*, 545 U.S. at 937, is also essential to

26  safeguarding free speech rights in the situation, as here, where a defendant's

27  business and its alleged acts of inducement are speech-related.  A liability doctrine

28  that ignores the nature and "principal object" of CNET's business and instead

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

23

MOTION TO DISMISS COMPLAINT

1  penalizes the defendant for alleged proselytic discussion of P2P services that have

2  both infringing and non-infringing uses knows no reasonable boundary.  The

3  Internet is a wide and varied landscape, and such judicially noticeable services as

4  Wikipedia, Facebook, Twitter, and Google all offer commentary, evaluation, user

5  tips and links to P2P services, all of them, save Wikipedia, supported by advertising.

6  *See, e.g*., http://en.wikipedia.org/wiki/FrostWire; http://www.facebook.com/

7  Frostwirep2p; http://twitter.com/#!/frostwire; www.google.com (displaying list,

8  links, and information upon the entry of the word "frostwire").  All of the fire-and-

9  brimstone allegations in the Complaint could be applied to Facebook's P2P pages

10 with little rewriting.  Are these sites to be liable for secondary infringement, not

11 because they advocated anything with respect to Plaintiffs like Doug E. Fresh, but

12 because they facilitate the use of P2P services by providing truthful information and

13 links to such services?

14      The expansion of liability that Plaintiffs propose is tantamount to letting four

15 dozen musicians effectively shut down comprehensive, reliable information services

16 with obvious public benefits intimately entwined with speech, and whose alleged

17 conduct has at most a tertiary connection to some unknown persons' volitional acts

18 of copying Plaintiffs' songs.  *Sony* and *Grokster* do not authorize such liability and

19 the restraint it would impose on CNET and other information services.

20 **F.**   **The Complaint Must Be Dismissed As To Nineteen Plaintiffs For Failure**

21      **To Allege Copyright Registration**

22      Nineteen of the Plaintiffs fail to allege that they have registered copyrights,

23 which is a prerequisite to state a claim for copyright infringement.  The Copyright

24 Act provides that "no civil action for infringement of the copyright in any United

25 States work shall be instituted until preregistration or registration of the copyright

26 claim has been made in accordance with this title."  17 U.S.C. § 411(a).  Following

27 the Supreme Court's decision in *Reed Elsevier Inc. v. Muchnik*, __ U.S. __, 130

28 S.Ct. 1237 (2010), the Ninth Circuit treats the section 411 registration requirement

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

24

MOTION TO DISMISS COMPLAINT

1   as an element of a copyright infringement claim. *See Cosmetic Ideas, Inc. v.*

2   *IAC/Interactive Corp.*, 606 F.3d 612, 618 (9th Cir. 2010).  As noted above, Plaintiffs

3   must allege primary infringement in order to claim secondary infringement. *See*

4   *MDY Indus.*, 629 F.3d at 937.

5        Here, the Complaint contains no allegation that *any* Plaintiffs have registered

6   works.  With the Complaint, Plaintiffs filed a Form AO-121 listing the registered

7   works alleged to be at issue in this action as required by Local Rule 3-1. *See* Docket

8   No. 4 (Nov. 14, 2011).  Nineteen Plaintiffs listed in the Notice of Motion are not

9   holders of copyrights listed on Form AO-121.  Defendants brought this deficiency to

10  the Plaintiffs' attention during the meet and confer process, but Plaintiffs did not

11  amend the Complaint or Form AO-121.  Thus, even if the court is willing to treat the

12  Form AO-121 as a sufficient allegation of registration for the listed Plaintiffs, the

13  Complaint should be dismissed as to the nineteen Plaintiffs who have failed to make

14  any such claim to ownership of a registered work.

15                         **IV.**

16                  **CONCLUSION**

17       For the foregoing reasons, the Complaint must be dismissed in its entirety and

18  with prejudice for failure to state a claim upon which relief may be granted.

19

20  Dated:  March 5, 2012          KENDALL BRILL & KLIEGER LLP

21

22

23                  By: _____

24                       Richard B. Kendall

25                       Attorneys for CBS Interactive Inc.

26                       and CNET Networks, Inc.

27

28

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

102800.5

25

MOTION TO DISMISS COMPLAINT