1   KENDALL BRILL & KLIEGER LLP
    Richard B. Kendall (90072)
2    rkendall@kbkfirm.com
    Laura W. Brill (195889)
3    lbrill@kbkfirm.com
    Richard M. Simon (240530)
4    rsimon@kbkfirm.com
    Cassie D. Palmer (268383)
5    cpalmer@kbkfirm.com
    10100 Santa Monica Blvd., Suite 1725
6   Los Angeles, California  90067
    Telephone:   310.556.2700
7   Facsimile:   310.556.2705

8   Attorneys for CBS Interactive Inc. and
    CNET Networks, Inc.

9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

13   ALKIVIADES DAVID, et al.,              Case No. CV11-9437 DSF (JCx)

14           Plaintiffs,                    **APPENDIX OF LEGISLATIVE
                                            SOURCES IN SUPPORT OF
15        v.                                DEFENDANTS' MOTION TO
                                            DISMISS COMPLAINT**
16   CBS INTERACTIVE INC., CNET
     NETWORKS, INC.,                        Hon. Dale S. Fischer

17
             Defendants.                    Date:   April 9, 2012
18                                          Time:   1:30 p.m.
                                            Crtrm.: 840
19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

103040.1

1    Defendants CBS Interactive Inc. and CNET Networks, Inc. hereby lodge the
2  following legislative sources in support of the Motion to Dismiss the Complaint, in
3  compliance with the Court's Standing Order ¶ 7.e:

4

5  **Authority**                                                          **Tab**
6  Protect IP Act (PIPA), S. 968. 112th Cong. (2011)                        1
7  Stop Online Piracy Act (SOPA), H.R. 3261, 112th Cong. (2011)             2

8

9

10  Dated:  March 5, 2012                KENDALL BRILL & KLIEGER LLP

11

12

13                                  By: _____
14                                      Richard M. Simon
                                        Attorneys for CBS Interactive, Inc. and
15                                      CNET Networks Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

103040.1

1

APPENDIX OF LEGISLATIVE SOURCES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

# EXHIBIT 1

GRA11400                                                                    S.L.C.

112TH CONGRESS
1ST SESSION

# S. _____

To prevent online threats to economic creativity and theft of intellectual
property, and for other purposes.

_____

## IN THE SENATE OF THE UNITED STATES

_____

Mr. LEAHY (for himself, Mr. HATCH, Mr. GRASSLEY, Mr. SCHUMER, Mrs.
FEINSTEIN, Mr. WHITEHOUSE, Mr. GRAHAM, Mr. KOHL, Mr. COONS,
and Mr. BLUMENTHAL) introduced the following bill; which was read
twice and referred to the Committee on _____

_____

# A BILL

To prevent online threats to economic creativity and theft
of intellectual property, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4        This Act may be cited as the ''Preventing Real Online

5  Threats to Economic Creativity and Theft of Intellectual

6  Property Act of 2011'' or the ''PROTECT IP Act of

7  2011''.

8  **SEC. 2. DEFINITIONS.**

9        For purposes of this Act—

2

1          (1) the term "domain name" has the same

2     meaning as in section 45 of the Lanham Act (15

3     U.S.C. 1127);

4          (2) the term "domain name system server"

5     means a server or other mechanism used to provide

6     the Internet protocol address associated with a do-

7     main name;

8          (3) the term "financial transaction provider"

9     has the same meaning as in section 5362(4) of title

10    31, United States Code;

11         (4) the term "information location tool" has the

12    same meaning as described in subsection (d) of sec-

13    tion 512 of title 17, United States Code;

14         (5) the term "Internet advertising service"

15    means a service that for compensation sells, pur-

16    chases, brokers, serves, inserts, verifies, or clears the

17    placement of an advertisement, including a paid or

18    sponsored search result, link, or placement that is

19    rendered in viewable form for any period of time on

20    an Internet site;

21         (6) the term "Internet site" means the collec-

22    tion of digital assets, including links, indexes, or

23    pointers to digital assets, accessible through the

24    Internet that are addressed relative to a common do-

25    main name;

3

1      (7) the term "Internet site dedicated to infring-

2   ing activities" means an Internet site that—

3          (A) has no significant use other than en-

4       gaging in, enabling, or facilitating the—

5              (i) reproduction, distribution, or pub-

6          lic performance of copyrighted works, in

7          complete or substantially complete form, in

8          a manner that constitutes copyright in-

9          fringement under section 501 of title 17,

10         United States Code;

11             (ii) violation of section 1201 of title

12         17, United States Code; or

13             (iii) sale, distribution, or promotion of

14         goods, services, or materials bearing a

15         counterfeit mark, as that term is defined

16         in section 34(d) of the Lanham Act; or

17         (B) is designed, operated, or marketed by

18      its operator or persons operating in concert

19      with the operator, and facts or circumstances

20      suggest is used, primarily as a means for en-

21      gaging in, enabling, or facilitating the activities

22      described under clauses (i), (ii), or (iii) of sub-

23      paragraph (A);

24      (8) the term "Lanham Act" means the Act en-

25   titled "An Act to provide for the registration and

GRA11400                                                                        S.L.C.

4

1    protection of trademarks used in commerce, to carry

2    out the provisions of certain international conven-

3    tions, and for other purposes", approved July 5,

4    1946 (commonly referred to as the "Trademark Act

5    of 1946" or the "Lanham Act");

6        (9) the term "nondomestic domain name"

7    means a domain name for which the domain name

8    registry that issued the domain name and operates

9    the relevant top level domain, and the domain name

10   registrar for the domain name, are not located in the

11   United States;

12       (10) the term "owner" or "operator" when

13   used in connection with an Internet site shall in-

14   clude, respectively, any owner of a majority interest

15   in, or any person with authority to operate, such

16   Internet site; and

17       (11) the term "qualifying plaintiff" means—

18           (A) the Attorney General of the United

19       States; or

20           (B) an owner of an intellectual property

21       right, or one authorized to enforce such right,

22       harmed by the activities of an Internet site

23       dedicated to infringing activities occurring on

24       that Internet site.

5

1 **SEC. 3. ENHANCING ENFORCEMENT AGAINST ROGUE**

2 **WEBSITES OPERATED AND REGISTERED**

3 **OVERSEAS.**

4 (a) COMMENCEMENT OF AN ACTION.—

5     (1) IN PERSONAM.—The Attorney General may

6 commence an in personam action against—

7         (A) a registrant of a nondomestic domain

8     name used by an Internet site dedicated to in-

9     fringing activities; or

10        (B) an owner or operator of an Internet

11    site dedicated to infringing activities accessed

12    through a nondomestic domain name.

13    (2) IN REM.—If through due diligence the At-

14 torney General is unable to find a person described

15 in subparagraphs (A) or (B) of paragraph (1), or no

16 such person found has an address within a judicial

17 district of the United States, the Attorney General

18 may commence an in rem action against a non-

19 domestic domain name used by an Internet site dedi-

20 cated to infringing activities.

21 (b) ORDERS OF THE COURT.—

22    (1) IN GENERAL.—On application of the Attor-

23 ney General following the commencement of an ac-

24 tion under this section, the court may issue a tem-

25 porary restraining order, a preliminary injunction, or

26 an injunction, in accordance with rule 65 of the Fed-

S.L.C.

6

1    eral Rules of Civil Procedure, against the non-

2    domestic domain name used by an Internet site dedi-

3    cated to infringing activities, or against a registrant

4    of such domain name, or the owner or operator of

5    such Internet site dedicated to infringing activities,

6    to cease and desist from undertaking any further ac-

7    tivity as an Internet site dedicated to infringing ac-

8    tivities, if—

9            (A) the domain name is used within the

10           United States to access such Internet site; and

11           (B) the Internet site—

12               (i) conducts business directed to resi-

13               dents of the United States; and

14               (ii) harms holders of United States in-

15               tellectual property rights.

16   (2) DETERMINATION BY THE COURT.—For pur-

17   poses of determining whether an Internet site con-

18   ducts business directed to residents of the United

19   States under paragraph (1)(B)(i), a court may con-

20   sider, among other indicia, whether—

21           (A) the Internet site is providing goods or

22           services described in section 2(7) to users lo-

23           cated in the United States;

24           (B) there is evidence that the Internet site

25           is not intended to provide—

7

1        (i) such goods and services to users

2     located in the United States;

3        (ii) access to such goods and services

4     to users located in the United States; and

5        (iii) delivery of such goods and serv-

6     ices to users located in the United States;

7     (C) the Internet site has reasonable meas-

8  ures in place to prevent such goods and services

9  from being accessed from or delivered to the

10  United States;

11     (D) the Internet site offers services ob-

12  tained in the United States; and

13     (E) any prices for goods and services are

14  indicated in the currency of the United States.

15  (c) NOTICE AND SERVICE OF PROCESS.—

16     (1) IN GENERAL.—Upon commencing an action

17  under this section, the Attorney General shall send

18  a notice of the alleged violation and intent to pro-

19  ceed under this Act to the registrant of the domain

20  name of the Internet site—

21        (A) at the postal and e-mail address ap-

22     pearing in the applicable publicly accessible

23     database of registrations, if any and to the ex-

24     tent such addresses are reasonably available;

GRA11400                                                                      S.L.C.

8

1    (B) via the postal and e-mail address of

2   the registrar, registry, or other domain name

3   registration authority that registered or as-

4   signed the domain name, to the extent such ad-

5   dresses are reasonably available; and

6    (C) in any other such form as the court

7   finds necessary, including as may be required

8   by Rule 4(f) of the Federal Rules of Civil Pro-

9   cedure.

10   (2) RULE OF CONSTRUCTION.—For purposes of

11  this section, the actions described in this subsection

12  shall constitute service of process.

13  (d) REQUIRED ACTIONS BASED ON COURT OR-

14 DERS.—

15   (1) SERVICE.—A Federal law enforcement offi-

16  cer, with the prior approval of the court, may serve

17  a copy of a court order issued pursuant to this sec-

18  tion on similarly situated entities within each class

19  described in paragraph (2). Proof of service shall be

20  filed with the court.

21   (2) REASONABLE measures.—After being

22  served with a copy of an order pursuant to this sub-

23  section:

24    (A) OPERATORS.—

9

1          (i) IN GENERAL.—An operator of a

2     nonauthoritative domain name system

3     server shall take the least burdensome

4     technically feasible and reasonable meas-

5     ures designed to prevent the domain name

6     described in the order from resolving to

7     that domain name's Internet protocol ad-

8     dress, except that—

9               (I) such operator shall not be re-

10         quired—

11                    (aa) other than as directed

12              under this subparagraph, to mod-

13              ify its network, software, sys-

14              tems, or facilities;

15                    (bb) to take any measures

16              with respect to domain name

17              lookups not performed by its own

18              domain name server or domain

19              name system servers located out-

20              side the United States; or

21                    (cc) to continue to prevent

22              access to a domain name to

23              which access has been effectively

24              disable by other means; and

10

1              (II) nothing in this subparagraph

2                   shall affect the limitation on the liabil-

3                   ity of such an operator under section

4                   512 of title 17, United States Code.

5              (ii) TEXT OF NOTICE.—The Attorney

6         General shall prescribe the text of the no-

7         tice displayed to users or customers of an

8         operator taking an action pursuant to this

9         subparagraph. Such text shall specify that

10        the action is being taken pursuant to a

11        court order obtained by the Attorney Gen-

12        eral.

13        (B) FINANCIAL TRANSACTION PRO-

14   VIDERS.—A financial transaction provider shall

15   take reasonable measures, as expeditiously as

16   reasonable, designed to prevent, prohibit, or

17   suspend its service from completing payment

18   transactions involving customers located within

19   the United States and the Internet site associ-

20   ated with the domain name set forth in the

21   order.

22        (C) INTERNET ADVERTISING SERVICES.—

23   An Internet advertising service that contracts

24   with the Internet site associated with the do-

25   main name set forth in the order to provide ad-

Case 2:11-cv-09437-DSF-JC   Document 14-1   Filed 03/05/12   Page 14 of 112   Page ID
#:173
GRA11400                                                                      S.L.C.

11

1  vertising to or for that site, or which knowingly

2  serves advertising to or for such site, shall take

3  technically feasible and reasonable measures, as

4  expeditiously as reasonable, designed to—

5        (i) prevent its service from providing

6     advertisements to the Internet site associ-

7     ated with such domain name; or

8        (ii) cease making available advertise-

9     ments for that site, or paid or sponsored

10    search results, links or other placements

11    that provide access to the domain name.

12    (D) INFORMATION LOCATION TOOLS.—An

13  information location tool shall take technically

14  feasible and reasonable measures, as expedi-

15  tiously as possible, to—

16       (i) remove or disable access to the

17    Internet site associated with the domain

18    name set forth in the order; or

19       (ii) not serve a hypertext link to such

20    Internet site.

21    (3) COMMUNICATION WITH USERS.—Except as

22  provided under paragraph (2)(A)(ii), an entity tak-

23  ing an action described in this subsection shall de-

24  termine whether and how to communicate such ac-

25  tion to the entity's users or customers.

12

1        (4) RULE OF CONSTRUCTION.—For purposes of

2    an action commenced under this section, the obliga-

3    tions of an entity described in this subsection shall

4    be limited to the actions set out in each paragraph

5    or subparagraph applicable to such entity, and no

6    order issued pursuant to this section shall impose

7    any additional obligations on, or require additional

8    actions by, such entity.

9        (5) ACTIONS PURSUANT TO COURT ORDER.—

10            (A) IMMUNITY FROM SUIT.—No cause of

11        action shall lie in any Federal or State court or

12        administrative agency against any entity receiv-

13        ing a court order issued under this subsection,

14        or against any director, officer, employee, or

15        agent thereof, for any act reasonably designed

16        to comply with this subsection or reasonably

17        arising from such order, other than in an action

18        pursuant to subsection (e).

19            (B) IMMUNITY FROM LIABILITY.—Any en-

20        tity receiving an order under this subsection,

21        and any director, officer, employee, or agent

22        thereof, shall not be liable to any party for any

23        acts reasonably designed to comply with this

24        subsection or reasonably arising from such

25        order, other than in an action pursuant to sub-

13

section (e), and any actions taken by customers
of such entity to circumvent any restriction on
access to the Internet domain instituted pursu-
ant to this subsection or any act, failure, or in-
ability to restrict access to an Internet domain
that is the subject of a court order issued pur-
suant to this subsection despite good faith ef-
forts to do so by such entity shall not be used
by any person in any claim or cause of action
against such entity, other than in an action
pursuant to subsection (e).

(e) ENFORCEMENT OF ORDERS.—

    (1) IN GENERAL.—In order to compel compli-
ance with this section, the Attorney General may
bring an action for injunctive relief against any
party receiving a court order issued pursuant to this
section that knowingly and willfully fails to comply
with such order.

    (2) RULE OF CONSTRUCTION.—The authority
granted the Attorney General under paragraph (1)
shall be the sole legal remedy for enforcing the obli-
gations under this section of any entity described in
subsection (d).

    (3) DEFENSE.—A defendant in an action under
paragraph (1) may establish an affirmative defense

14

1    by showing that the defendant does not have the

2    technical means to comply with the subsection with-

3    out incurring an unreasonable economic burden, or

4    that the order is inconsistent with this Act. This

5    showing shall serve as a defense only to the extent

6    of such inability to comply or to the extent of such

7    inconsistency.

8        (f) MODIFICATION OR VACATION OF ORDERS.—

9        (1) IN GENERAL.—At any time after the

10   issuance of an order under subsection (b), a motion

11   to modify, suspend, or vacate the order may be filed

12   by—

13            (A) any person, or owner or operator of

14        property, bound by the order;

15            (B) any registrant of the domain name, or

16        the owner or operator of the Internet site sub-

17        ject to the order;

18            (C) any domain name registrar or registry

19        that has registered or assigned the domain

20        name of the Internet site subject to the order;

21        or

22            (D) any entity that has received a copy of

23        an order pursuant to subsection (d) requiring

24        such entity to take action prescribed in that

25        subsection.

 1         (2) RELIEF.—Relief under this subsection shall

 2    be proper if the court finds that—

 3              (A) the Internet site associated with the

 4         domain name subject to the order is no longer,

 5         or never was, an Internet site dedicated to in-

 6         fringing activities; or

 7              (B) the interests of justice require that the

 8         order be modified, suspended, or vacated.

 9         (3) CONSIDERATION.—In making a relief deter-

10    mination under paragraph (2), a court may consider

11    whether the domain name has expired or has been

12    re-registered by a different party.

13    (g) RELATED ACTIONS.—The Attorney General, if al-

14 leging that an Internet site previously adjudicated to be

15 an Internet site dedicated to infringing activities is acces-

16 sible or has been reconstituted at a different domain

17 name, may commence a related action under this section

18 against the additional domain name in the same judicial

19 district as the previous action.

20 SEC. 4. ELIMINATING THE FINANCIAL INCENTIVE TO STEAL

21              INTELLECTUAL PROPERTY ONLINE.

22    (a) COMMENCEMENT OF AN ACTION.—

23         (1) IN PERSONAM.—A qualifying plaintiff may

24    commence an in personam action against—

16

1          (A) a registrant of a domain name used by

2      an Internet site dedicated to infringing activi-

3      ties; or

4          (B) an owner or operator of an Internet

5      site dedicated to infringing activities accessed

6      through a domain name.

7      (2) IN REM.—If through due diligence a quali-

8    fying plaintiff is unable to find a person described

9    in subparagraphs (A) or (B) of paragraph (1), or no

10   such person found has an address within a judicial

11   district of the United States, the Attorney General

12   may commence an in rem action against a domain

13   name used by an Internet site dedicated to infring-

14   ing activities.

15   (b) ORDERS OF THE COURT.—

16      (1) IN GENERAL.—On application of a quali-

17   fying plaintiff following the commencement of an ac-

18   tion under this section, the court may issue a tem-

19   porary restraining order, a preliminary injunction, or

20   an injunction, in accordance with rule 65 of the Fed-

21   eral Rules of Civil Procedure, against the domain

22   name used by an Internet site dedicated to infring-

23   ing activities, or against a registrant of such domain

24   name, or the owner or operator of such Internet site

25   dedicated to infringing activities, to cease and desist

17

1     from undertaking any further activity as an Internet

2     site dedicated to infringing activities, if—

3             (A) the domain name is registered or as-

4         signed by a domain name registrar or domain

5         name registry that located or doing business in

6         the United States; or

7             (B)(i) the domain name is used within the

8         United States to access such Internet site; and

9             (ii) the Internet site—

10                (I) conducts business directed to resi-

11            dents of the United States; and

12                (II) harms holders of United States

13            intellectual property rights.

14        (2) DETERMINATION BY THE COURT.—For pur-

15    poses of determining whether an Internet site con-

16    ducts business directed to residents of the United

17    States under paragraph (1)(B)(ii)(I), a court may

18    consider, among other indicia, whether—

19            (A) the Internet site is providing goods or

20        services described in section 2(7) to users lo-

21        cated in the United States;

22            (B) there is evidence that the Internet site

23        is not intended to provide—

24                (i) such goods and services to users

25            located in the United States;

18

1              (ii) access to such goods and services

2          to users located in the United States; and

3              (iii) delivery of such goods and serv-

4          ices to users located in the United States;

5          (C) the Internet site has reasonable meas-

6      ures in place to prevent such goods and services

7      from being accessed from or delivered to the

8      United States;

9          (D) the Internet site offers services ob-

10      tained in the United States; and

11          (E) any prices for goods and services are

12      indicated in the currency of the United States.

13  (c) NOTICE AND SERVICE OF PROCESS.—

14      (1) IN GENERAL.—Upon commencing an action

15  under this section, the qualifying plaintiff shall send

16  a notice of the alleged violation and intent to pro-

17  ceed under this Act to the registrant of the domain

18  name of the Internet site—

19          (A) at the postal and e-mail address ap-

20      pearing in the applicable publicly accessible

21      database of registrations, if any and to the ex-

22      tent such addresses are reasonably available;

23          (B) via the postal and e-mail address of

24      the registrar, registry, or other domain name

25      registration authority that registered or as-

19

1        signed the domain name, to the extent such ad-

2        dresses are reasonably available; and

3           (C) in any other such form as the court

4        finds necessary, including as may be required

5        by Rule 4(f) of the Federal Rules of Civil Pro-

6        cedure.

7        (2) RULE OF CONSTRUCTION.—For purposes of

8  this section, the actions described in this subsection

9  shall constitute service of process.

10    (d) REQUIRED ACTIONS BASED ON COURT OR-

11  DERS.—

12        (1) SERVICE.—A qualifying plaintiff, with the

13  prior approval of the court, may, serve a copy of a

14  court order issued pursuant to this section on simi-

15  larly situated entities within each class described in

16  paragraph (2). Proof of service shall be filed with

17  the court.

18        (2) REASONABLE MEASURES.—After being

19  served with a copy of an order pursuant to this sub-

20  section:

21           (A) FINANCIAL TRANSACTION PRO-

22        VIDERS.—A financial transaction provider shall

23        take reasonable measures, as expeditiously as

24        reasonable, designed to prevent, prohibit, or

25        suspend its service from completing payment

Case 2:11-cv-09437-DSF-JC   Document 14-1   Filed 03/05/12   Page 23 of 112   Page ID
#:182
GRA11400                                                                                    S.L.C.

20

1          transactions involving customers located within

2          the United States and the Internet site associ-

3          ated with the domain name set forth in the

4          order.

5              (B) INTERNET ADVERTISING SERVICES.—

6          An Internet advertising service that contracts

7          with the Internet site associated with the do-

8          main name set forth in the order to provide ad-

9          vertising to or for that site, or which knowingly

10         serves advertising to or for such site, shall take

11         technically feasible and reasonable measures, as

12         expeditiously as reasonable, designed to—

13             (i) prevent its service from providing

14         advertisements to the Internet site associ-

15         ated with such domain name; or

16             (ii) cease making available advertise-

17         ments for that site, or paid or sponsored

18         search results, links, or placements that

19         provide access to the domain name.

20     (3) COMMUNICATION WITH USERS.—An entity

21     taking an action described in this subsection shall

22     determine how to communicate such action to the

23     entity's users or customers.

24     (4) RULE OF CONSTRUCTION.—For purposes of

25     an action commenced under this section, the obliga-

21

1     tions of an entity described in this subsection shall

2     be limited to the actions set out in each paragraph

3     or subparagraph applicable to such entity, and no

4     order issued pursuant to this section shall impose

5     any additional obligations on, or require additional

6     actions by, such entity.

7          (5) ACTIONS PURSUANT TO COURT ORDER.—

8               (A) IMMUNITY FROM SUIT.—No cause of

9          action shall lie in any Federal or State court or

10         administrative agency against any entity receiv-

11         ing a court order issued under this subsection,

12         or against any director, officer, employee, or

13         agent thereof, for any act reasonably designed

14         to comply with this subsection or reasonably

15         arising from such order, other than in an action

16         pursuant to subsection (e).

17              (B) IMMUNITY FROM LIABILITY.—Any en-

18         tity receiving an order under this subsection,

19         and any director, officer, employee, or agent

20         thereof, shall not be liable to any party for any

21         acts reasonably designed to comply with this

22         subsection or reasonably arising from such

23         order, other than in an action pursuant to sub-

24         section (e), and any actions taken by customers

25         of such entity to circumvent any restriction on

1    access to the Internet domain institued pursu-
2    ant to this subsection or any act, failure, or in-
3    ability to restrict access to an Internet domain
4    that is the subject of a court order issued pur-
5    suant to this subsection despite good faith ef-
6    forts to do so by such entity shall not be used
7    by any person in any claim or cause of action
8    against such entity, other than in an action
9    pursuant to subsection (e).

10   (e) ENFORCEMENT OF ORDERS.—

11       (1) IN GENERAL.—In order to compel compli-
12   ance with this section, the qualifying plaintiff may
13   bring an action for injunctive relief against any
14   party receiving a court order issued pursuant to this
15   section that knowingly and willfully fails to comply
16   with such order.

17       (2) RULE OF CONSTRUCTION.—The authority
18   granted a qualifying plaintiff under paragraph (1)
19   shall be the sole legal remedy for enforcing the obli-
20   gations under this section of any entity described in
21   subsection (d).

22       (3) DEFENSE.—A defendant in an action com-
23   menced under paragraph (1) may establish an af-
24   firmative defense by showing that the defendant
25   does not have the technical means to comply with

23

the subsection without incurring an unreasonable
economic burden, or that the order is inconsistent
with this Act. This showing shall serve as a defense
only to the extent of such inability to comply or to
the extent of such inconsistency.

(f) MODIFICATION OR VACATION OF ORDERS.—

(1) IN GENERAL.—At any time after the
issuance of an order under subsection (b), a motion
to modify, suspend, or vacate the order may be filed
by—

(A) any person, or owner or operator of
property, bound by the order;

(B) any registrant of the domain name, or
the owner or operator of the Internet site sub-
ject to the order;

(C) any domain name registrar or registry
that has registered or assigned the domain
name of the Internet site subject to the order;
or

(D) any entity that has received a copy of
an order pursuant to subsection (d) requiring
such entity to take action prescribed in that
subsection.

(2) RELIEF.—Relief under this subsection shall
be proper if the court finds that—

24

                1           (A) the Internet site associated with the
2            domain name subject to the order is no longer,
3            or never was, dedicated to infringing activities
4            as defined in this Act; or

5            (B) the interests of justice require that the
6            order be modified, suspended, or vacated.

7       (3) CONSIDERATION.—In making a relief deter-
8       mination under paragraph (2), a court may consider
9       whether the domain name has expired or has been
10      re-registered by a different party.

11   (g) RELATED ACTIONS.—A qualifying plaintiff, if al-
12 leging that an Internet site previously adjudicated to be
13 an Internet site dedicated to infringing activities is acces-
14 sible or has been reconstituted at a different domain
15 name, may commence a related action under this section
16 against the additional domain name in the same judicial
17 district as the previous action.

18 **SEC. 5. VOLUNTARY ACTION AGAINST WEBSITES STEALING**
19                     **AMERICAN INTELLECTUAL PROPERTY.**

20   (a) IN GENERAL.—No financial transaction provider
21 or Internet advertising service shall be liable for damages
22 to any person for voluntarily taking any action described
23 in section 3(d) or 4(d) with regard to an Internet site if
24 the entity acting in good faith and based on credible evi-

Case 2:11-cv-09437-DSF-JC   Document 14-1   Filed 03/05/12   Page 28 of 112   Page ID #:187
GRA11400                                                                          S.L.C.

25

1 dence has a reasonable belief that the Internet site is an

2 Internet site dedicated to infringing activities.

3    (b) INTERNET SITES ENGAGED IN INFRINGING AC-

4 TIVITIES THAT ENDANGER THE PUBLIC HEALTH.—

5        (1) REFUSAL OF SERVICE.—A domain name

6    registry, domain name registrar, financial trans-

7    action provider, information location tool, or Inter-

8    net advertising service, acting in good faith and

9    based on credible evidence, may stop providing or

10   refuse to provide services to an infringing Internet

11   site that endangers the public health.

12       (2) IMMUNITY FROM LIABILITY.—An entity de-

13   scribed in paragraph (1), including its directors, offi-

14   cers, employees, or agents, that ceases or refused to

15   provide services under paragraph (1) shall not be

16   liable to any party under any Federal or State law

17   for such action.

18       (3) DEFINITIONS.—For purposes of this sub-

19   section—

20           (A) the term "adulterated" has the same

21       meaning as in section 501 of the Federal Food,

22       Drug, and Cosmetic Act (21 U.S.C. 351);

23           (B) an "infringing Internet site that en-

24       dangers the public health" means—

26

1           (i) an Internet site dedicated to in-

2     fringing activities for which the counterfeit

3     products that it offers, sells, dispenses, or

4     distributes are controlled or non-controlled

5     prescription medication; or

6           (ii) an Internet site that has no sig-

7     nificant use other than, or is designed, op-

8     erated, or marketed by its operator or per-

9     sons operating in concert with the oper-

10    ator, and facts or circumstances suggest is

11    used, primarily as a means for—

12           (I) offering, selling, dispensing,

13        or distributing any controlled or non-

14        controlled    prescription    medication,

15        and does so regularly without a valid

16        prescription; or

17           (II) offering, selling, dispensing,

18        or distributing any controlled or non-

19        controlled    prescription    medication,

20        and does so regularly for medication

21        that is adulterated or misbranded;

22    (C) the term "misbranded" has the same

23    meaning as in section 502 of the Federal Food,

24    Drug, and Cosmetic Act (21 U.S.C. 352); and

27

1        (D) the term ''valid prescription'' has the

2    same meaning as in section 309(e)(2)(A) of the

3    Controlled      Substances      Act      (21      U.S.C.

4    829(e)(2)(A)).

**SEC. 6. SAVINGS CLAUSES.**

6    (a) RULE OF CONSTRUCTION RELATING TO CIVIL

7  AND CRIMINAL REMEDIES.—Nothing in this Act shall be

8  construed to limit or expand civil or criminal remedies

9  available to any person (including the United States) for

10  infringing activities on the Internet pursuant to any other

11  Federal or State law.

12    (b) RULE OF CONSTRUCTION RELATING TO VICARI-

13  OUS OR CONTRIBUTORY LIABILITY.—Nothing in this Act

14  shall be construed to enlarge or diminish vicarious or con-

15  tributory liability for any cause of action available under

16  title 17, United States Code, including any limitations on

17  liability under section 512 of such title 17, or to create

18  an obligation to take action pursuant to section 5 of this

19  Act.

20    (c) RELATIONSHIP WITH SECTION 512 OF TITLE

21  17.—Nothing in this Act, and no order issued or served

22  pursuant to sections 3 or 4 of this Act, shall serve as a

23  basis for determining the application of section 512 of title

24  17, United States Code.

28

**SEC. 7. GUIDELINES AND STUDIES.**

(a) GUIDELINES.—The Attorney General shall—

(1) publish procedures developed in consultation with other relevant law enforcement agencies, including the United States Immigration and Customs Enforcement, to receive information from the public about Internet sites dedicated to infringing activities;

(2) provide guidance to intellectual property rights holders about what information such rights holders should provide law enforcement agencies to initiate an investigation pursuant to this Act;

(3) provide guidance to intellectual property rights holders about how to supplement an ongoing investigation initiated pursuant to this Act;

(4) establish standards for prioritization of actions brought under this Act;

(5) provide appropriate resources and procedures for case management and development to affect timely disposition of actions brought under this Act; and

(6) develop a deconfliction process in consultation with other law enforcement agencies, including the United States Immigration and Customs Enforcement, to coordinate enforcement activities brought under this Act.

29

1   (b) REPORTS.—

2       (1) REPORT ON EFFECTIVENESS OF CERTAIN

3   MEASURES.—Not later than 1 year after the date of

4   enactment of this Act, the Secretary of Commerce,

5   in coordination with the Attorney General, the Sec-

6   retary of Homeland Security, and the Intellectual

7   Property Enforcement Coordinator, shall conduct a

8   study and report to the Committee on the Judiciary

9   of the Senate and the Committee on the Judiciary

10  of the House of Representatives on the following:

11          (A) An assessment of the effects, if any, of

12      the implementation of section 3(d)(2)(A) on the

13      accessibility of Internet sites dedicated to in-

14      fringing activity.

15          (B) An assessment of the effects, if any, of

16      the implementation of section 3(d)(2)(A) on the

17      deployment, security, and reliability of the do-

18      main name system and associated Internet

19      processes, including Domain Name System Se-

20      curity Extensions.

21          (C) Recommendations, if any, for modi-

22      fying or amending this Act to increase effective-

23      ness or ameliorate any unintended effects of

24      section 3(d)(2)(A).

30

1          (2) REPORT ON OVERALL EFFECTIVENESS.—

2     The Register of Copyrights shall, in consultation

3     with the appropriate departments and agencies of

4     the United States and other stakeholders—

5               (A) conduct a study on—

6                     (i) the enforcement and effectiveness

7               of this Act; and

8                     (ii) the need to modify or amend this

9               Act to apply to emerging technologies; and

10              (B) not later than 2 years after the date

11        of enactment of this Act, submit a report to the

12        Committee on the Judiciary of the Senate and

13        the Committee on the Judiciary of the House of

14        Representatives on—

15                    (i) the results of the study conducted

16              under subparagraph (A); and

17                    (ii) any recommendations that the

18              Register may have as a result of the study.

# EXHIBIT 2

I

112TH CONGRESS
1ST SESSION
# H. R. 3261

To promote prosperity, creativity, entrepreneurship, and innovation by combating the theft of U.S. property, and for other purposes.

————————————

## IN THE HOUSE OF REPRESENTATIVES

OCTOBER 26, 2011

Mr. SMITH of Texas (for himself and Mr. CONYERS, Mr. GOODLATTE, Mr. BERMAN, Mr. GRIFFIN of Arkansas, Mr. GALLEGLY, Mr. DEUTCH, Mr. CHABOT, Mr. ROSS of Florida, Mrs. BLACKBURN, Mrs. BONO MACK, Mr. TERRY, and Mr. SCHIFF) introduced the following bill; which was referred to the Committee on the Judiciary

————————————

# A BILL

To promote prosperity, creativity, entrepreneurship, and innovation by combating the theft of U.S. property, and for other purposes.

1   *Be it enacted by the Senate and House of Representa-*

2   *tives of the United States of America in Congress assembled,*

3   **SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

4       (a) SHORT TITLE.—This Act may be cited as the

5   "Stop Online Piracy Act".

6       (b) TABLE OF CONTENTS.—The table of contents of

7   this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Savings and severability clauses.

2

### TITLE I—COMBATING ONLINE PIRACY

Sec. 101. Definitions.
Sec. 102. Action by Attorney General to protect U.S. customers and prevent U.S. support of foreign infringing sites.
Sec. 103. Market-based system to protect U.S. customers and prevent U.S. funding of sites dedicated to theft of U.S. property.
Sec. 104. Immunity for taking voluntary action against sites dedicated to theft of U.S. property.
Sec. 105. Immunity for taking voluntary action against sites that endanger public health.
Sec. 106. Guidelines and study.
Sec. 107. Denying U.S. capital to notorious foreign infringers.

### TITLE II—ADDITIONAL ENHANCEMENTS TO COMBAT INTELLECTUAL PROPERTY THEFT

Sec. 201. Streaming of copyrighted works in violation of criminal law.
Sec. 202. Trafficking in inherently dangerous goods or services.
Sec. 203. Protecting U.S. businesses from foreign and economic espionage.
Sec. 204. Amendments to sentencing guidelines.
Sec. 205. Defending intellectual property rights abroad.

**SEC. 2. SAVINGS AND SEVERABILITY CLAUSES.**

(a) SAVINGS CLAUSES.—

(1) FIRST AMENDMENT.—Nothing in this Act shall be construed to impose a prior restraint on free speech or the press protected under the 1st Amendment to the Constitution.

(2) TITLE 17 LIABILITY.—Nothing in title I shall be construed to enlarge or diminish liability, including vicarious or contributory liability, for any cause of action available under title 17, United States Code, including any limitations on liability under such title.

(b) SEVERABILITY.—If any provision of this Act, or the application of the provision to any person or circumstance, is held to be unconstitutional, the other provi-

3

1  sions or the application of the provision to other persons

2  or circumstances shall not be affected thereby.

# TITLE I—COMBATING ONLINE PIRACY

**SEC. 101. DEFINITIONS.**

6  In this title:

7  (1) DOMAIN NAME.—The term "domain name"

8  has the meaning given that term in section 45 of the

9  Lanham Act (15 U.S.C. 1127) and includes any

10  subdomain designation using such domain name as

11  part of an electronic address on the Internet to iden-

12  tify a unique online location.

13  (2) DOMAIN NAME SYSTEM SERVER.—The term

14  "domain name system server" means a server or

15  other mechanism used to provide the Internet pro-

16  tocol address associated with a domain name.

17  (3) DOMESTIC DOMAIN NAME.—The term "do-

18  mestic domain name" means a domain name that is

19  registered or assigned by a domain name registrar,

20  domain name registry, or other domain name reg-

21  istration authority, that is located within a judicial

22  district of the United States.

23  (4) DOMESTIC INTERNET PROTOCOL AD-

24  DRESS.—The term "domestic Internet Protocol ad-

25  dress" means an Internet Protocol address for which

4

1    the corresponding Internet Protocol allocation entity
2    is located within a judicial district of the United
3    States.

4        (5) DOMESTIC INTERNET SITE.—The term "do-
5    mestic Internet site" means an Internet site for
6    which the corresponding domain name or, if there is
7    no domain name, the corresponding Internet Pro-
8    tocol address, is a domestic domain name or domes-
9    tic Internet Protocol address.

10       (6) FOREIGN DOMAIN NAME.—The term "for-
11   eign domain name" means a domain name that is
12   not a domestic domain name.

13       (7) FOREIGN INTERNET PROTOCOL ADDRESS.—
14   The term "foreign Internet Protocol address" means
15   an Internet Protocol address that is not a domestic
16   Internet protocol address.

17       (8) FOREIGN INTERNET SITE.—The term "for-
18   eign Internet site" means an Internet site that is
19   not a domestic Internet site.

20       (9) INCLUDING.—The term "including" means
21   including, but not limited to.

22       (10) INTELLECTUAL PROPERTY ENFORCEMENT
23   COORDINATOR.—The term "Intellectual Property
24   Enforcement Coordinator" means the Intellectual
25   Property Enforcement Coordinator appointed under

5

1    section 301 of the Prioritizing Resources and Orga-

2    nization for Intellectual Property Act of 2008 (15

3    U.S.C. 8111).

4        (11) INTERNET.—The term "Internet" has the

5    meaning given that term in section 5362(5) of title

6    31, United States Code.

7        (12) INTERNET ADVERTISING SERVICE.—The

8    term "Internet advertising service" means a service

9    that for compensation sells, purchases, brokers,

10   serves, inserts, verifies, clears, or otherwise facili-

11   tates the placement of an advertisement, including a

12   paid or sponsored search result, link, or placement,

13   that is rendered in viewable form for any period of

14   time on an Internet site.

15       (13) INTERNET PROTOCOL.—The term "Inter-

16   net Protocol" means a protocol used for commu-

17   nicating data across a packet-switched internetwork

18   using the Transmission Control Protocol/Internet

19   Protocol, and includes any predecessor or successor

20   protocol to such protocol.

21       (14) INTERNET PROTOCOL ADDRESS.—The

22   term "Internet Protocol address" means a numerical

23   label that is assigned to each device that participates

24   in a computer network that uses the Internet Pro-

25   tocol for communication.

6

1       (15) INTERNET PROTOCOL ALLOCATION ENTI-

2    TY.—The term "Internet Protocol allocation entity"

3    means, with respect to a particular Internet Protocol

4    address, the entity, local internet registry, or re-

5    gional internet registry to which the smallest appli-

6    cable block of Internet Protocol addresses containing

7    that address is allocated or assigned by a local inter-

8    net registry, regional internet registry, or other

9    Internet Protocol address allocation authority, ac-

10   cording to the applicable publicly available database

11   of allocations and assignments, if any.

12      (16) INTERNET SEARCH ENGINE.—The term

13   "Internet search engine" means a service made

14   available via the Internet that searches, crawls, cat-

15   egorizes, or indexes information or Web sites avail-

16   able elsewhere on the Internet and on the basis of

17   a user query or selection that consists of terms, con-

18   cepts, categories, questions, or other data returns to

19   the user a means, such as a hyperlinked list of Uni-

20   form Resource Locators, of locating, viewing, or

21   downloading such information or data available on

22   the Internet relating to such query or selection.

23      (17) INTERNET SITE.—The term "Internet

24   site" means the collection of digital assets, including

25   links, indexes, or pointers to digital assets, accessible

7

1    through the Internet that are addressed relative to

2    a common domain name or, if there is no domain

3    name, a common Internet Protocol address.

4        (18) LANHAM ACT.—The term "Lanham Act"

5    means the Act entitled "An Act to provide for the

6    registration and protection of trademarks used in

7    commerce, to carry out the provisions of certain

8    international conventions, and for other purposes",

9    approved July 5, 1946 (commonly referred to as the

10    "Trademark Act of 1946" or the "Lanham Act").

11        (19) NONAUTHORITATIVE DOMAIN NAME SERV-

12    ER.—The term "nonauthoritative domain name serv-

13    er" means a server that does not contain complete

14    copies of domains but uses a cache file that is com-

15    prised of previous domain name server lookups, for

16    which the server has received an authoritative re-

17    sponse in the past.

18        (20) OWNER; OPERATOR.—The terms "owner"

19    or "operator", when used in connection with an

20    Internet site, includes, respectively, any owner of a

21    majority interest in, or any person with authority to

22    operate, such Internet site.

23        (21) PAYMENT NETWORK PROVIDER.—

24        (A) IN GENERAL.—The term "payment

25        network provider" means an entity that directly

8

1           or indirectly provides the proprietary services,

2           infrastructure, and software to effect or facili-

3           tate a debit, credit, or other payment trans-

4           action.

5           (B) RULE OF CONSTRUCTION.—For pur-

6           poses of this paragraph, a depository institution

7           (as such term is defined under section 3 of the

8           Federal Deposit Insurance Act) or credit union

9           that initiates a payment transaction shall not

10          be construed to be a payment network provider

11          based solely on the offering or provision of such

12          service.

13     (22) SERVICE PROVIDER.—The term "service

14 provider" means a service provider as defined in sec-

15 tion 512(k)(1) of title 17, United States Code, that

16 operates a nonauthoritative domain name system

17 server.

18     (23) U.S.-DIRECTED SITE.—The term "U.S.-di-

19 rected site" means an Internet site or portion there-

20 of that is used to conduct business directed to resi-

21 dents of the United States, or that otherwise dem-

22 onstrates the existence of minimum contacts suffi-

23 cient for the exercise of personal jurisdiction over

24 the owner or operator of the Internet site consistent

9

1    with the Constitution of the United States, based on

2    relevant evidence that may include whether—

3         (A) the Internet site is used to provide

4    goods or services to users located in the United

5    States;

6         (B) there is evidence that the Internet site

7    or portion thereof is intended to offer or pro-

8    vide—

9              (i) such goods and services,

10             (ii) access to such goods and services,

11        or

12             (iii) delivery of such goods and serv-

13        ices,

14   to users located in the United States;

15        (C) the Internet site or portion thereof

16   does not contain reasonable measures to pre-

17   vent such goods and services from being ob-

18   tained in or delivered to the United States; and

19        (D) any prices for goods and services are

20   indicated or billed in the currency of the United

21   States.

22   (24) UNITED STATES.—The term "United

23   States" includes any commonwealth, possession, or

24   territory of the United States.

10

1  SEC. 102. ACTION BY ATTORNEY GENERAL TO PROTECT
2              U.S. CUSTOMERS AND PREVENT U.S. SUP-
3              PORT OF FOREIGN INFRINGING SITES.

4      (a) DEFINITION.—For purposes of this section, a for-
5  eign Internet site or portion thereof is a ''foreign infring-
6  ing site'' if—

7          (1) the Internet site or portion thereof is a
8      U.S.-directed site and is used by users in the United
9      States;

10          (2) the owner or operator of such Internet site
11      is committing or facilitating the commission of
12      criminal violations punishable under section 2318,
13      2319, 2319A, 2319B, or 2320, or chapter 90, of
14      title 18, United States Code; and

15          (3) the Internet site would, by reason of acts
16      described in paragraph (1), be subject to seizure in
17      the United States in an action brought by the Attor-
18      ney General if such site were a domestic Internet
19      site.

20      (b) ACTION BY THE ATTORNEY GENERAL.—

21          (1) IN PERSONAM.—The Attorney General may
22      commence an in personam action against—

23              (A) a registrant of a domain name used by
24          a foreign infringing site; or

25              (B) an owner or operator of a foreign in-
26          fringing site.

11

1      (2) IN REM.—If through due diligence the At-
2   torney General is unable to find a person described
3   in subparagraph (A) or (B) of paragraph (1), or no
4   such person found has an address within a judicial
5   district of the United States, the Attorney General
6   may commence an in rem action against a foreign
7   infringing site or the foreign domain name used by
8   such site.

9      (3) NOTICE.—Upon   commencing   an   action
10   under this subsection, the Attorney General shall
11   send a notice of the alleged violation and intent to
12   proceed under this section—

13          (A) to the registrant of the domain name
14      of the Internet site—

15             (i) at the postal and electronic mail
16         addresses appearing in the applicable pub-
17         licly accessible database of registrations, if
18         any, and to the extent such addresses are
19         reasonably available; and

20             (ii) via the postal and electronic mail
21         addresses of the registrar, registry, or
22         other domain name registration authority
23         that registered or assigned the domain
24         name of the Internet site, to the extent
25         such addresses are reasonably available; or

12

      (B) to the owner or operator of the Inter-
net site—

       (i) at the primary postal and elec-
tronic mail addresses for such owner or op-
erator that is provided on the Internet site,
if any, and to the extent such addresses
are reasonably available; or

       (ii) if there is no domain name of the
Internet site, via the postal and electronic
mail addresses of the Internet Protocol al-
location entity appearing in the applicable
publicly accessible database of allocations
and assignments, if any, and to the extent
such addresses are reasonably available; or

      (C) in any other such form as the court
may provide, including as may be required by
rule 4(f) of the Federal Rules of Civil Proce-
dure.

    (4) SERVICE OF PROCESS.—For purposes of
this section, the actions described in this subsection
shall constitute service of process.

    (5) RELIEF.—On application of the Attorney
General following the commencement of an action
under this section, the court may issue a temporary
restraining order, a preliminary injunction, or an in-

13

1    junction, in accordance with rule 65 of the Federal

2    Rules of Civil Procedure, against a registrant of a

3    domain name used by the foreign infringing site or

4    an owner or operator of the foreign infringing site

5    or, in an action brought in rem under paragraph

6    (2), against the foreign infringing site or a portion

7    of such site, or the domain name used by such site,

8    to cease and desist from undertaking any further ac-

9    tivity as a foreign infringing site.

10   (c) ACTIONS BASED ON COURT ORDERS.—

11       (1) SERVICE.—A process server on behalf of

12   the Attorney General, with prior approval of the

13   court, may serve a copy of a court order issued pur-

14   suant to this section on similarly situated entities

15   within each class described in paragraph (2). Proof

16   of service shall be filed with the court.

17       (2)   REASONABLE   MEASURES.—After   being

18   served with a copy of an order pursuant to this sub-

19   section, the following shall apply:

20           (A) SERVICE PROVIDERS.—

21               (i) IN GENERAL.—A service provider

22           shall take technically feasible and reason-

23           able measures designed to prevent access

24           by   its   subscribers   located   within   the

25           United States to the foreign infringing site

14

1          (or portion thereof) that is subject to the

2          order, including measures designed to pre-

3          vent the domain name of the foreign in-

4          fringing site (or portion thereof) from re-

5          solving to that domain name's Internet

6          Protocol address. Such actions shall be

7          taken as expeditiously as possible, but in

8          any case within 5 days after being served

9          with a copy of the order, or within such

10         time as the court may order.

11         (ii) LIMITATIONS.—A service provider

12         shall not be required—

13            (I) other than as directed under

14            this subparagraph, to modify its net-

15            work, software, systems, or facilities;

16            (II) to take any measures with

17            respect to domain name resolutions

18            not performed by its own domain

19            name server; or

20            (III) to continue to prevent ac-

21            cess to a domain name to which ac-

22            cess has been effectively disabled by

23            other means.

24         (iii) CONSTRUCTION.—Nothing in this

25         subparagraph shall affect the limitation on

15

1    the liability of a service provider under sec-

2    tion 512 of title 17, United States Code.

3      (iv) TEXT OF NOTICE.—The Attorney

4    General shall prescribe the text of any no-

5    tice displayed to users or customers of a

6    service provider taking actions pursuant to

7    this subparagraph. Such text shall state

8    that an action is being taken pursuant to

9    a court order obtained by the Attorney

10    General.

11   (B) INTERNET SEARCH ENGINES.—A pro-

12   vider of an Internet search engine shall take

13   technically feasible and reasonable measures, as

14   expeditiously as possible, but in any case within

15   5 days after being served with a copy of the

16   order, or within such time as the court may

17   order, designed to prevent the foreign infringing

18   site that is subject to the order, or a portion of

19   such site specified in the order, from being

20   served as a direct hypertext link.

21   (C) PAYMENT NETWORK PROVIDERS.—

22     (i) PREVENTING AFFILIATION.—A

23    payment network provider shall take tech-

24    nically feasible and reasonable measures,

25    as expeditiously as possible, but in any

16

1    case within 5 days after being served with

2    a copy of the order, or within such time as

3    the court may order, designed to prevent,

4    prohibit, or suspend its service from com-

5    pleting payment transactions involving cus-

6    tomers located within the United States or

7    subject to the jurisdiction of the United

8    States and the payment account—

9        (I) which is used by the foreign

10       infringing site, or portion thereof, that

11       is subject to the order; and

12       (II) through which the payment

13       network provider would complete such

14       payment transactions.

15       (ii) No duty to monitor.—A pay-

16   ment network provider shall be considered

17   to be in compliance with clause (i) if it

18   takes action described in that clause with

19   respect to accounts it has as of the date on

20   which a copy of the order is served, or as

21   of the date on which the order is amended

22   under subsection (e).

23   (D) Internet advertising services.—

24       (i) Required actions.—An Internet

25   advertising service that contracts to pro-

17

1      vide advertising to or for the foreign in-
2      fringing site, or portion thereof, that is
3      subject to the order, or that knowingly
4      serves advertising to or for such site or
5      such portion thereof, shall take technically
6      feasible and reasonable measures, as expe-
7      ditiously as possible, but in any case within
8      5 days after being served with a copy of
9      the order, or within such time as the court
10     may order, designed to—

11          (I) prevent its service from pro-
12          viding advertisements to or relating to
13          the foreign infringing site that is sub-
14          ject to the order or a portion of such
15          site specified in the order;

16          (II) cease making available ad-
17          vertisements for the foreign infringing
18          site or such portion thereof, or paid or
19          sponsored search results, links, or
20          other placements that provide access
21          to such foreign infringing site or such
22          portion thereof; and

23          (III) cease providing or receiving
24          any compensation for advertising or
25          related services to, from, or in connec-

18

1          tion with such foreign infringing site

2          or such portion thereof.

3              (ii) NO DUTY TO MONITOR.—An inter-

4          net advertising service shall be considered

5          to be in compliance with clause (i) if it

6          takes action described in that clause with

7          respect to accounts it has as of the date on

8          which a copy of the order is served, or as

9          of the date on which the order is amended

10         under subsection (e).

11      (3) COMMUNICATION WITH USERS.—Except as

12   provided under paragraph (2)(A)(iv), an entity tak-

13   ing an action described in this subsection shall de-

14   termine the means to communicate such action to

15   the entity's users or customers.

16      (4) ENFORCEMENT OF ORDERS.—

17          (A) IN GENERAL.—To ensure compliance

18      with orders issued pursuant to this section, the

19      Attorney General may bring an action for in-

20      junctive relief—

21              (i) against any entity served under

22          paragraph (1) that knowingly and willfully

23          fails to comply with the requirements of

24          this subsection to compel such entity to

25          comply with such requirements; or

1            (ii) against any entity that knowingly

2            and willfully provides or offers to provide

3            a product or service designed or marketed

4            for the circumvention or bypassing of

5            measures described in paragraph (2) and

6            taken in response to a court order issued

7            pursuant to this subsection, to enjoin such

8            entity from interfering with the order by

9            continuing to provide or offer to provide

10           such product or service.

11    (B) RULE OF CONSTRUCTION.—The au-

12    thority granted the Attorney General under

13    subparagraph (A)(i) shall be the sole legal rem-

14    edy to enforce the obligations under this section

15    of any entity described in paragraph (2).

16    (C) DEFENSE.—A defendant in an action

17    under subparagraph (A)(i) may establish an af-

18    firmative defense by showing that the defendant

19    does not have the technical means to comply

20    with this subsection without incurring an un-

21    reasonable economic burden, or that the order

22    is not authorized by this subsection. Such show-

23    ing shall not be presumed to be a complete de-

24    fense but shall serve as a defense only for those

25    measures for which a technical limitation on

20

1   compliance is demonstrated or for such portions
2   of the order as are demonstrated to be unau-
3   thorized by this subsection.

4   (D) DEFINITION.—For purposes of this
5   paragraph, a product or service designed or
6   marketed for the circumvention or bypassing of
7   measures described in paragraph (2) and taken
8   in response to a court order issued pursuant to
9   this subsection includes a product or service
10  that is designed or marketed to enable a do-
11  main name described in such an order—

12      (i) to resolve to that domain name's
13      Internet protocol address notwithstanding
14      the measures taken by a service provider
15      under paragraph (2) to prevent such reso-
16      lution; or

17      (ii) to resolve to a different domain
18      name or Internet Protocol address that the
19      provider of the product or service knows,
20      reasonably should know, or reasonably be-
21      lieves is used by an Internet site offering
22      substantially similar infringing activities as
23      those with which the infringing foreign
24      site, or portion thereof, subject to a court
25      order under this section was associated.

21

1    (5) IMMUNITY.—

2        (A) IMMUNITY FROM SUIT.—Other than in

3    an action pursuant to paragraph (4), no cause

4    of action shall lie in any Federal or State court

5    or administrative agency against any entity

6    served with a copy of a court order issued

7    under this subsection, or against any director,

8    officer, employee, or agent thereof, for any act

9    reasonably designed to comply with this sub-

10   section or reasonably arising from such order.

11       (B) IMMUNITY FROM LIABILITY.—Other

12   than in an action pursuant to paragraph (4)—

13           (i) any entity served with a copy of an

14       order under this subsection, and any direc-

15       tor, officer, employee, or agent thereof,

16       shall not be liable for any act reasonably

17       designed to comply with this subsection or

18       reasonably arising from such order; and

19           (ii) any—

20               (I) actions taken by customers of

21           such entity to circumvent any restric-

22           tion on access to the foreign infring-

23           ing site, or portion thereof, that is

24           subject to such order, that is insti-

25           tuted pursuant to this subsection, or

22

1                (II) act, failure, or inability to re-

2                strict access to a foreign infringing

3                site, or portion thereof, that is subject

4                to such order, in spite of good faith

5                efforts to comply with such order by

6                such entity,

7         shall not be used by any person in any

8         claim or cause of action against such enti-

9         ty.

10 (d) MODIFICATION OR VACATION OF ORDERS.—

11     (1) IN GENERAL.—At any time after the

12 issuance of an order under subsection (b), a motion

13 to modify, suspend, or vacate the order may be filed

14 by—

15         (A) any person, or owner or operator of

16         property, that is subject to the order;

17         (B) any registrant of the domain name, or

18         the owner or operator, of the Internet site that

19         is subject to the order;

20         (C) any domain name registrar, registry,

21         or other domain name registration authority

22         that has registered or assigned the domain

23         name of the Internet site that is subject to the

24         order; or

23

1          (D) any entity that has been served with

2        a copy of an order pursuant to subsection (c)

3        that requires such entity to take action pre-

4        scribed in that subsection.

5       (2) RELIEF.—Relief under this subsection shall

6    be proper if the court finds that—

7          (A) the foreign Internet site subject to the

8        order is no longer, or never was, a foreign in-

9        fringing site; or

10        (B) the interests of justice otherwise re-

11       quire that the order be modified, suspended, or

12       vacated.

13       (3) CONSIDERATION.—In making a relief deter-

14    mination under paragraph (2), a court may consider

15    whether the domain name of the foreign Internet

16    site has expired or has been re-registered by an enti-

17    ty other than the entity that is subject to the order

18    with respect to which the motion under paragraph

19    (1) is brought.

20       (4) INTERVENTION.—An entity required to take

21    action pursuant to subsection (c) if an order issues

22    under subsection (b) may intervene at any time in

23    any action commenced under subsection (b) that

24    may result in such order, or in any action to modify,

25    suspend, or vacate such order under this subsection.

24

1    (e) AMENDED ORDERS.—The Attorney General, if al-
2  leging that a foreign Internet site previously adjudicated
3  in an action under this section to be a foreign infringing
4  site is accessible or has been reconstituted at a different
5  domain name or Internet Protocol address, may petition
6  the court to amend the order issued under this section
7  accordingly.

8    (f) LAW ENFORCEMENT COORDINATION.—

9        (1) IN GENERAL.—The Attorney General shall
10       inform the Intellectual Property Enforcement Coor-
11       dinator and the heads of appropriate law enforce-
12       ment agencies of all court orders issued under sub-
13       section (b), and all amended orders issued under
14       subsection (e), regarding foreign infringing sites.

15       (2)  ALTERATIONS.—The  Attorney  General
16       shall, and the defendant may, inform the Intellectual
17       Property Enforcement Coordinator of the modifica-
18       tion, suspension, expiration, or vacation of a court
19       order issued under subsection (b) or an amended
20       order issued under subsection (e).

21 **SEC. 103. MARKET-BASED SYSTEM TO PROTECT U.S. CUS-**
22 **TOMERS AND PREVENT U.S. FUNDING OF**
23 **SITES DEDICATED TO THEFT OF U.S. PROP-**
24 **ERTY.**

25   (a) DEFINITIONS.—In this section:

25

1   (1) DEDICATED TO THEFT OF U.S. PROP-

2 ERTY.—An ''Internet site is dedicated to theft of

3 U.S. property'' if—

4    (A) it is an Internet site, or a portion

5   thereof, that is a U.S.-directed site and is used

6   by users within the United States; and

7    (B) either—

8     (i) the U.S.-directed site is primarily

9    designed or operated for the purpose of,

10    has only limited purpose or use other than,

11    or is marketed by its operator or another

12    acting in concert with that operator for use

13    in, offering goods or services in a manner

14    that engages in, enables, or facilitates—

15     (I) a violation of section 501 of

16     title 17, United States Code;

17     (II) a violation of section 1201 of

18     title 17, United States Code; or

19     (III) the sale, distribution, or

20     promotion of goods, services, or mate-

21     rials bearing a counterfeit mark, as

22     that term is defined in section 34(d)

23     of the Lanham Act or section 2320 of

24     title 18, United States Code; or

26

1          (ii) the operator of the U.S.-directed

2          site—

3             (I) is taking, or has taken, delib-

4             erate actions to avoid confirming a

5             high probability of the use of the

6             U.S.-directed site to carry out acts

7             that constitute a violation of section

8             501 or 1201 of title 17, United States

9             Code; or

10            (II) operates the U.S.-directed

11            site with the object of promoting, or

12            has promoted, its use to carry out

13            acts that constitute a violation of sec-

14            tion 501 or 1201 of title 17, United

15            States Code, as shown by clear ex-

16            pression or other affirmative steps

17            taken to foster infringement.

18     (2) QUALIFYING PLAINTIFF.—The term "quali-

19  fying plaintiff" means, with respect to a particular

20  Internet site or portion thereof, a holder of an intel-

21  lectual property right harmed by the activities de-

22  scribed in paragraph (1) occurring on that Internet

23  site or portion thereof.

24  (b) DENYING U.S. FINANCIAL SUPPORT OF SITES

25  DEDICATED TO THEFT OF U.S. PROPERTY.—

1          (1) PAYMENT NETWORK PROVIDERS.—Except
2     in the case of an effective counter notification pursu-
3     ant to paragraph (5), a payment network provider
4     shall take technically feasible and reasonable meas-
5     ures, as expeditiously as possible, but in any case
6     within 5 days after delivery of a notification under
7     paragraph (4), that are designed to prevent, pro-
8     hibit, or suspend its service from completing pay-
9     ment transactions involving customers located within
10    the United States and the Internet site, or portion
11    thereof, that is specified in the notification under
12    paragraph (4).

13         (2) INTERNET ADVERTISING SERVICES.—Ex-
14    cept in the case of an effective counter notification
15    pursuant to paragraph (5), an Internet advertising
16    service that contracts with the operator of an Inter-
17    net site, or portion thereof, that is specified in a no-
18    tification delivered under paragraph (4), to provide
19    advertising to or for such site or portion thereof, or
20    that knowingly serves advertising to or for such site
21    or portion thereof, shall take technically feasible and
22    reasonable measures, as expeditiously as possible,
23    but in any case within 5 days after delivery the noti-
24    fication under paragraph (4), that are designed to—

28

1          (A) prevent its service from providing ad-
2     vertisements to or relating to the Internet site,
3     or portion thereof, that is specified in the notifi-
4     cation;

5          (B) cease making available advertisements
6     for such Internet site, or portion thereof, that
7     is specified in the notification, or paid or spon-
8     sored search results, links, or other placements
9     that provide access to such Internet site, or
10    portion thereof, that is specified in the notifica-
11    tion; and

12         (C) cease providing or receiving any com-
13    pensation for advertising or related services to,
14    from, or in connection with such Internet site,
15    or portion thereof, that is specified in the notifi-
16    cation.

17    (3) DESIGNATED AGENT.—

18         (A) IN GENERAL.—Each payment network
19    provider and each Internet advertising service
20    shall designate an agent to receive notifications
21    described in paragraph (4), by making available
22    through its service, including on its Web site in
23    a location accessible to the public, and by pro-
24    viding to the Copyright Office, substantially the
25    following:

29

1         (i) The name, address, phone number,

2       and electronic mail address of the agent.

3         (ii) Other contact information that the

4       Register of Copyrights considers appro-

5       priate.

6       (B) DIRECTORY OF AGENTS.—The Reg-

7     ister of Copyrights shall maintain and make

8     available to the public for inspection, including

9     through the Internet, in electronic format, a

10    current directory of agents designated under

11    subparagraph (A).

12    (4) NOTIFICATION REGARDING INTERNET SITES

13   DEDICATED TO THEFT OF U.S. PROPERTY.—

14       (A) REQUIREMENTS.—Subject to subpara-

15     graph (B), a notification under this paragraph

16     is effective only if it is a written communication

17     that is provided to the designated agent of a

18     payment network provider or an Internet adver-

19     tising service and includes substantially the fol-

20     lowing:

21         (i) A physical or electronic signature

22       of a person authorized to act on behalf of

23       the holder of an intellectual property right

24       harmed by the activities described in sub-

25       section (a)(1).

30

1          (ii) Identification of the Internet site,
2     or portion thereof, dedicated to theft of
3     U.S. property, including either the domain
4     name or Internet Protocol address of such
5     site, or both.

6          (iii) Identification of the specific facts
7     to support the claim that the Internet site,
8     or portion thereof, is dedicated to theft of
9     U.S. property and to clearly show that im-
10    mediate and irreparable injury, loss, or
11    damage will result to the holder of the in-
12    tellectual property right harmed by the ac-
13    tivities described in subsection (a)(1) in
14    the absence of timely action by the pay-
15    ment network provider or Internet adver-
16    tising service.

17         (iv) Information reasonably sufficient
18    to establish that the payment network pro-
19    vider or Internet advertising service is pro-
20    viding payment processing or Internet ad-
21    vertising services for such site.

22         (v) Information reasonably sufficient
23    to permit the payment network provider or
24    Internet advertising service to contact the
25    holder of the intellectual property right

31

1    harmed by the activities described in sub-

2        section (a)(1).

3            (vi) A statement that the holder of the

4        intellectual property right has a good faith

5        belief that the use of the owner's works or

6        goods in which the right exists, in the

7        manner described in the notification, is not

8        authorized by the holder, its agent, or law.

9            (vii) A statement that the information

10        in the notification is accurate, and, under

11        penalty of perjury, that the signatory is

12        authorized to act on behalf of the holder of

13        the intellectual property right harmed by

14        the   activities   described   in   subsection

15        (a)(1).

16            (viii) Identification of the evidence in-

17        dicating that the site (or portion thereof)

18        is a U.S.-directed site.

19        (B) Service if no agent designated.—

20    If a payment network provider or Internet ad-

21    vertising service has not designated an agent

22    under paragraph (3), the notification under

23    subparagraph (A) may be provided to any offi-

24    cer or legal representative of such provider or

25    service.

32

1     (C) Notice to internet site identi-
2     fied in notification.—Upon receipt of an ef-
3     fective notification under this paragraph, a pay-
4     ment network provider or Internet advertising
5     service shall take appropriate steps to ensure
6     timely delivery of the notification to the Inter-
7     net site identified in the notification.

8   (5) Counter notification.—

9     (A) Requirements.—Subject to subpara-
10    graph (B), a counter notification is effective
11    under this paragraph only if it is a written com-
12    munication that is provided to the designated
13    agent of a payment network provider or an
14    Internet advertising service and includes sub-
15    stantially the following:

16        (i) A physical or electronic signature
17        of the owner or operator of the Internet
18        site, or portion thereof, specified in a noti-
19        fication under paragraph (4) subject to
20        which action is to be taken by the payment
21        network provider or Internet advertising
22        service under paragraph (1) or (2), or of
23        the registrant of the domain name used by
24        such site or portion thereof.

33

1          (ii) In the case of an Internet site
2     specified in the notification under para-
3     graph (4) that is a foreign Internet site, a
4     statement that the owner or operator, or
5     registrant, consents to the jurisdiction of
6     the courts of the United States, and will
7     accept service of process from the person
8     who provided notification under paragraph
9     (4), or an agent of such person, for pur-
10    poses of adjudicating whether the site is an
11    Internet site dedicated to theft of U.S.
12    property under this section.

13         (iii) A statement under penalty of per-
14    jury that the owner or operator, or reg-
15    istrant, has a good faith belief that it does
16    not meet the criteria of an Internet site
17    dedicated to theft of U.S. property as set
18    forth under this section.

19         (iv) The name, address, email ad-
20    dress, and telephone number of the owner,
21    operator, or registrant.

22    (B) SERVICE IF NO AGENT DESIGNATED.—
23    If a payment network provider or Internet ad-
24    vertising service has not designated an agent
25    under paragraph (3), the counter notification

34

1    under subparagraph (A) may be provided to

2    any officer or legal representative of such pro-

3    vider or service.

4        (6) MISREPRESENTATIONS.—Any provider of a

5    notification or counter notification who knowingly

6    materially misrepresents under this section—

7            (A) that a site is an Internet site dedicated

8        to the theft of U.S. property, or

9            (B) that such site does not meet the cri-

10       teria of an Internet site dedicated to the theft

11       of U.S. property,

12   shall be liable for damages, including costs and at-

13   torneys' fees, incurred by the person injured by such

14   misrepresentation as a result of the misrepresenta-

15   tion.

16   (c) LIMITED INJUNCTIVE RELIEF IN CASES OF

17   COUNTER NOTIFICATION.—

18       (1) IN PERSONAM.—If an effective counter noti-

19   fication is made under subsection (b)(5), or if a pay-

20   ment network provider fails to comply with sub-

21   section (b)(1), or an Internet advertising service fails

22   to comply with subsection (b)(2), pursuant to a noti-

23   fication under subsection (b)(4) in the absence of

24   such a counter notification, a qualifying plaintiff

25   may commence an in personam action against—

35

1          (A) a registrant of a domain name used by

2          the Internet site, or portion thereof, that is sub-

3          ject to the notification under subsection (b)(4);

4          or

5          (B) an owner or operator of the Internet

6          site or portion thereof.

7      (2) IN REM.—If through due diligence a quali-

8  fying plaintiff who is authorized to bring an in per-

9  sonam action under paragraph (1) with respect to

10  an Internet site dedicated to theft of U.S. property

11  is unable to find a person described in subpara-

12  graphs (A) or (B) of paragraph (1), or no such per-

13  son found has an address within a judicial district

14  of the United States, the qualifying plaintiff may

15  commence an in rem action against that Internet

16  site or the domain name used by such site.

17      (3)  NOTICE.—Upon   commencing   an   action

18  under this subsection, the qualifying plaintiff shall

19  send a notice of the alleged activity described in sub-

20  section (a)(1) and intent to proceed under this sub-

21  section—

22          (A) to the registrant of the domain name

23          of the Internet site, or portion thereof, that is

24          the subject to the notification under subsection

25          (b)(4)—

36

1             (i) at the postal and electronic mail
2         addresses appearing in the applicable pub-
3         licly accessible database of registrations, if
4         any, and to the extent such addresses are
5         reasonably available; and
6             (ii) via the postal and electronic mail
7         addresses of the registrar, registry, or
8         other domain name registration authority
9         that registered or assigned the domain
10        name of the Internet site, or portion there-
11        of, to the extent such addresses are reason-
12        ably available;
13        (B) to the owner or operator of the Inter-
14    net site, or portion thereof—
15            (i) at the primary postal and elec-
16        tronic mail addresses for such owner or op-
17        erator that are provided on the Internet
18        site, or portion thereof, if any, and to the
19        extent such addresses are reasonably avail-
20        able; or
21            (ii) if there is no domain name of the
22        Internet site or portion thereof, via the
23        postal and electronic mail addresses of the
24        Internet Protocol allocation entity appear-
25        ing in the applicable publicly accessible

37

1                database of allocations and assignments, if

2                any, and to the extent such addresses are

3                reasonably available; or

4                (C) in any other such form as the court

5                may prescribe, including as may be required by

6                rule 4(f) of the Federal Rules of Civil Proce-

7                dure.

8        (4) SERVICE OF PROCESS.—For purposes of

9    this section, the actions described in this subsection

10    shall constitute service of process.

11        (5) RELIEF.—On application of a qualifying

12    plaintiff following the commencement of an action

13    under this section with respect to an Internet site

14    dedicated to theft of U.S. property, the court may

15    issue a temporary restraining order, a preliminary

16    injunction, or an injunction, in accordance with rule

17    65 of the Federal Rules of Civil Procedure, against

18    a registrant of a domain name used by the Internet

19    site, or against an owner or operator of the Internet

20    site, or, in an action brought in rem under para-

21    graph (2), against the Internet site, or against the

22    domain name used by the Internet site, to cease and

23    desist from undertaking any further activity as an

24    Internet site dedicated to theft of U.S. property.

25    (d) ACTIONS BASED ON COURT ORDERS.—

38

1    (1) SERVICE AND RESPONSE.—

2        (A) SERVICE BY QUALIFYING PLAIN-

3    TIFF.—A qualifying plaintiff, with the prior ap-

4    proval of the court, may serve a copy of a court

5    order issued under subsection (c) on similarly

6    situated entities described in paragraph (2).

7    Proof of service shall be filed with the court.

8        (B) RESPONSE.—An entity served under

9    subparagraph (A) shall, not later than 7 days

10   after the date of such service, file with the

11   court a certification acknowledging receipt of a

12   copy of the order and stating that such entity

13   has complied or will comply with the obligations

14   imposed under paragraph (2), or explaining

15   why the entity will not so comply.

16       (C) VENUE FOR SERVICE.—A copy of the

17   court order may be served in any judicial dis-

18   trict where an entity resides or may be found.

19   (2)  REASONABLE  MEASURES.—After  being

20   served with a copy of an order pursuant to this sub-

21   section, the following shall apply:

22       (A) PAYMENT NETWORK PROVIDERS.—

23           (i)  PREVENTING  AFFILIATION.—A

24       payment network provider shall take tech-

25       nically  feasible  and  reasonable  measures,

39

1     as expeditiously as possible, but in any

2     case within 5 days after being served with

3     a copy of the court order, or within such

4     time as the court may order, that are de-

5     signed to prevent, prohibit, or suspend its

6     service from completing payment trans-

7     actions involving customers located within

8     the United States or subject to the juris-

9     diction of the United States and any ac-

10    count—

11            (I) which is used by the Internet

12        site dedicated to theft of U.S. prop-

13        erty that is subject to the order; and

14            (II) through which the payment

15        network provider would complete such

16        payment transactions.

17        (ii) NO DUTY TO MONITOR.—A pay-

18    ment network provider is in compliance

19    with clause (i) if it takes action described

20    in that clause with respect to accounts it

21    has as of the date of service of the order,

22    or as of the date of any subsequent notice

23    that its service is being used to complete

24    payment transactions described in clause

25    (i).

40

1    (B) INTERNET ADVERTISING SERVICES.—

2         (i) REQUIRED ACTIONS.—An Internet

3    advertising service that contracts with the

4    Internet site dedicated to theft of U.S.

5    property that is subject to the order to

6    provide advertising to or for such Internet

7    site, or that knowingly serves advertising

8    to or for such internet site, shall take tech-

9    nically feasible and reasonable measures,

10   as expeditiously as possible, but in any

11   case within 5 days after being served with

12   a copy of the order, or within such time as

13   the court may order, that are designed

14   to—

15        (I) prevent its service from pro-

16        viding advertisements to or relating to

17        the Internet site;

18        (II) cease making available ad-

19        vertisements for the Internet site, or

20        paid or sponsored search results,

21        links, or other placements that pro-

22        vide access to the Internet site; and

23        (III) cease providing or receiving

24        any compensation for advertising or

41

1          related services to, from, or in connec-
2          tion with the Internet site.
3              (ii) No duty to monitor.—An inter-
4          net advertising service is in compliance
5          with clause (i) if it takes action described
6          in that clause with respect to accounts it
7          has as of the date on which a copy of the
8          order is served, or as of the date of any
9          subsequent notice that its service is being
10         used for activities described in clause (i).
11     (3) Communication with users.—An entity
12 taking an action described in this subsection shall
13 determine the means to communicate such action to
14 the entity's users or customers.
15     (4) Enforcement of orders.—
16         (A) Rule of construction.—The au-
17     thority under this subsection shall be the sole
18     legal remedy to enforce the obligations of any
19     entity under this subsection.
20         (B) Procedures and relief.—
21             (i) Show cause order.—On a show-
22         ing by the qualifying plaintiff of probable
23         cause to believe that an entity served with
24         a copy of a court order issued under sub-
25         section (c) has not complied with its obli-

42

1      gations under this subsection by reason of

2      such court order, the court shall require

3      the entity to show cause why an order

4      should not issue—

5           (I) to require compliance with the

6           obligations of this subsection; and

7           (II) to impose an appropriate

8           monetary sanction, consistent with the

9           court's exercise of its equitable au-

10          thority, to enforce compliance with its

11          lawful orders, if the entity—

12             (aa) has knowingly and will-

13             fully failed to file a certification

14             required by paragraph (1)(B);

15             (bb) has filed such a certifi-

16             cation agreeing to comply but

17             has knowingly and willfully failed

18             to do so; or

19             (cc) has knowingly and will-

20             fully certified falsely that compli-

21             ance with the requirements of

22             paragraph (2) is not required by

23             law.

24          (ii) SERVICE OF PROCESS.—The order

25      to show cause, and any other process, may

43

1        be served in any judicial district where the

2        entity resides or may be found.

3        (C) DEFENSE.—An entity against whom

4    relief is sought under subparagraph (B) may

5    establish an affirmative defense by showing that

6    the entity does not have the technical means to

7    comply with this subsection without incurring

8    an unreasonable economic burden, or that the

9    order is not authorized by this subsection. Such

10   showing shall not be presumed to be a complete

11   defense but shall serve as a defense only for

12   those measures for which a technical limitation

13   on compliance is demonstrated or for such por-

14   tions of the order as are demonstrated to be un-

15   authorized by this subsection.

16   (5) IMMUNITY.—

17    (A) IMMUNITY FROM SUIT.—Other than in

18   an action pursuant to paragraph (4), no cause

19   of action shall lie in any Federal or State court

20   or administrative agency against any entity

21   served with a copy of a court order issued

22   under subsection (c), or against any director,

23   officer, employee, or agent thereof, for any act

24   reasonably designed to comply with this sub-

25   section or reasonably arising from such order.

44

1              (B) IMMUNITY FROM LIABILITY.—Other

2         than in an action pursuant to paragraph (4)—

3                   (i) any entity served with a copy of an

4              order under this subsection, and any direc-

5              tor, officer, employee, or agent thereof,

6              shall not be liable for any acts reasonably

7              designed to comply with this subsection or

8              reasonably arising from such order; and

9                   (ii) any—

10                      (I) actions taken by customers of

11                 such entity to circumvent any restric-

12                 tion on access to the Internet site, or

13                 portion thereof that is subject to such

14                 order, that is instituted pursuant to

15                 this subsection, or

16                      (II) act, failure, or inability to re-

17                 strict access to an Internet site or

18                 portion thereof that is subject to such

19                 order, despite good faith efforts to

20                 comply with such order by such enti-

21                 ty,

22            shall not be used by any person in any

23            claim or cause of action against such enti-

24            ty.

25     (e) MODIFICATION OR VACATION OF ORDERS.—

45

(1) IN GENERAL.—At any time after the issuance of an order under subsection (c), or an amended order issued under subsection (f), with respect to an Internet site dedicated to theft of U.S. property, a motion to modify, suspend, or vacate the order may be filed by—

(A) any person, or owner or operator of property, that is subject to the order;

(B) any registrant of the domain name, or the owner or operator, of such Internet site;

(C) any domain name registrar, registry, or other domain name registration authority that has registered or assigned the domain name of such Internet site; or

(D) any entity that has been served with a copy of an order under subsection (d), or an amended order under subsection (f), that requires such entity to take action prescribed in that subsection.

(2) RELIEF.—Relief under this subsection shall be proper if the court finds that—

(A) the Internet site subject to the order is no longer, or never was, an Internet site dedicated to theft of U.S. property; or

46

1          (B) the interests of justice otherwise re-
2     quire that the order be modified, suspended, or
3     vacated.

4          (3) CONSIDERATION.—In making a relief deter-
5     mination under paragraph (2), a court may consider
6     whether the domain name of the Internet site has
7     expired or has been re-registered by an entity other
8     than the entity that is subject to the order with re-
9     spect to which the motion under paragraph (1) is
10    brought.

11         (4) INTERVENTION.—An entity required to take
12    action pursuant to subsection (d) if an order issues
13    under subsection (c) may intervene at any time in
14    any action commenced under subsection (c) that
15    may result in such order, or in any action to modify,
16    suspend, or vacate such order under this subsection.

17    (f) AMENDED ORDERS.—The qualifying plaintiff, if
18 alleging that an Internet site previously adjudicated in an
19 action under this section to be an Internet site dedicated
20 to theft of U.S. property is accessible or has been reconsti-
21 tuted at a different domain name or Internet Protocol ad-
22 dress, may petition the court to amend the order issued
23 under this section accordingly.

24    (g) REPORTING OF ORDERS.—

47

1        (1) IN GENERAL.—The qualifying plaintiff shall

2     inform the Intellectual Property Enforcement Coor-

3     dinator of any court order issued under subsection

4     (c) or amended order issued under subsection (f).

5        (2)  ALTERATIONS.—Upon   the   modification,

6     suspension, expiration, or vacation of a court order

7     issued under subsection (c) or an amended order

8     issued under subsection (f), the qualifying plaintiff

9     shall, and the defendant may, so inform the Intellec-

10     tual Property Enforcement Coordinator.

11  **SEC. 104. IMMUNITY FOR TAKING VOLUNTARY ACTION**

12            **AGAINST SITES DEDICATED TO THEFT OF U.S.**

13            **PROPERTY.**

14        No cause of action shall lie in any Federal or State

15  court or administrative agency against, no person may rely

16  in any claim or cause of action against, and no liability

17  for damages to any person shall be granted against, a

18  service provider, payment network provider, Internet ad-

19  vertising service, advertiser, Internet search engine, do-

20  main name registry, or domain name registrar for taking

21  any  action  described  in  section  102(c)(2),  section

22  103(d)(2), or section 103(b) with respect to an Internet

23  site, or otherwise voluntarily blocking access to or ending

24  financial affiliation with an Internet site, in the reasonable

25  belief that—

48

1  (1) the Internet site is a foreign infringing site

2  or is an Internet site dedicated to theft of U.S. prop-

3  erty; and

4  (2) the action is consistent with the entity's

5  terms of service or other contractual rights.

6  **SEC. 105. IMMUNITY FOR TAKING VOLUNTARY ACTION**

7  **AGAINST SITES THAT ENDANGER PUBLIC**

8  **HEALTH.**

9  (a) REFUSAL OF SERVICE.—A service provider, pay-

10  ment network provider, Internet advertising service, ad-

11  vertiser, Internet search engine, domain name registry, or

12  domain name registrar, acting in good faith and based on

13  credible evidence, may stop providing or refuse to provide

14  services to an Internet site that endangers the public

15  health.

16  (b) IMMUNITY FROM LIABILITY.—An entity de-

17  scribed in subsection (a), including its directors, officers,

18  employees, or agents, that ceases or refuses to provide

19  services under subsection (a) shall not be liable to any per-

20  son under any Federal or State law for such action.

21  (c) DEFINITIONS.—In this section:

22  (1) ADULTERATED.—The term "adulterated"

23  has the meaning given that term in section 501 of

24  the Federal Food, Drug, and Cosmetic Act (21

25  U.S.C. 351).

49

1    (2) INTERNET SITE THAT ENDANGERS THE

2 PUBLIC HEALTH.—The term "Internet site that en-

3 dangers the public health" means an Internet site

4 that is primarily designed or operated for the pur-

5 pose of, has only limited purpose or use other than,

6 or is marketed by its operator or another acting in

7 concert with that operator for use in—

8        (A) offering, selling, dispensing, or distrib-

9    uting any prescription medication, and does so

10   regularly without a valid prescription; or

11       (B) offering, selling, dispensing, or distrib-

12   uting any prescription medication that is adul-

13   terated or misbranded.

14   (3) MISBRANDED.—the term "misbranded" has

15 the meaning given that term in section 502 of the

16 Federal Food, Drug, and Cosmetic Act (21 U.S.C.

17 352).

18   (4) PRESCRIPTION MEDICATION.—

19       (A)  PRESCRIPTION  MEDICATION.—The

20   term "prescription medication" means a drug

21   that is subject to section 503(b) of the Federal

22   Food, Drug, and Cosmetic Act (21 U.S.C.

23   353(b)).

24       (B) DRUG.—The term "drug" has the

25   meaning given that term in section 201(g)(1) of

50

1       the Federal Food Drug, and Cosmetic Act (21

2       U.S.C. 321(g)(1)).

3           (5) VALID PRESCRIPTION.—The term "valid

4       prescription" has the meaning given that term in

5       section 309(e)(2)(A) of the Controlled Substances

6       Act (21 U.S.C. 829(e)(2)(A)).

**SEC. 106. GUIDELINES AND STUDY.**

8   (a) GUIDELINES.—The Attorney General shall—

9           (1) provide appropriate resources and proce-

10      dures for case management and development to ef-

11      fect timely disposition of actions brought under this

12      title;

13          (2) develop a deconfliction process in consulta-

14      tion with appropriate law enforcement agencies, in-

15      cluding U.S. Immigration and Customs Enforce-

16      ment, to coordinate enforcement activities under this

17      title;

18          (3) publish procedures developed in consultation

19      with appropriate law enforcement agencies, including

20      U.S. Immigration and Customs Enforcement, to re-

21      ceive information from the public relevant to the en-

22      forcement of this title; and

23          (4) provide guidance to intellectual property

24      rights holders about what information such rights

25      holders should provide to assist in initiating an in-

51

1    vestigation or to supplement an ongoing investiga-

2    tion pursuant to this title.

3    (b) STUDY.—

4        (1) NATURE OF STUDY.—The Register of Copy-

5    rights, in consultation with appropriate departments

6    and agencies of the United States and other stake-

7    holders, shall conduct a study on the enforcement

8    and effectiveness of this title and on any need to

9    amend the provisions of this title to adapt to emerg-

10   ing technologies.

11       (2) REPORTS TO CONGRESS.—Not later than 2

12   years after the date of the enactment of this Act, the

13   Register of Copyrights shall submit to the Commit-

14   tees on the Judiciary of the House of Representa-

15   tives and the Senate a report containing the results

16   of the study conducted under this subsection and

17   any recommendations that the Register may have as

18   a result of the study.

19   **SEC. 107. DENYING U.S. CAPITAL TO NOTORIOUS FOREIGN**

20                **INFRINGERS.**

21   (a) IDENTIFICATION AND RECOMMENDATIONS RE-

22   GARDING NOTORIOUS FOREIGN INFRINGERS.—

23       (1) IN GENERAL.—Using existing resources, the

24   Intellectual Property Enforcement Coordinator, in

25   consultation with the Secretaries of Treasury and

52

1    Commerce, the United States Trade Representative,
2    the Chairman of the Securities and Exchange Com-
3    mission, and the heads of other departments and ap-
4    propriate agencies, shall identify and conduct an
5    analysis of notorious foreign infringers whose activi-
6    ties cause significant harm to holders of intellectual
7    property rights in the United States.

8        (2) PUBLIC INPUT.—In carrying out paragraph
9        (1), the Intellectual Property Enforcement Coordi-
10       nator shall solicit and give consideration to the views
11       and recommendations of members of the public, in-
12       cluding holders of intellectual property rights in the
13       United States.

14   (b) REPORT TO CONGRESS.—The Intellectual Prop-
15   erty Enforcement Coordinator shall, not later than 6
16   months after the date of the enactment of this Act, submit
17   to the Committees on the Judiciary of the House of Rep-
18   resentatives and the Senate a report that includes the fol-
19   lowing:

20       (1) An analysis of notorious foreign infringers
21       and a discussion of how these infringers violate in-
22       dustry norms regarding the protection of intellectual
23       property.

24       (2) An analysis of the significant harm inflicted
25       by notorious foreign infringers on consumers, busi-

53

1  nesses, and intellectual property industries in the

2  United States and abroad.

3      (3) An examination of whether notorious for-

4  eign infringers have attempted to or succeeded in ac-

5  cessing capital markets in the United States for

6  funding or public offerings.

7      (4) An analysis of the adequacy of relying upon

8  foreign governments to pursue legal action against

9  notorious foreign infringers.

10     (5) A discussion of specific policy recommenda-

11  tions to deter the activities of notorious foreign in-

12  fringers and encourage foreign businesses to adopt

13  industry norms that promote the protection of intel-

14  lectual property globally, including addressing—

15         (A) whether notorious foreign infringers

16      that engage in significant infringing activity

17      should be prohibited by the laws of the United

18      States from seeking to raise capital in the

19      United States, including offering stock for sale

20      to the public; and

21         (B) whether the United States Government

22      should initiate a process to identify and des-

23      ignate foreign entities from a list of notorious

24      foreign infringers that would be prohibited from

25      raising capital in the United States.

54

# TITLE II—ADDITIONAL EN-HANCEMENTS TO COMBAT IN-TELLECTUAL PROPERTY THEFT

**SEC. 201. STREAMING OF COPYRIGHTED WORKS IN VIOLA-TION OF CRIMINAL LAW.**

(a) TITLE 17 AMENDMENTS.—Section 506(a) of title 17, United States Code, is amended to read as follows:

"(a) CRIMINAL INFRINGEMENT.—

    "(1) IN GENERAL.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—

        "(A) for purposes of commercial advantage or private financial gain;

        "(B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, or by the pub-lic performance by means of digital trans-mission, during any 180-day period, of 1 or more copyrighted works, when the total retail value of the copies or phonorecords, or of the public performances, is more than $1,000; or

55

1          "(C) by the distribution or public perform-
2      ance of a work being prepared for commercial
3      dissemination, by making it available on a com-
4      puter network accessible to members of the
5      public, if such person knew or should have
6      known that the work was intended for commer-
7      cial dissemination.

8      "(2) EVIDENCE.—For purposes of this sub-
9   section, evidence of reproduction, distribution, or
10   public performance of a copyrighted work, by itself,
11   shall not be sufficient to establish willful infringe-
12   ment of a copyright.

13      "(3) DEFINITION.—In this subsection, the term
14   'work being prepared for commercial dissemination'
15   means—

16          "(A) a computer program, a musical work,
17      a motion picture or other audiovisual work, or
18      a sound recording, if, at the time of unauthor-
19      ized distribution or public performance—

20              "(i)(I) the copyright owner has a rea-
21          sonable expectation of commercial distribu-
22          tion; and

23              "(II) the copies or phonorecords of
24          the work have not been commercially dis-
25          tributed in the United States by or with

56

1          the authorization of the copyright owner;

2          or

3                    ''(ii)(I) the copyright owner does not

4          intend to offer copies of the work for com-

5          mercial distribution but has a reasonable

6          expectation of other forms of commercial

7          dissemination of the work; and

8                    ''(II) the work has not been commer-

9          cially disseminated to the public in the

10         United States by or with the authorization

11         of the copyright owner;

12                   ''(B) a motion picture, if, at the time of

13         unauthorized distribution or public perform-

14         ance, the motion picture—

15                   ''(i)(I) has been made available for

16         viewing in a motion picture exhibition facil-

17         ity; and

18                   ''(II) has not been made available in

19         copies for sale to the general public in the

20         United States by or with the authorization

21         of the copyright owner in a format in-

22         tended to permit viewing outside a motion

23         picture exhibition facility; or

24                   ''(ii) had not been commercially dis-

25         seminated to the public in the United

57

States by or with the authorization of the
copyright owner more than 24 hours before
the unauthorized distribution or public per-
formance.".

(b) TITLE 18 AMENDMENTS.—Section 2319 of title
18, United States Code, is amended—

(1) in subsection (b)(1), by striking "during
any 180-day period" and all that follows and insert
"of at least 10 copies or phonorecords, or of at least
10 public performances by means of digital trans-
mission, of 1 or more copyrighted works, during any
180-day period, which have a total retail value of
more than $2,500;";

(2) in subsection (c)—

(A) in paragraph (1), by striking "of 10 or
more copies or phonorecords" and all that fol-
lows and inserting "including by electronic
means, of at least 10 copies or phonorecords, or
of at least 10 public performances by means of
digital transmission, of 1 or more copyrighted
works, during any 180-day period, which have
a total retail value of more than $2,500;"; and

(B) in paragraph (3), by striking "if the
offense" and all that follows and inserting "in
any other case;";

58

1         (3) in subsection (d)(4), by striking ''under

2    paragraph (2)'' and inserting ''committed for pur-

3    poses of commercial advantage or private financial

4    gain under subsection (a)'';

5         (4) in subsection (f)—

6         (A) by amending paragraph (2) to read as

7    follows:

8       ''(2) the terms 'reproduction', 'distribution',

9    and 'public performance' refer to the exclusive rights

10   of a copyright owner under paragraphs (1), (3), (4),

11   and (6), respectively, of section 106 (relating to ex-

12   clusive rights in copyrighted works), as limited by

13   sections 107 through 122, of title 17; and'';

14        (B) in paragraph (3), by striking ''; and''

15    and inserting a period; and

16        (C) by striking paragraph (4); and

17         (5) by adding at the end the following new sub-

18   section:

19   ''(g) EVIDENCE OF TOTAL RETAIL VALUE.—For

20 purposes of this section and section 506(a) of title 17,

21 total retail value may be shown by evidence of—

22       ''(1) the total retail price that persons receiving

23    the reproductions, distributions, or public perform-

24    ances constituting the offense would have paid to re-

59

1     ceive such reproductions, distributions, or public per-

2     formances lawfully;

3         ''(2) the total economic value of the reproduc-

4     tions, distributions, or public performances to the in-

5     fringer or to the copyright owner, as shown by evi-

6     dence of fee, advertising, or other revenue that was

7     received by the person who commits the offense, or

8     that the copyright owner would have been entitled to

9     receive had such reproductions, distributions, or

10    public performances been offered lawfully; or

11        ''(3) the total fair market value of licenses to

12    offer the type of reproductions, distributions, or pub-

13    lic performances constituting the offense.''.

14    (c) RULE OF CONSTRUCTION.—Any person acting

15 with a good faith reasonable basis in law to believe that

16 the person's conduct is lawful shall not be considered to

17 have acted willfully for purposes of the amendments made

18 by this section. Such person includes, but is not limited

19 to, a person engaged in conduct forming the basis of a

20 bona fide commercial dispute over the scope of existence

21 of a contract or license governing such conduct where such

22 person has a reasonable basis in law to believe that such

23 conduct is noninfringing. Nothing in this subsection shall

24 affect the application or interpretation of the willfulness

25 requirement in any other provision of civil or criminal law.

60

1 SEC. 202. TRAFFICKING IN INHERENTLY DANGEROUS

2              GOODS OR SERVICES.

3     Section 2320 of title 18, United States Code, is

4 amended as follows:

5     (1) Subsection (a) is amended to read as fol-

6   lows:

7         "(1) IN GENERAL.—

8             "(A) OFFENSES.—Whoever—

9                 "(i) intentionally traffics or attempts

10              to traffic in goods or services and know-

11              ingly uses a counterfeit mark on or in con-

12              nection with such goods or services,

13                 "(ii) intentionally traffics or attempts

14              to traffic in labels, patches, stickers, wrap-

15              pers, badges, emblems, medallions, charms,

16              boxes, containers, cans, cases, hangtags,

17              documentation, or packaging of any type

18              or nature, knowing that a counterfeit mark

19              has been applied thereto, the use of which

20              is likely to cause confusion, to cause mis-

21              take, or to deceive, or

22                 "(iii) intentionally imports, exports, or

23              traffics in counterfeit drugs or inten-

24              tionally participates in or knowingly aids

25              drug counterfeiting,

61

1       shall, if an individual, be fined not more than

2       $2,000,000 or imprisoned not more than 10

3       years, or both, and, if a person other than an

4       individual, be fined not more than $5,000,000.

5           "(B) SUBSEQUENT OFFENSES.—In the

6       case of an offense by a person under this para-

7       graph that occurs after that person is convicted

8       of another offense under this paragraph, the

9       person convicted, if an individual, shall be fined

10      not more than $5,000,000 or imprisoned not

11      more than 20 years, or both, and if other than

12      an individual, shall be fined not more than

13      $15,000,000.

14      "(2) SERIOUS BODILY HARM OR DEATH.—

15          "(A) SERIOUS BODILY HARM.—If the of-

16      fender knowingly or recklessly causes or at-

17      tempts to cause serious bodily injury from con-

18      duct in violation of paragraph (1), the penalty

19      shall be, for an individual, a fine of not more

20      than $5,000,000 or imprisonment for any term

21      of years or for life, or both, and for other than

22      an individual, a fine of not more than

23      $15,000,000.

24          "(B) DEATH.—If the offender knowingly

25      or recklessly causes or attempts to cause death

62

1     from conduct in violation of paragraph (1), the

2     penalty shall be, for an individual, a fine of not

3     more than $5,000,000 or imprisonment for any

4     term of years or for life, or both, and for other

5     than an individual, a fine of not more than

6     $15,000,000.

7     ''(3) MILITARY GOODS OR SERVICES.—

8         ''(A) IN GENERAL.—A person who com-

9     mits an offense under paragraph (1) shall be

10    punished in accordance with subparagraph (B)

11    if—

12            ''(i) the offense involved a good or

13        service described in paragraph (1) that if

14        it malfunctioned, failed, or was com-

15        promised, could reasonably be foreseen to

16        cause—

17                ''(I) serious bodily injury or

18            death;

19                ''(II) disclosure of classified in-

20            formation;

21                ''(III) impairment of combat op-

22            erations; or

23                ''(IV) other significant harm—

24                    ''(aa) to a member—

63

1                                 "(AA) of the Armed

2                                 Forces; or

3                                 "(BB) of a Federal,

4                                 State, or local law enforce-

5                                 ment agency; or

6                         "(bb) to national security or

7                         critical infrastructure; and

8            "(ii) the person had knowledge that

9 the good or service is falsely identified as

10 meeting military standards or is intended

11 for use in a military or national security

12 application, or a law enforcement or crit-

13 ical infrastructure application.

14 "(B) PENALTIES.—

15            "(i) INDIVIDUAL.—An individual who

16 commits an offense described in subpara-

17 graph (A) shall be fined not more than

18 $5,000,000, imprisoned for not more than

19 20 years, or both.

20            "(ii) PERSON OTHER THAN AN INDI-

21 VIDUAL.—A person other than an indi-

22 vidual that commits an offense described in

23 subparagraph (A) shall be fined not more

24 than $15,000,000.

25 "(C) SUBSEQUENT OFFENSES.—

1           "(i) INDIVIDUAL.—An individual who
2       commits an offense described in subpara-
3       graph (A) after the individual is convicted
4       of an offense under subparagraph (A) shall
5       be fined not more than $15,000,000, im-
6       prisoned not more than 30 years, or both.
7           "(ii) PERSON OTHER THAN AN INDI-
8       VIDUAL.—A person other than an indi-
9       vidual that commits an offense described in
10      subparagraph (A) after the person is con-
11      victed of an offense under subparagraph
12      (A) shall be fined not more than
13      $30,000,000.".
14  (2) Subsection (e) is amended—
15      (A) in paragraph (1), by striking the pe-
16  riod at the end and inserting a semicolon;
17      (B) in paragraph (3), by striking "and" at
18  the end;
19      (C) in paragraph (4), by striking the pe-
20  riod at the end and inserting a semicolon; and
21      (D) by adding at the end the following:
22      "(5) the term 'counterfeit drug' has the mean-
23  ing given that term in section 201(g)(2) of the Fed-
24  eral Food Drug, and Cosmetic Act (21 U.S.C.
25  321(g)(2));

65

1       ''(6) the term 'critical infrastructure' has the

2    meaning given that term in section 2339D(c);

3       ''(7) the term 'drug counterfeiting' means any

4    act prohibited by section 301(i) of the Federal Food

5    Drug, and Cosmetic Act (21 U.S.C. 331(i));

6       ''(8) the term 'final dosage form' has the mean-

7    ing given that term in section 735(4) of the Federal

8    Food, Drug, and Cosmetic Act (21 U.S.C. 379g(4));

9       ''(9) the term 'falsely identified as meeting mili-

10    tary standards' relating to a good or service means

11    there is a material misrepresentation that the good

12    or service meets a standard, requirement, or speci-

13    fication issued by the Department of Defense, an

14    Armed Force, or a reserve component;

15       ''(10) the term 'use in a military or national se-

16    curity application' means the use of a good or serv-

17    ice, independently, in conjunction with, or as a com-

18    ponent of another good or service—

19       ''(A) during the performance of the official

20       duties of the Armed Forces of the United

21       States or the reserve components of the Armed

22       Forces; or

23       ''(B) by the United States to perform or

24       directly support—

25          ''(i) combat operations; or

66

1            "(ii) critical national defense or na-
2        tional security functions; and

3        "(11) the term 'use in a law enforcement or
4    critical infrastructure application' means the use of
5    a good or service, independently, in conjunction
6    with, or as a component of, another good or service
7    by a person who is directly engaged in—

8            "(A) Federal, State, or local law enforce-
9        ment; or

10           "(B) an official function pertaining to crit-
11       ical infrastructure.".

12   **SEC. 203. PROTECTING U.S. BUSINESSES FROM FOREIGN**
13                **AND ECONOMIC ESPIONAGE.**

14   (a) FOR OFFENSES COMMITTED BY INDIVIDUALS.—
15   Section 1831(a) of title 18, United States Code, is amend-
16   ed, in the matter after paragraph (5)—

17       (1) by striking "15 years" and inserting "20
18   years"; and

19       (2) by striking "not more than $500,000" and
20   inserting "not less than $1,000,000 and not more
21   than $5,000,000".

22   (b) FOR OFFENSES COMMITTED BY ORGANIZA-
23   TIONS.—Section 1831(b) of such title is amended by strik-
24   ing "$10,000,000" and inserting "not more than the
25   greater of $10,000,000 or 3 times the value of the stolen

67

1  trade secret to the organization (including expenses for re-

2  search and design or other costs of reproducing the trade

3  secret that the organization has thereby avoided)''.

**SEC. 204. AMENDMENTS TO SENTENCING GUIDELINES.**

5      Not later than 180 days after the date of the enact-

6  ment of this Act, pursuant to its authority under section

7  994(p) of title 28, United States Code, the United States

8  Sentencing Commission shall—

9          (1) review, and if appropriate, amend Federal

10      Sentencing Guidelines and policy statements applica-

11      ble to persons convicted of—

12              (A) intellectual property offenses;

13              (B) an offense under section 2320(a) of

14          title 18, United States Code; or

15              (C) an offense under section 1831 of title

16          18, United States Code;

17          (2) in carrying out such review, consider

18      amending such Guidelines and policy statements

19      to—

20              (A) apply an appropriate offense level en-

21          hancement for intellectual property offenses

22          committed in connection with an organized

23          criminal enterprise;

68

1    (B) apply an appropriate offense level en-
2  hancement to the simple misappropriation of a
3  trade secret;

4    (C) apply an additional appropriate offense
5  level enhancement if the defendant transmits or
6  attempts to transmit the stolen trade secret
7  outside of the United States and an additional
8  appropriate enhancement if the defendant in-
9  stead commits economic espionage;

10    (D) provide that when a defendant trans-
11  mits trade secrets outside of the United States
12  or commits economic espionage, that the de-
13  fendant should face a minimum offense level;

14    (E) provide for an offense level enhance-
15  ment for Guidelines relating to the theft of
16  trade secrets and economic espionage, including
17  trade secrets transferred or attempted to be
18  transferred outside of the United States;

19    (F) apply an appropriate offense level en-
20  hancement and minimum offense level for of-
21  fenses under section 2320(a) of title 18, United
22  States Code, that involve a product intended for
23  use in a military or national security applica-
24  tion, or a law enforcement or critical infrastruc-
25  ture application;

69

1         (G) ensure that the Guidelines and policy

2         statements (including section 2B5.3 of the Fed-

3         eral Sentencing Guidelines (and any successor

4         thereto)) reflect—

5             (i) the serious nature of the offenses

6             described in section 2320(a) of title 18,

7             United States Code;

8             (ii) the need for an effective deterrent

9             and appropriate punishment to prevent of-

10            fenses under section 2320(a) of title 18,

11            United States Code; and

12            (iii) the effectiveness of incarceration

13            in furthering the objectives described in

14            clauses (i) and (ii); and

15         (H) ensure reasonable consistency with

16         other relevant directives and Guidelines and

17         Federal statutes;

18     (3) submit to Congress a report detailing the

19 Commission's actions with respect to each potential

20 amendment described in paragraph (2);

21     (4) make such conforming amendments to the

22 Federal Sentencing Guidelines as the Commission

23 determines necessary to achieve consistency with

24 other Guideline provisions and applicable law; and

70

1    (5) promulgate the Guidelines, policy state-

2    ments, or amendments provided for in this section

3    as soon as practicable in accordance with the proce-

4    dure set forth in section 21(a) of the Sentencing Act

5    of 1987 (28 U.S.C. 994 note), as though the author-

6    ity under that Act had not expired.

7  **SEC. 205. DEFENDING INTELLECTUAL PROPERTY RIGHTS**

8        **ABROAD.**

9  (a) RESOURCES TO PROTECT INTELLECTUAL PROP-

10  ERTY RIGHTS.—

11    (1) POLICY.—The Secretary of State and the

12    Secretary of Commerce, in consultation with the

13    Register of Copyrights, shall ensure that the protec-

14    tion in foreign countries of the intellectual property

15    rights of United States persons is a significant com-

16    ponent of United States foreign and commercial pol-

17    icy in general, and in relations with individual coun-

18    tries in particular.

19    (2) DEDICATION OF RESOURCES.—The Sec-

20    retary of State and the Secretary of Commerce, in

21    consultation with the Register of Copyrights, and

22    the heads of other appropriate departments and

23    agencies, shall ensure that adequate resources are

24    available at the United States embassy or diplomatic

25    mission (as the case may be) in any country that is

1    identified under section 182(a)(1) of the Trade Act

2    of 1974 (19 U.S.C. 2242(a)(1)) to ensure—

3         (A) aggressive support for enforcement ac-

4    tion against violations of the intellectual prop-

5    erty rights of United States persons in such

6    country;

7         (B) cooperation with and support for the

8    host government's efforts to conform its appli-

9    cable laws, regulations, practices, and processes

10    to enable the host government to honor its

11    international and bilateral obligations with re-

12    spect to the protection of intellectual property

13    rights;

14         (C) consistency with the policy and coun-

15    try-specific priorities set forth in the most re-

16    cent report of USTR under such section

17    182(a)(1); and

18         (D) support for holders of United States

19    intellectual property rights and industries whose

20    access to foreign markets is improperly re-

21    stricted by intellectual property related issues.

22   (b) NEW APPOINTMENTS.—

23        (1) APPOINTMENTS  AND  ADMINISTRATION.—

24   The Secretary of State and the Secretary of Com-

25   merce, in consultation with the Register of Copy-

1    rights, shall appoint at least one intellectual prop-
2    erty attaché to be assigned to the United States em-
3    bassy or diplomatic mission (as the case may be) in
4    a country in each geographic region covered by a re-
5    gional bureau of the Department of State. The Di-
6    rector of the Patent and Trademark Office shall
7    maintain authority over hiring, personnel ratings,
8    and objectives for the attachés, in consultation with
9    the Secretary of State. Depending on experience and
10   expertise, intellectual property attachés shall be des-
11   ignated as the diplomatic rank in-mission of First
12   Secretary or Counselor.

13        (2) REGIONS DEFINED.—The geographic re-
14   gions referred to in paragraph (1) are the following:

15            (A) Africa.

16            (B) Europe and Eurasia.

17            (C) East Asia and the Pacific.

18            (D) The Near East.

19            (E) South and Central Asia and the Pa-
20        cific.

21            (F) The Western Hemisphere.

22        (3) DUTIES.—The intellectual property attachés
23   appointed under this subsection shall focus primarily
24   on intellectual property matters, including the devel-
25   opment, protection, and enforcement of applicable

73

1    law. Each intellectual property attaché shall work, in

2    accordance with guidance from the Director, and in

3    coordination with appropriate staff at the Depart-

4    ments of Commerce and State and the Copyright

5    Office, to advance the policy goals and priorities of

6    the United States Government. Those policy goals

7    and priorities shall be consistent with USTR's re-

8    ports under section 182(a)(1) of the Trade Act of

9    1974. The intellectual property attachés shall work

10    with United States holders of intellectual property

11    rights and industry to address intellectual property

12    rights violations in the countries where the attachés

13    are assigned.

14    (c) PRIORITY ASSIGNMENTS.—

15    (1) IN GENERAL.—Subject to paragraph (2), in

16    designating the United States embassies or diplo-

17    matic missions where attachés will be assigned under

18    subsection (b), the Secretary of State and the Sec-

19    retary of Commerce shall give priority to countries

20    where the activities of an attaché are likely to

21    achieve the greatest potential benefit in reducing in-

22    tellectual property infringement in the United States

23    market, to advance the intellectual property rights of

24    United States persons and their licensees, and to ad-

25    vance the interests of United States persons who

74

1    may otherwise be harmed by violations of intellectual
2    property rights in those countries.

3         (2) ASSIGNMENTS TO PRIORITY COUNTRIES.—
4    In carrying out paragraph (1), the Secretary of
5    State and the Secretary of Commerce shall consider
6    assigning intellectual property attachés—

7              (A) to the countries that have been identi-
8         fied under section 182(a)(1) of the Trade Act
9         of 1974 (19 U.S.C. 2242(a)(1)); and

10             (B) to countries of critical economic impor-
11        tance to the advancement of United States in-
12        tellectual property rights and interests.

13        (d) TRAINING.—The Secretary of State and the Sec-
14   retary of Commerce shall ensure that each intellectual
15   property attaché appointed under subsection (b) is fully
16   trained for the responsibilities of the position before as-
17   suming duties at the United States embassy or diplomatic
18   mission to which the attaché is assigned.

19        (e) COORDINATION.—The activities of intellectual
20   property attachés under this section shall be determined
21   in consultation with the Intellectual Property Enforcement
22   Coordinator. The Director shall assist in coordinating the
23   policy priorities and activities of the intellectual property
24   attachés and oversee administrative and personnel mat-
25   ters.

75

1   (f) Training and Technical Assistance.—

2      (1) Consistency.—Using existing resources,

3  all training and technical assistance provided by in-

4  tellectual property attachés appointed under sub-

5  section (b), or under other authority, relating to in-

6  tellectual property enforcement and protection

7  abroad shall be designed to be consistent with the

8  policy and country-specific priorities set forth in the

9  most recent report of USTR under section 182(a) of

10  the Trade Act of 1974.

11      (2) Role of ipec.—Such training and tech-

12  nical assistance programs shall be carried out in

13  consultation with the Intellectual Property Enforce-

14  ment Coordinator. The Director shall assist in co-

15  ordinating the training and technical assistance pro-

16  grams conducted by intellectual property attachés.

17   (g) Activities in Other Countries.—In the case

18 of countries that are not identified under section

19 182(a)(1) of the Trade Act of 1974, the activities of Fed-

20 eral departments and agencies with respect to intellectual

21 property rights in those countries, intellectual property

22 programs and outreach of the United States Government

23 in those countries, and training and technical assistance

24 programs of the United States Government relating to in-

25 tellectual property in those countries may be conducted

76

1 to the extent they are consistent with compelling commer-

2 cial or foreign policy interests of the United States.

3     (h) REPORTS TO CONGRESS.—The Intellectual Prop-

4 erty Enforcement Coordinator shall include in the annual

5 report submitted under section 314 of the Prioritizing Re-

6 sources and Organization for Intellectual Property Act of

7 2008 (15 U.S.C. 8114) on the activities of the advisory

8 committee established under section 301 of that Act (15

9 U.S.C. 8111) information on the appointment, designation

10 for assignment, and activities of all intellectual property

11 attachés of any Federal department or agency who are

12 serving abroad.

13     (i) DEFINITIONS.—In this section:

14         (1) DIRECTOR.—The terms "Director of the

15     Patent and Trademark Office" and "Director" mean

16     the Under Secretary for Intellectual Property and

17     Director of the Untied States Patent and Trade-

18     mark Office.

19         (2) INTELLECTUAL PROPERTY ENFORCE-

20     MENT.—The term "intellectual property enforce-

21     ment" has the meaning given that term in section

22     302 of the Prioritizing Resources and Organization

23     for Intellectual Property Act of 2008 (15 U.S.C.

24     8112).

77

(3) INTELLECTUAL PROPERTY ENFORCEMENT COORDINATOR.—The term "Intellectual Property Enforcement Coordinator" means the Intellectual Property Enforcement Coordinator appointed under section 301 of the Prioritizing Resources and Organization for Intellectual Property Act of 2008 (15 U.S.C. 8111).

(4) INTELLECTUAL PROPERTY RIGHTS.—The term "intellectual property rights" means the rights of holders of copyrights, patents, trademarks, other forms of intellectual property, and trade secrets.

(5) USTR.—The term "USTR" means the United States Trade Representative.

(6) UNITED STATES PERSON.—The term "United States person" means—

(A) any United States resident or national;

(B) any corporation, partnership, other business entity, or other organization, that is organized under the laws of the United States; and

(C) any foreign subsidiary or affiliate (including any permanent foreign establishment) of any corporation, partnership, business entity, or organization described in subparagraph (B),

78

1   that is controlled in fact by such corporation,

2   partnership, business entity, or organization.

3 (j) AUTHORIZATION OF APPROPRIATIONS.—The Sec-

4 retary of State and the Secretary of Commerce shall pro-

5 vide for the training and support of the intellectual prop-

6 erty attachés appointed under subsection (b) using exist-

7 ing resources.

○