KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  rkendall@kbkfirm.com
Laura W. Brill (195889)
  lbrill@kbkfirm.com
Richard M. Simon (240530)
  rsimon@kbkfirm.com
Cassie D. Palmer (268383)
  cpalmer@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for CBS Interactive Inc.
and CNET Networks, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALKIVIADES DAVID, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CBS INTERACTIVE INC., CNET NETWORKS, INC., <br><br> Defendants. | Case No. CV11-9437 DSF (JCx) <br><br> **REPLY OF CBS INTERACTIVE INC. AND CNET NETWORKS, INC. IN SUPPORT OF MOTION TO DISMISS COMPLAINT** <br><br> Hon. Dale S. Fischer <br><br> Date: July 2, 2012 <br> Time: 1:30 p.m. <br> Crtrm.: 840 |

108796.7

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT IN REPLY ....................................................................................3

    A.    The Opposition Fails To Address The Nineteen Plaintiffs With No Copyright Registrations ......................................................................3

    B.    CBSI Cannot Be Vicariously Liable Because It Does Not Have The Ability To Control Direct Infringement ............................................3

    C.    CBSI Lacks The Requisite Knowledge Of Direct Infringement To Be Contributorily Liable For Such Infringement ..............................5

    D.    Plaintiffs Do Not Allege That CBSI Had The Culpable Intent Necessary To Support A Claim For Inducement .....................................8

III. CONCLUSION..................................................................................................12

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

108796.7

i

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) .................................................................... 1, 6, 7, 11

*Arista Records LLC v. Lime Group LLC*,
    715 F. Supp. 2d 481 (S.D.N.Y. 2010) ..................................................................... 8

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 5

*Columbia Pictures v. Fung*,
    No. 2:06-CV-05578, 2009 WL 6355911
    (C.D. Cal. Dec. 21, 2009) ............................................................................ 9, 11, 12

*Disney Enters., Inc. v. Hotfile Corp.*,
    798 F. Supp. 2d 1303 (S.D. Fla. 2011) .................................................................... 9

*Fonovisa v. Napster, Inc.*,
    No. 3:01-CV-02669, 2002 WL 398676 (N.D. Cal. Jan. 28, 2002) ..................... 6, 7

*Fonovisa, Inc. v. Cherry Auction Inc.*,
    76 F.3d 259 (9th Cir. 1996) ..................................................................................... 4

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*,
    443 F.2d 1159 (2d Cir. 1971) .................................................................................. 4

*Global-Tech Appliances v. SEB S.A.*,
    563 U.S. __, 131 S.Ct. 2060 (2011) .................................................................. 2, 10

*Luvdarts LLC v. AT&T Mobility, LLC*,
    No. 10-CV-05442, 2011 WL 997199
    (C.D. Cal. Mar. 17, 2011) .................................................................................. 5, 10

*MDY Indus., LLC v. Blizzard Entm't Inc.*,
    629 F.3d 928 (9th Cir. 2010) ............................................................................... 1, 3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ........................................................................................ passim

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................................................ 1, 5, 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .......................................................................... 1, 3, 10

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ....................................................................... 6

*Sony Corp. of America v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984) ....................................................................................... 12

*UMG Recordings, Inc. v. Shelter Capital Partners, LLC (Veoh)*,
 667 F.3d 1022 (9th Cir. 2011) ............................................................. 1, 5, 6, 10

**RULES**

Central District Local Rule 3-1 ...................................................................................... 3

Federal Rule of Civil Procedure 11(b) ........................................................................... 5

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## I. INTRODUCTION

Plaintiffs' Opposition all but ignores the binding Supreme Court and Ninth Circuit precedents that require dismissal of the Complaint on the several grounds asserted in Defendants' (hereinafter, "CBSI") Motion to Dismiss:

1. **No Registered Copyrights:** Under clear Ninth Circuit authority, a plaintiff must allege direct copyright infringement to sufficiently allege secondary infringement.[1] The Complaint includes no allegation that Plaintiffs have registered copyrights, and Plaintiffs have provided no registration information for nineteen of the Plaintiffs. The Opposition does not address this issue at all, effectively conceding that claims of these Plaintiffs must be dismissed.

2. **Vicarious Infringement:** Several recent Ninth Circuit decisions confirm that the "right and ability to supervise and control" direct infringement is a necessary element of vicarious copyright infringement liability.[2] The Opposition ignores all of these recent authorities in favor of an erroneous reading of a forty-year-old Second Circuit case to argue that "pervasive participation" in the "formation and direction" of infringement is sufficient in lieu of control. Opp'n at 16. No court has so held, and the Complaint in any event does not allege that CBSI formed or directed the formation of any P2P software service.

3. **Contributory Liability:** The Ninth Circuit has several times reiterated that contributory liability requires "knowledge of specific acts of infringement."[3] The Opposition argues for the application of a constructive knowledge standard, in lieu of actual knowledge, but bases its argument on the mischaracterization of an

---

[1] *MDY Indus., LLC v. Blizzard Entm't Inc.*, 629 F.3d 928, 937 (9th Cir. 2010).
[2] *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 667 F.3d 1022, 1047 (9th Cir. 2011); *see also, inter alia, Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) ("*Perfect 10 - Visa*").
[3] *See, inter alia, A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) ("*Perfect 10 - Amazon*"); *UMG Recordings*, 667 F.3d at 1037.

1
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

unpublished district court decision, rather than published Ninth Circuit authority. Even setting aside this misdirection, the Opposition fails to point to any allegation in the Complaint that CBSI had *any* knowledge – actual or constructive – *of specific instances of direct infringement* of any of Plaintiffs' works.

4. **Inducement:** The Opposition ignores the Ninth Circuit decisions involving Visa and Veoh in which the court affirmed dismissal of inducement claims against tertiary actors.[4] Plaintiffs fail to recognize that CNET and download.com, which describe and link to a vast catalogue of legitimate software products, are categorically distinct from file-sharing services like Grokster, Napster, LimeWire, IsoHunt, and Hotfile that existed primarily to promote infringement. Each of those unlawful services operated the locus, tools, and architecture of direct copyright infringement. Download.com and CNET do no such thing. The Opposition also ignores the Supreme Court's recent *Global-Tech* decision, in which the Court revisited the intent requirement for inducement in *Grokster*'s aftermath, clarifying that to be liable for inducing infringement of intellectual property rights, a defendant must have knowledge of the plaintiff's legally protectable interests and encourage others to invade those rights.[5] Absent allegations of any acts of inducement that target Plaintiffs, or even an awareness of Plaintiffs' protectable interests, it cannot be inferred that a tertiary actor like CBSI, in "promoting" P2P services, is liable for intentional inducement of infringement of the Plaintiffs' songs.

No case has validated Plaintiffs' central premise that the publication of links to P2P services combined with (though not necessarily coincident to) public statements recognizing that the services can be used to copy files is sufficient to make a publisher liable to anyone who claims a work was infringed by P2P users. The Complaint fails to state a basis why this case should be the first.

---

[4] *Perfect 10 - Visa*, 494 F.3d at 801-02; *UMG Recordings*, 667 F.3d at 1045-47.
[5] *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. __, 131 S. Ct. 2060, 2068 (2011).

108796.7

2

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## II. ARGUMENT IN REPLY

### A. The Opposition Fails To Address The Nineteen Plaintiffs With No Copyright Registrations

As CBSI made clear in its motion papers, copyright registration is a prerequisite to filing a claim for copyright infringement, 17 U.S.C. § 411(a), and a plaintiff on a secondary liability theory must competently allege direct underlying copyright infringement in order to state a secondary claim. *MDY Indus., LLC*, 629 F.3d at 937. Even if the Court were inclined to incorporate Plaintiffs' Form AO-121 registration list into the facially defective Complaint, nineteen of the Plaintiffs are not listed in the scheduled registrations. The Opposition ignores the issue, effectively waiving any argument against dismissal of these Plaintiffs.

### B. CBSI Cannot Be Vicariously Liable Because It Does Not Have The Ability To Control Direct Infringement

Plaintiffs argue that vicarious liability may be premised not only on the right and ability to "control" direct infringement, but also "pervasive participation" in the "formation and direction of direct infringers." Opp'n at 16. This argument gives Plaintiffs no aid because (1) Plaintiffs' formulation is not consistent with Ninth Circuit case law; and (2) even under Plaintiffs' alternate formulation, the Complaint fails to allege either that CBSI controls or that it has any participation, much less pervasive participation, in the "formation and direction of direct infringers."

The elements of the applicable legal standard are firmly established: to be vicariously liable for the infringement of another, a defendant must have "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10 - Visa*, 494 F.3d at 802; *accord Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 & n.9 (2005).

The Ninth Circuit did not eliminate the first, so-called "control" element in *Fonovisa, Inc. v. Cherry Auction, Inc.*, as the Opposition posits; quite to the contrary, the court simply applied that standard to the facts before it and found that

where direct infringers were selling counterfeit goods at a swap meet, the swap meet organizer, which "controlled and patrolled" the premises, had sufficient practical control to be held vicariously liable for acts of direct infringement occurring on the property. 76 F.3d 259, 262 (9th Cir. 1996) (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt. Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). The court noted that in *Gershwin*, the Second Circuit had found the "control" element satisfied based not on contract but on "'pervasive participation in the formation and direction' of the direct infringers." *Id.* at 263. Yet nothing in either *Gershwin* or *Fonovisa* indicates that a plaintiff can maintain a claim for vicarious infringement without alleging that the defendant controls the direct infringement.[6]

Moreover, the fact that there may be different ways in which a plaintiff can demonstrate control over direct infringers is simply irrelevant to this case. The Complaint fails to allege *any* right and ability – contractual or practical – to supervise or control the direct infringement of Plaintiffs' songs by users of P2P software.[7] Mot. at 13-14. Nor does the Complaint allege that CBSI participated in any way in the "formation and direction" of any direct infringer. Apparently recognizing their error, Plaintiffs' Opposition shifts ground, arguing that "participation" with P2P networks, which are not direct infringers, can make CBSI vicariously liable for acts of direct infringers. Opp'n at 17. Plaintiffs have no

---

[6] *Gershwin*, like *Fonovisa*, involved control over direct infringement. The defendant was a concert promoter who "engineer[ed] the formation" of a concert series, prepared budgets, helped with ticket sales, participated in artist selection (selecting clients as performers), drafted the artist contracts, managed artist relations, selected the specific compositions to be performed, and commissioned the printing of programs that named the promoter as a host. 443 F.3d at 1160-61.

[7] As explained in the Motion, Mot. at 13, the conclusory assertion in the Counts that CBSI has "the right and ability to control and/or supervise the infringing conduct . . . (either by direct contractual relation and/or as a matter of practical control)," Compl. ¶ 167, is a bare recital of the legal standard that should be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

authority for this proposition, which would represent a dramatic expansion of *respondeat superior* liability in the context of digital media. Nor do Plaintiffs make any attempt to distinguish the cases that have squarely and uniformly rejected similar efforts to impose vicarious liability on a tertiary actor. *See, e.g., Perfect 10 - Amazon*, 508 F.3d at 1173-74 (search engine not vicariously liable for linking to copies of infringing works); *UMG Recordings*, 667 F.3d at 1047 (venture capital investor-director in video-sharing website not liable for unlawful content posted on the site); *Luvdarts LLC v. AT&T Mobility, LLC*, 2011 WL 997199, at *3 (C.D. Cal. Mar. 17, 2011) (wireless carriers not vicariously liable for infringing content transmitted in multimedia text messages over their network).

As in these cases, the Complaint here does not allege that CNET or download.com control direct infringement or that they can be used to copy, to host or to index copies of Plaintiffs' music (like Napster), or to locate unlawful copies on the web (like IsoHunt). Nor is there any allegation that CBSI can identify or police the primary infringers or control in any fashion the time, place, nature, or extent of infringing activities. These deficiencies eliminate any claim of vicarious liability, and Plaintiffs' plea to move forward with discovery on a claim they have no basis to allege is precisely the type of abusive practice that the pleading standards of Rule 12 were designed to avoid. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007); *Iqbal*, 556 U.S. at 678-79; *cf.* Fed. R. Civ. P. 11(b)(3).

C. **CBSI Lacks The Requisite Knowledge Of Direct Infringement To Be Contributorily Liable For Such Infringement**

Following *Grokster*, the Ninth Circuit has recognized two forms of contributory liability: (1) traditional contributory liability (aka "material contribution") and (2) inducement liability as articulated in *Grokster*. *See, e.g.*, *Perfect 10 - Amazon*, 508 F.3d at 1170 n.11. Because the Complaint treats the two types of liability as separate "counts," this Section of CBSI's Reply addresses the former, while Section D, below, addresses the latter.

In the Motion, CBSI laid out the binding Ninth Circuit standard for traditional contributory liability: "A computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." *Perfect 10 - Amazon*, 508 F.3d at 1172 (emphasis in original) (quoting *Napster*, 239 F.3d at 1022; *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995)); *see also UMG Recordings*, 667 F.3d at 1037. Plaintiffs in essence concede that the Complaint does not meet this standard, Opp'n at 16:10-12, seek leave to amend, *id.*, and simultaneously ask this Court to reinvent the law of contributory liability to eviscerate the knowledge requirement, *id.* at 14-15.

Plaintiffs make no attempt to argue that P2P software is inherently unlawful or that it lacks substantial non-infringing uses. Instead, Plaintiffs rely primarily on *Napster* and the unpublished Northern District of California decision, *Fonovisa, Inc. v. Napster, Inc.*, 2002 WL 398676 (N.D. Cal. Jan. 28, 2002) ("*Fonovisa-Napster*"), to support the proposition that knowledge of specific acts of infringement is nonetheless unnecessary to a claim of contributory liability. These cases do not support Plaintiffs' position.[8] In *Napster*, the Ninth Circuit favorably cited the *Netcom* decision, noting that *Netcom* "suggests that in an online context, evidence of *actual knowledge of specific acts of infringement* is required to hold a computer system operator liable for contributory infringement." *Napster*, 239 F.3d at 1021 (emphasis added) (citing *Netcom*, 907 F. Supp. at 1371). The court cautioned, "absent any *specific information which identifies infringing activity*, a computer system operator cannot be liable for contributory infringement merely because the

---

[8] Plaintiffs repeatedly mischaracterize *Fonovisa-Napster* as Ninth Circuit authority. Opp'n at 14:6, 14:19, 15:28. Plaintiffs also claim that *Fonovisa-Napster* has been "cited by a number of federal courts for principles of secondary liability," Opp'n at 14 n.4, whereas it rarely has been cited and not for Plaintiffs' arguments.

1  structure of the system allows for the exchange of copyrighted material." *Id.*
2  (emphasis added) ("We are bound to follow *Sony*, and will not impute the requisite
3  level of knowledge to Napster merely because peer-to-peer file sharing technology
4  may be used to infringe plaintiffs' copyrights.").

5  Notwithstanding Plaintiffs' assertions to the contrary, Opp'n at 14:13-17, the
6  Ninth Circuit *did not* hold that Napster's *constructive* knowledge was a ground for
7  upholding an injunction. The Ninth Circuit merely observed in a footnote that the
8  *district court* had *also* concluded that Napster had constructive knowledge. *See*
9  *Napster*, 239 F.3d at 1020 n.5. The Ninth Circuit premised its holding, however,
10 only on Napster's "*actual* knowledge that *specific* infringing material is available
11 using its system, that it could block access to the system by suppliers of the
12 infringing material, and that it failed to remove the material," including specific
13 notice of "12,000 infringing files." 239 F.3d at 1021-22 & n.6 (emphasis in
14 original); *see also Perfect 10 - Amazon*, 508 F.3d at 1171-72 ("Google could be held
15 contributorily liable if it had knowledge that infringing Perfect 10 images were
16 available using its search engine, could take simple measures to prevent further
17 damage to Perfect 10's copyrighted works, and failed to take such steps.").

18 Plaintiffs' reliance on *Fonovisa-Napster*, a pre-*Grokster* case, is also
19 misplaced. In *Fonovisa-Napster*, the plaintiff alleged egregious conduct "similar to
20 that which [the *Napster* court] found justified injunctive relief." 2002 WL 398676,
21 at *8. And the district court found the plaintiff stated a contributory infringement
22 claim by "alleg[ing] that Napster knew of music piracy on its system, that it had the
23 ability to patrol its database, that Napster *had knowledge of some specific infringing*
24 *files*, and did nothing to prevent continued infringement." *Id.* (emphasis added).

25 By contrast, Plaintiffs allege no knowledge of specific acts of infringement or
26 specific infringing files, but rather allege only that CBSI "ha[s] knowledge of the
27 massive infringement" occurring through P2P services. Compl. ¶ 160. Plaintiffs
28 admit that CNET and download.com have substantial non-infringing uses. Compl.

108796.7
7
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

¶¶ 1, 154.  But, dubiously, Plaintiffs assert "actual and constructive" "knowledge of infringement" based on their allegations of user comments and reviews, side-by-side comparisons, and product demonstrations by CNET editors wherein specific copyrighted songs of *non-parties* were allegedly used as examples.  Compl. ¶¶ 135, 161.  Even taking these allegations as true, Plaintiffs still fail to allege any *specific instances of infringement of Plaintiffs' works* as required under Ninth Circuit precedent.  *See* Mot. at 17-18.  Indeed, Plaintiffs have not and cannot allege that CBSI knew or could have known anything about the purported primary infringers or whether infringement was taking place on the P2P networks, because download.com and CNET merely link to and provide commentary about P2P software.

### D. Plaintiffs Do Not Allege That CBSI Had The Culpable Intent Necessary To Support A Claim For Inducement

The Opposition dismisses the fundamental difference between CBSI and online services that have been held liable for inducement of infringement, such as Grokster, LimeWire, Hotfile, and IsoHunt: unlike those services, download.com and CNET provide access to a huge catalog of legitimate software, including lawful P2P software, but not to unlicensed content.  As alleged, download.com and CNET are, at most, a resource for locating the software to install third-party P2P services, which are in turn capable of substantial non-infringing uses.  CBSI's alleged involvement in alleged acts of infringement goes no further.

The Opposition does not cite a single case finding liability against a party whose relationship to the infringement is so attenuated.  The cases involving Grokster, LimeWire, and Hotfile all involved evidence that those services distributed, maintained, or managed infringing materials, even if the illegal copying was itself decentralized.[9]

---

[9] *See, e.g.*, *Grokster*, 545 U.S. at 913, 914, 916, 922-23; *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 507-08, 511, 515 (S.D.N.Y. 2010);

IsoHunt, the online service at issue in *Columbia Pictures Industries, Inc. v. Fung*, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009), which is the centerpiece of the Opposition, is no different. The primary function of IsoHunt was to aggregate, categorize, and provide links to "dot-torrent" files. 2009 WL 6355911, at *14. Plaintiffs argue that IsoHunt is analogous to download.com, which catalogs software and provides links to permit consumers to download software programs. *See* Compl. ¶¶ 1, 101, 117. But the superficial similarity ends there, and a comparison between IsoHunt and CBSI in fact highlights the difference between secondary and tertiary conduct: IsoHunt distributed infringing content; CBSI "distributes" lawful P2P services. *See* Compl. ¶¶ 89, 154.

The Opposition seeks to cast *Fung* as a tertiary infringement case, arguing that torrent files are akin to the software products that download.com lists in its extensive software catalogues, and thus the *Fung* defendant's acts to encourage people to download torrent files is equivalent to CBSI's alleged acts to encourage people to download P2P software. *See* Opp'n at 8 ("defendant had distributed tools (torrent files) used for infringement"). The *Fung* decision refutes this analogy.

In *Fung*, the defendant unsuccessfully argued that "users' act of downloading dot-torrent files does not constitute actual copyright infringement" because torrent files do not contain content but instead contain code that pulls small pieces of content from across the web. 2009 WL 6355911, at *9 & n.18. He argued that without such predicate direct infringement, he could not be held liable for indirect infringement. *Id.* The court flatly rejected this argument, holding that "[b]ecause dot-torrent files *automatically* trigger this content-downloading process, it is clear that dot-torrent files and content files are, for all practical purposes, synonymous." *Id.* In effect, IsoHunt simply was another Napster-like service directly trading in

---

(footnote continued)
*Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1306-07, 1310-11 (S.D. Fla. 2011).

illegal media files and was not a tertiary actor through which a lawful tool with estimable benefits and both infringing and non-infringing capabilities is publicly available.

By contrast, every instance in which litigants have sought to impose inducement liability on tertiary actors has failed at the pleadings stage. *See, e.g.*, *Perfect 10 - Visa*, 494 F.3d at 800-02 (affirming dismissal of inducement of infringement claim against companies providing payment services to third-party piracy and file-sharing websites on Rule 12(b)(6) motion); *UMG Recordings*, 667 F.3d at 1045-47 (same as to controlling investors in video-sharing site); *Luvdarts LLC*, 2011 WL 997199, at *2-3 (dismissing, on Rule 12(b)(6) motion, inducement of infringement claim against wireless carriers for permitting transmission of multimedia text messages with infringing content over their network).

CBSI's lack of culpability for direct infringement is especially strong in this case, where there is no allegation that CBSI has any knowledge of the Plaintiffs or their copyrights, let alone that it "promoted" harm directed at Plaintiffs' interests. Inducement of infringement "premises liability on purposeful, culpable expression and conduct." *Grokster*, 545 U.S. at 937; *accord* Mot. at 19; Opp'n at 3.  The culpable intent requirement substantiates the Supreme Court's promise that liability should not "compromise legitimate commerce or discourage innovation having a lawful purpose." *Id*.  Indeed, the Supreme Court last term examined the inducement intent requirement as elaborated in *Grokster*, expressly holding with respect to liability for inducing patent infringement:  "induc[ing] infringement . . . requires knowledge that the induced acts constitute . . . infringement." *Global-Tech Appliances*, 131 S. Ct. at 2066-67, 2068.  *Global-Tech* made clear that *Grokster* was not a case in which inducement was found based on statements made about infringement in the abstract.  Rather, the defendants were "fully aware" of the rights of the copyright holders in that case.  *Id.* at 2070.

Plaintiffs completely ignore *Global-Tech*, and for good reason.  In contrast to *Grokster,* many of the Plaintiffs here have not, even today, identified a single copyright they own that is at issue, *supra* at 3, and none alleges either that CBSI was aware of their music or their copyrights or of any P2P users who were purportedly infringing their works.  None alleges that CBSI knew that any P2P software it purposefully "distributed" was liable to any of the Plaintiffs as a secondary infringer.  In these respects, this case could not be more different from *Grokster*, *Napster*, or *Fung*.  *Grokster*, 545 U.S. at 923 (defendants had notice of **eight million** files containing the Plaintiffs' copyrighted works); *id*. at 947 n.3 (Ginsburg, J., concurring) (vast majority (75%) of files available through Grokster were of the plaintiffs' copyrighted works); *Napster,* 239 F.3d at 1020 n.6 (Plaintiffs' trade organization informed Napster of "more than 12,000 infringing files"); *Fung*, 2009 WL 6355911, at *5 (deliberate exploitation of Plaintiffs' major motion pictures).  While Plaintiffs demur that they are not required to allege that CBSI knew of Plaintiffs' works or infringement of the works occurring through P2P software distributed by CBSI, Opp'n at 6, they cite no case in which inducement liability was imposed absent such knowledge.

Plaintiffs, in essence, conflate CBSI's services and the P2P services to cobble together an unprecedented theory of liability.  To the extent that CBSI's alleged "inducement" is encouraging people to use download.com to acquire particular P2P programs, the Complaint fails because Plaintiffs have not alleged that P2P services were or are illegal as a matter of law or that particular services had been adjudged to be infringing when offered.[10]  Compl. ¶¶ 89, 110, 154.  To the extent that the alleged "inducement" is encouraging people to infringe copyrights with P2P software (*e.g.*,

---

[10] Plaintiffs' riposte is that "CBS's position seems to be that it cannot be liable for inducing infringement absent a court order finding a software client liable for secondary infringement."  Opp'n at 10.  Not so.  CBSI cannot have a culpable intent *with respect to inducing download of P2P software* if the P2P service is legal.

by writing articles about P2P capabilities or by demonstrating comparative features with an unauthorized use of a specific song) then the Complaint fails because it identifies no actions by CBSI directed at Plaintiffs or their works.[11]  Absent allegations of any acts of inducement that target Plaintiffs, or even an awareness of Plaintiffs' protectable interests, it cannot be inferred that a tertiary actor like CBSI, in "promoting" presumptively lawful P2P services, is similarly liable for intentional inducement of infringement of the Plaintiffs' songs.

The expansion of liability to include tertiary parties like CBSI for whom such allegations cannot be made would chill speech and technological innovation and warrants restraint.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 430 (1984) ("Sound policy, as well as history, supports our consistent deference to Congress when major technological innovations alter the market for copyrighted materials."); *see also* Mot. at 7, 22-24.  In addition to the legal limitations on liability discussed above, these policy concerns militate against the imposition of liability on the circumstances alleged here.

### III.   CONCLUSION

For the reasons set forth herein and in CBSI's moving papers, CBSI respectfully requests that the Court dismiss the Complaint in its entirety for failure to state a claim.

Dated:  June 18, 2012            KENDALL BRILL & KLIEGER LLP

                                 By:   /s/ *Richard B. Kendall*
                                       Richard B. Kendall
                                       Attorneys for Defendants

---

[11] In *Fung*, the acts of inducement (*e.g.*, a post on his page saying "if you are curious, download this [a torrent for *Lord of the Rings*]") clearly targeted named plaintiff's works (*e.g.*, Warner Brothers).  2009 WL 6355911, at *12.  As noted above, in *Grokster*, plaintiffs had served notices of eight million of their copyrighted files allegedly available through Grokster and Streamcast.  545 U.S. at 923.