1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (90072)
2    *rkendall@kbkfirm.com*
   Laura W. Brill (195889)
3    *lbrill@kbkfirm.com*
   Richard M. Simon (240530)
4    *rsimon@kbkfirm.com*
   Dorian S. Berger (264424)
5    *dberger@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
6  Los Angeles, CA  90067
   Telephone:   310.556.2700
7  Facsimile:   310.556.2705

8  FENWICK & WEST LLP
   Laurence F. Pulgram (115163)
9    *lpulgram@fenwick.com*
   Jennifer L. Kelly (193416)
10   *jkelly@fenwick.com*
   555 California Street, 12th Floor
11 San Francisco, CA  94104
   Telephone:  415.875.2300
12 Facsimile:   415.281.1350

13 Attorneys for CBS Interactive Inc. and
   CNET Networks, Inc.

14

15              **UNITED STATES DISTRICT COURT**

16        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

17

18 | ALKIVIADES DAVID *et al.*, | Case No. CV11-9437 DSF (JCx) |

   Plaintiffs,

19                                  **DEFENDANTS' OPPOSITION TO**
   v.                               **PLAINTIFFS' MOTION FOR**
20                                  **PRELIMINARY INJUNCTION**

21 CBS INTERACTIVE INC., CNET       *[Filed concurrently with Declaration of*
   NETWORKS, INC.,                  *Glenn Reinman, Ph.D., Declaration of*
22                                  *Leana Golubchik, Ph.D., Declaration of*
   Defendants.                      *Sean Murphy, Declaration of Dorian*
23                                  *Berger, and Evidentiary Objections]*

24                                  Hon.    Dale S. Fischer
                                    Date:   February 25, 2013
25                                  Time:   1:30 p.m.
                                    Crtrm.: 840
26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 3

    A.   CBSI And CNET ................................................................................ 3

    B.   BitTorrent Technology ...................................................................... 5

    C.   The Plaintiffs And The Works At Issue ............................................ 7

III. PROCEDURAL BACKGROUND ............................................................... 9

IV. ARGUMENT ............................................................................................. 10

    A.   Plaintiffs Have The Burden Of Establishing All Factors
            Necessary For Preliminary Injunctive Relief .................................. 10

    B.   Plaintiffs Are Unlikely To Succeed On The Merits .......................... 11

         1.   Elements Required For Liability ............................................. 11

         2.   Plaintiffs Have Not Shown Likely Success On Proving
              Liability ................................................................................... 11

              (a)   Plaintiffs have not shown ownership of the works. ......... 11

              (b)   Plaintiffs submitted no reliable evidence of direct
                     infringement of their works, let alone direct
                     infringement connected to CBSI. ..................................... 12

              (c)   Plaintiffs are not likely to establish that CBSI's
                     object is to induce or profit from copyright
                     infringement. ................................................................... 14

                    (i)   CBSI pursues an entirely lawful business
                         model. ...................................................... 14

                    (ii)   CBSI's editorial reviews of P2P software do
                         not demonstrate a purpose to induce
                         infringement. ........................................... 15

                    (iii)   CBSI is not engaged in culpable conduct. ............. 18

    C.   Plaintiffs Fail To Show Irreparable Harm ...................................... 20

         1.   Irreparable Harm Is Required And Not Presumed ................. 20

         2.   Plaintiffs Have Not Met Their Burden ................................... 21

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

i

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

(a)   Plaintiffs' delay defeats their claim of irreparable harm. ................................................................................21

(b)   Plaintiffs submitted no evidence of harm.........................22

D.   Plaintiffs Fail To Show That The Balancing Of Equities Tips Sharply In Plaintiffs' Favor ......................................................23

E.   Plaintiffs Fail To Show That The Proposed Preliminary Injunction Is In The Public Interest ........................................23

F.   The Proposed Injunction Is Unconstitutionally And Inequitably Vague And Overbroad ..........................................................24

V. CONCLUSION.......................................................................25

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)........................................................................12

*Alliance for Wild Rockies v. Cottrell*,
622 F.3d 1045 (9th Cir. 2010)........................................................................11

*American Trucking Assocs, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009)........................................................................10

*Arista Records LLC v. Lime Group LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)............................................................19

*Cadence Design Systems, Inc. v. Avant! Corp.*,
125 F. 3d 824 (9th Cir. 1997)........................................................................10

*Columbia Pictures Industries, Inc. v. Fung*,
2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) ...............................................19

*Compuware Corp. v. Moody's Investors Servs., Inc.*,
499 F.3d 520 (6th Cir. 2007)........................................................................25

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388, 126 S. Ct. 1837 (2006) ...........................................11, 20, 21, 22

*Flexible Lifeline Sys. v. Precision Lift*,
654 F.3d. 989 (9th Cir. 2011)........................................................................11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. _, 131 S. Ct. 2060 (2011) ...........................................................18, 20

*Harper & Row Publishers Inc. v. Nation Enters.*,
471 U.S. 539, 105 S. Ct. 2218 (1985) ...........................................................25

*High-Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*,
49 F.3d 1551 (Fed. Cir. 1995)........................................................................21

*Hurley v. Irish-Am. Gay Grp. of Boston*,
515 U.S. 557, 115 S. Ct. 2338 (1995) ...........................................................25

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
941 F.2d 970 (9th Cir. 1991)........................................................................24

*Lamont v. Time Warner, Inc.*,
2012 WL 5248061 (C.D. Cal. Oct. 19, 2012) ...............................................22

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980)........................................................................22

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2011) .................................................................... 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913, 125 S. Ct. 2764 (2005) ...................................................... passim

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
    380 F.3d 1154 (9th Cir. 2004) .................................................................. 18

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006) ..................................................... 19

*Metro-Media Broadcasting Corp. v. MGM/UA Entertainment Co.*,
    611 F. Supp. 415 (C.D. Cal. 1985) ........................................................... 21

*Metropolitan Regional Information Systems, Inc. v. American Home Realty
    Network, Inc.*,
    2012 WL 3715350 (D. Md. Aug. 27, 2012) ............................................. 22

*Oakland Tribune, Inc. v. Chronicle Publ. Co.*,
    762 F.2d 1374 (9th Cir. 1985) .................................................................. 21

*Peker v. Fader*, 164 Fed. Appx. 49, 2006 WL 172204
    (2d Cir. Jan. 24, 2006) ............................................................................. 11

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ............................................................. 11, 23

*Playboy Enters. v. Netscape Communications Corp.*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ..................................................... 21

*Poon v. Roomorama, LLC*,
    2009 WL 3762115 (S.D.N.Y. Nov. 10, 2009) ........................................ 12

*Protech Diamond Tools, Incorporation v. Liao*,
    2009 WL 1626587 (N.D. Cal. June 8, 2009) ........................................... 21

*Sardi's Rest. Corp. v. Sardie*,
    755 F.2d 719 (9th Cir. 1985) .................................................................... 20

*Silvers v. Sony Pictures Ent., Inc.*,
    402 F.3d 881 (9th Cir. 2005) .................................................................... 12

*Solidus Networks, Inc. v. Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007) .................................................................. 20

*Subafilms, Ltd. v. MGM-Pathe Comms. Co.*,
    24 F.3d 1088 (9th Cir. 1994) .................................................................... 13

*Surface Tech., Inc. v. Sae-A Trading Am. Corp.*,
    2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ............................................ 12

*Tattoo Art, Inc. v. TAT Intern., LLC*,
    794 F. Supp. 2d 634 (E.D. Va. 2011) ....................................................... 22

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Vernor v. Autodesk, Inc.*,
   621 F.3d 1102 (9th Cir. 2010)...................................................................16

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365 (2008) ...............................10, 20, 21, 24

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012) ........................................................................22


## STATUTES

17 U.S.C. § 501(b) ...........................................................................................12

17 U.S.C. § 507(b) ...........................................................................................13


## RULES

C.D. Cal. Local Rule 3-1 ...............................................................................11

Fed. R. Civ. Proc. 6(c)(2) ..............................................................................12

Fed. R. Evid. 404(a)(1) ..................................................................................18


## TREATISES

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (2012) .................13

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (2012) .................21

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# I.   <u>INTRODUCTION</u>

Plaintiffs have cobbled together and filed a meritless motion for a preliminary injunction ("Motion" or "Mot.") a full year after they commenced this action, and a decade after the software reviews about which they complain.  The Motion should be denied based on Plaintiffs' utter failure of proof as to each of the four factors necessary for such extraordinary relief:  likelihood of success on the merits, irreparable harm, balance of hardships, and the public interest.

As to the merits, Plaintiffs fail to prove likelihood of success in numerous respects.  *First*, Plaintiffs have not substantiated that they own the works at issue—a threshold element of any copyright claim.  To the contrary, Plaintiffs' evidence identifies *others*, not Plaintiffs, as the owners of the relevant works.

*Second*, Plaintiffs have presented no reliable evidence of direct infringement of any work by use of the BitTorrent technology they accuse, and no connection between any hypothetical infringement and Defendant CBS Interactive Inc. (f/k/a CNET Networks, Inc.) ("CBSI"), both of which would be required to impose secondary liability on CBSI.  The only "support" Plaintiffs muster on either point is unreliable hearsay from a website (PirateBay) that purports to show downloading of certain works, but provides no basis to believe the downloads used any BitTorrent technology that CBSI played any role in supplying.

*Third*, even if they could prove ownership, direct infringement, and the necessary nexus to CBSI, Plaintiffs cannot meet the standard for proving inducement.  That standard requires, among other things, that CBSI "distributes a device with *the object of promoting its use to infringe copyright*, as shown by clear expression or other affirmative acts taken to foster infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*, 545 U.S. 913, 936-37, 125 S. Ct. 2764, 2780 (2005) (emphasis added).  CBSI had no such purpose here.  CBSI and its CNET network of websites offer a huge variety of news, reviews, and links that inform the public about technology.  Their business model is legitimate, based on creation and

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

1

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

aggregation of content, not its infringement.  As part of that business, CBSI operates the download.com website, providing a comprehensive list of all kinds of software—of which peer-to-peer ("P2P") software, including BitTorrent clients, is a minimal part.  CBSI does not create or host P2P software and receives no payment for any P2P download or any remuneration tied to the use of such software.  CBSI also counsels potential users *against* infringing uses of P2P technology and uses files authorized for distribution over BitTorrent in product demonstrations (consistent with the many lawful uses of BitTorrent technology).

Plaintiffs rest their case on a handful of comments in reviews that discuss P2P software, relying mostly on items from *approximately a decade ago*, well before the U.S. Supreme Court's *Grokster* decision in 2005, which do not even discuss BitTorrent.  In the context of a business dedicated to delivering valuable information about technology, these truthful descriptions of technology cannot be taken as proving a "purpose to cause and profit from third-party acts of copyright infringement." *Grokster*, 545 U.S. at 941.  To the contrary, it makes no sense to infer such an objective from a company owned and operated since 2008 by CBS, one of the world's premier content creators, when CBSI's management expressly and credibly denies it.

In addition to failing to substantiate any likelihood of success on the merits, another glaring deficiency of Plaintiffs' Motion is Plaintiffs' complete failure to show irreparable harm.  Plaintiffs' *years* of delay before filing this action, followed by another full *year* of delay in bringing this motion after filing suit, refutes any claim of urgency.  This delay alone is dispositive.  But Plaintiffs also make no effort to prove actual irreparable injury, notwithstanding the Supreme Court's requirement of such proof, which is not to be presumed.

Plaintiffs also cannot prove that the balance of hardship tips decisively in their favor, or that the public interest supports an injunction.  The injunction Plaintiffs seek would substantially damage CBSI's business of providing a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

comprehensive index of software applications and editorial information about them. By contrast, the injunction would not prevent either downloads of BitTorrent client software, or potential infringement of Plaintiffs' works.  If CBSI were enjoined from linking to sites that offer downloads of BitTorrent clients, those sites would still remain available to the public and would still be easily found by a simple search on Google—albeit *without* the warning against infringement that CBSI provides. Because CBSI is neither the developer nor the distributor of the software, future downloads of BitTorrent clients and use of the software—infringing or non-infringing—would not be halted by the proposed injunction.  Moreover, the public interest would be damaged by denying legitimate and truthful information about a pervasive technology, as well as by impeding non-infringing uses.

For all these reasons and those explained below, CBSI respectfully requests that the preliminary injunction be denied.

## II.  FACTUAL BACKGROUND

### A.    CBSI And CNET

CNET is a popular network of technology media websites that publishes news articles, blogs, reviews, ratings and podcasts about technology, software, and consumer electronics.  *See* Declaration of Sean Murphy ("Murphy Decl.") ¶ 3; *see generally http://www.cnet.com.*  Download.com is one of CNET's websites, and is the world's largest comprehensive software directory and rating service, providing reviews, ratings, and download links for a vast range of third-party software.  *Id*. ¶ 8; *see generally http://www.download.com.*  Since 2008, CNET and download.com have been owned and operated by CBSI, a subsidiary of CBS Corporation.  *Id*. ¶ 4.

The download.com site provides access to a wide variety of third-party software, such as QuickBooks accounting software, Adobe Acrobat, Skype, Mozilla Firefox, Google Chrome, numerous anti-virus software products, and software patches.  *See* Murphy Decl. ¶ 8.  Among hundreds of thousands of products listed in the download.com directory, a tiny fraction includes P2P "client software," *i.e.*, the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1   software that can be used to install and join P2P file-sharing services such as

2   BitTorrent (*www.bittorrent.com*).  *Id*. ¶ 12.

3       CBSI does not host P2P software on its websites; rather it provides links to

4   third-party sites where such software can be downloaded.  Murphy Decl. ¶ 15.

5   CBSI receives no "pay-per-download" for P2P software—*i.e.,* no compensation

6   from its users' clicking on hyperlinks that connect to sites where downloads are

7   available, nor any compensation if a download is completed at those sites.  *Id*. ¶ 16.

8   Nor does CBSI receive any compensation from use of the software after it is

9   downloaded.  *Id*.  In fact, CBSI has no knowledge if the software is actually

10  installed, much less whether or how any particular copy has been used.  *Id*.

11      CBSI notifies users that P2P software is not available directly from CNET.

12  Murphy Decl. ¶ 19.  These pages also warn anyone clicking on a link to P2P

13  software against using it for purposes of copyright infringement:

14          CNET Editors' note: You will be taken to a third-party site
            to complete your download. Using P2P and file-sharing
15          software to distribute copyrighted material without
            authorization is illegal in the United States and many other
16          countries. CBS Interactive does not encourage or condone
            the illegal duplication or distribution of copyrighted
17          content.

18  Murphy Decl. ¶¶ 19, 20 & Exs. B, D, E (BitTorrent and uTorrent review pages).[1]

19  Use of these warnings is consistent with CBSI's strong stance against infringement.

20  *Id*. ¶¶ 19 & 22.

21

22          [1] Plaintiffs misinterpret a metric on the Download.com website to allege that
       there have been 19 million downloads of uTorrent through CNET (allegedly about
23     11% of the uTorrent user base).  Mot. at 9:12.  This figure represents only the
       number of people who clicked on a link to the uTorrent site on download.com.
24     Murphy Decl. ¶ 26.  Once users reached the uTorrent site (after first viewing CBSI's
       intervening warning against infringing use), they have no obligation (1) to proceed
25     to download the uTorrent client software; (2) to install it; (3) to join the network;
       and (4) to make use of it.  *Id*.  The number of actual uTorrent users who began from
26     a link at download.com is thus likely to be *far* smaller than the number of users
27     clicking the initial link.  *See* Murphy Decl. ¶ 26.

28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

4

Users seeking BitTorrent software for their computer can find the software just as easily through links provided by search engines such as Google or Bing as through the links provided by CBSI.  Declaration of Leana Golubchik, Ph.D. ("Golubchik Decl.") ¶ 51 & Ex. 10.  An end-user who searches for "uTorrent" will receive a link to download the client prominently displayed in the Google or Bing search results.  If a user clicks on the link to download, however, she typically will not see a warning discouraging copyright infringement like she would if using download.com's directory service.  *Id.*

It is CBSI's policy that copyrighted works may not be used without permission for testing or reviewing any software product.  Murphy Decl. ¶ 21.  For example, the Motion makes much of the depiction of songs by the bands Nine Inch Nails and Lovedrug during a CNET video demonstration of torrent software, Mot. at 14; however, these songs were in fact released under a Creative Commons license authorizing free download on the Internet using P2P software.  Declaration of Glenn Reinman, Ph.D. ("Reinman Decl.") ¶¶ 25-27 & Exs. 12-13.  CBSI's use of these songs as demonstration vehicles did not constitute or encourage infringement.  The expressed intent of these artists (and others who release content in this manner) was to facilitate and encourage Internet users' sharing to promote their work.  *Id.*  CBSI also has a policy of removing reviews that it deems obscene, offensive, unlawful, or that are the subject of complaints that in CBSI's judgment warrant such a response. Murphy Decl. ¶ 24.  CBSI is committed to respecting and protecting copyrights, and will continue to discourage infringement while carrying out its primary mission, which is to provide accurate and useful information about technology.  *Id.* ¶ 22.

**B.     <u>BitTorrent Technology</u>**

P2P software refers to software that allows transfer of data directly between users' computers across the network rather than from an originating server to a user. Golubchik Decl. ¶¶ 21-28 & Diag. 6.  It encompasses many species, from Skype

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  telephony to Google video sharing, and includes BitTorrent software as one

2  variation.

3        BitTorrent, developed in 2001, is not a single software application but rather a

4  protocol, or set of common rules and instructions, used to transfer data between

5  computers.  For efficiency, speed, and reliability, the BitTorrent protocol was a

6  major improvement over prior P2P applications.  Golubchik Decl. ¶¶ 36-44.  Prior

7  P2P applications shared files via a 1:1 connection between two computers.  If a user

8  wanted to download a file, the user's computer would find a copy located on another

9  computer and download it from that computer only.  *Id*. ¶ 23.  BitTorrent, by

10  contrast, allows a user to download a single file by receiving pieces of it from

11  multiple computers at the same time.  *Id*. ¶¶ 36-41 & Diag. 8.

12        Drawing from multiple sources gives BitTorrent technological advantages.

13  First, delivery from multiple simultaneous sources provides faster downloads.

14  Golubchik Decl. ¶ 41.  Second, BitTorrent provides a more stable and robust

15  mechanism for ensuring successful transfers:  if one of the sources becomes

16  unavailable, the user can continue downloading the file successfully by using other

17  sources online.  *Id*. ¶¶ 39-40.  Third, BitTorrent is more efficient and reduces traffic

18  on the Internet, as it enables the user to obtain the file from sources that are

19  geographically closest.  *Id*. ¶¶ 38 & 44; Reinman Decl. ¶¶ 10-12.

20        BitTorrent is not limited to any particular file type (such as audio or video

21  files).  This gives it many significant non-infringing uses—above and beyond the

22  artists who have chosen to release works for free distribution.  Reinman Decl. ¶¶ 17-

23  27.  Among the many non-profit organizations that use BitTorrent for the

24  distribution of educational content, the TED Conferences make their talks available

25  using BitTorrent, enabling distribution around the world at a low cost and to

26  audiences where censorship restrictions might otherwise hinder dissemination.  *Id*.

27  ¶¶ 14-16 & 24.  Universities such as Stanford distribute online courses using

28  BitTorrent for similar reasons.  *Id*. ¶ 23.  BitTorrent is critical to the distribution of

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

6

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

large, pervasively used open-source software applications such as Linux and Apache. *Id*. ¶¶ 17-18. It is the means of choice to distribute software patches to millions of users. *Id*. ¶ 22. Academic researchers use BitTorrent to distribute large datasets including seismic data and gene sequences. *Id*. ¶¶ 19-21.

To utilize BitTorrent for any of these purposes, a user must download a client application that operates on the BitTorrent protocol, such as uTorrent or Vuze. The client, however, does not include any content. It allows the user to then download "torrents," which are files that find and download particular identified content (*e.g*., a software patch) from multiple users of the protocol. Golubchik Decl. ¶ 48. Torrents can be found at various sites on the Internet, including websites operated by Stanford or Nine Inch Nails (that offer their own content) (Reinman Decl. ¶¶ 23 & 26), or by aggregators of torrents including content created by others.

CBSI is far from the only source of information on BitTorrent technology. A search on Google turns up numerous sites providing information on how to use BitTorrent and links to download it. Golubchik Decl. ¶ 51 & Ex. 10. Wikipedia contains a detailed description of BitTorrent alongside links to download BitTorrent clients. Reinman Decl. ¶ 37 & Ex.18. Articles on NYTimes.com describe in detail the mechanics of Internet piracy and provide links to websites where BitTorrent applications can be downloaded by the public. Golubchik Decl. ¶ 50 & Ex. 9.

## C.      <u>The Plaintiffs And The Works At Issue</u>

Plaintiffs are roughly four dozen musicians and two music companies. The Motion, however, concerns only two of these Plaintiffs, Jalil Hutchins and Douglas Davis, and mentions 24 musical works, two of which Plaintiffs have since "dropp[ed]," and only six of which are listed in the AO121 schedule defining the works at issue in this lawsuit. Berger Decl. ¶¶ 2-6 & Exs. 1-2. Hutchins and Davis were involved in the creation of these works, but the Motion includes no evidence that they own the recordings, compositions or copyrights in them. On the contrary, the only "proof" of ownership Plaintiffs submitted—printouts from the Copyright

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1   Office's website rather than the official certificates of registration—identifies third

2   parties as the copyright owners.  Declaration of Christian Anstett (Dkt. No. 42-2)

3   ("Anstett Decl.") Exs. AA & BB.[2]

4        The Motion also does not set forth any evidence showing direct infringement

5   of these songs in any way connected to CBSI.  The screenshots of the PirateBay (a

6   search engine for torrent files) that Plaintiffs include as ostensible (though unreliable

7   hearsay) evidence that their songs are available via torrents do not indicate that the

8   media files were created, posted, or downloaded by anyone affiliated with CBSI,

9   using a BitTorrent client found through CBSI, or even using a *type* of BitTorrent

10  client that CBSI lists.  *See* Reinman Decl. ¶¶ 30-35 & Ex. 15.  Plaintiffs point to no

11  reference to any of Plaintiffs, or any of their works, on any CBSI website, at any

12  time.  *See*, *e.g.*, Anstett Decl. Ex. E.  CBSI is unaware of any such references in any

13  CNET or download.com article, product review or listing related to file-sharing

14  technology.  Murphy Decl. ¶ 25.

---

15      [2] After the Motion was filed, Plaintiffs produced a handful of further
16  documents that do not come close to showing that Hutchins and Davis own the
    copyrights in any of the works at issue.  Plaintiffs averred that their production
17  concerning the issue of ownership was complete for purposes of this motion.  Berger
18  Decl. ¶ 10 & Ex. 4.  Neither their Motion nor the later production includes the
    copyright registration certificates for any of the works.  *Id.* ¶ 11.  As to the Hutchins
19  works, Plaintiffs merely produced search results from what appears to be an ASCAP
20  database, which contains double hearsay listing Hutchins as the writer and/or
    performer of certain works.  These documents say nothing about legal or beneficial
21  ownership of the copyright.  *Id.* ¶ 18.  Plaintiffs also produced a copyright office
22  printout for the title ("Whodini's Haunted House"), which Mr. Hutchins apparently
    registered after the Complaint in this action was filed.  This title is not among the
23  works at issue in the Motion.  Nor is it listed on Plaintiffs' Form AO-121.  *Id.* ¶ 17.
24  For the Davis works, Plaintiffs produced an unauthenticated document that purports
    to be an "exhibit" to an agreement that references (but does not include) a purported
25  assignment to Davis of rights, "if any," the assignor held in the song "The Show."
26  *Id.* ¶ 14.  But Plaintiffs did not produce other necessary chain-of-title documents for
    that work.  Plaintiffs also produced a 1991 "business certificate" that also does not
27  substantiate his legal or beneficial ownership.  *Id.* ¶ 15.  None of these materials
28  cures Plaintiffs' deficient showing regarding standing.

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

8

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1    Plaintiffs claim that torrent files of their songs have been available online

2  since 2008.  Anstett Decl. ¶ 8 & Ex. E.  Yet by their own admission, Plaintiffs have

3  not acted to protect the works from copying.  Indeed, all of the 24 works identified

4  in the Motion are available for free on YouTube and have been for at least a year

5  (90% have been available at least three years).  Reinman Decl. ¶ 28.  There is no

6  evidence that Plaintiffs have sent any takedown notices to YouTube.  Berger Decl.

7  ¶ 19-20, Exs. 6-7.

8                          ### III.  **PROCEDURAL BACKGROUND**

9    Plaintiffs filed a first lawsuit against CBSI on May 3, 2011 and voluntarily

10  dismissed it on July 4, 2011.  *David, et al. v. CBS Interactive Inc., et al.*, 11-cv-

11  03807-DSF-JC (Dkt. Nos. 1, 11) (C.D. Cal.)).  On November 14, 2011, Plaintiffs

12  filed this second lawsuit against CBSI.[3]  Dkt No. 1.  The Complaint cites BitTorrent

13  technology dozens of times, *id.*, including references to CNET reviews as early as

14  2001—at variance with Plaintiffs' contention that their long delay in moving for an

15  _____

16    [3] Both cases were initiated by Alkiviades David, a self-styled "billionaire
   media mogul," "movie actor," Hellenic Coca-Cola bottling heir, and the owner of
17  FilmOn.com.  Berger Decl. ¶¶ 21-23 & Exs. 7-9.  The filing of the cases against
18  CBSI appears to be a response to a copyright infringement lawsuit filed in 2010 by
   CBS Broadcasting Inc. and the other major television networks against Mr. David's
19  FilmOn.com service in connection with the unauthorized streaming of their
   copyrighted programming over the Internet.  *CBS Broadcasting Inc., et al. v.*
20  *Filmon.com, Inc.*, 10-CV-7532-NRB (Dkt. No. 1) (S.D.N.Y. Filed Oct. 1, 2010).
   On November 22, 2010, District Judge Naomi Buchwald granted a temporary
21  restraining order, enjoining the FilmOn.com service.  *Id.* Ex. 9.  Thereafter, the court
22  entered a Stipulated Consent Judgment against FilmOn.com.  Another lawsuit
   involving major broadcasters and Mr. David's companies, *NBCUniversal Media*
23  *LLC, et al. v. Aereokiller LLC, et al.*, (C.D. Cal. Case No. 2:12-cv-06950-GW-JC),
24  is currently pending before Judge Wu of this Court.  The broadcasters sought a
   preliminary injunction against Mr. David's companies on November 8, 2012, which
25  has since been granted.  *Id.* Ex. 8.  One day later, on November 9, 2012, Plaintiffs
26  here—represented by the same firm that continues to represent Mr. David's
   companies in the *Aereokiller* action—filed their preliminary injunction motion in
27  apparent retaliation.  *Id.*  (*Aereokiller* docket sheet).
28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

injunction results from a "rapidly changing technological landscape."  Mot. 17 n.5. On July 13, 2012, the Court dismissed without leave to amend Plaintiffs' claims for vicarious and contributory copyright infringement.  Dkt No. 28.

On November 9, 2012, without ever having raised the prospect of interim relief at any point in the CMC process (*see* Dkt. No. 35), Plaintiffs filed their current Motion.  Dkt. No. 42.  The arguments in the Motion focus on BitTorrent technology, but the injunction extends more broadly and as to both BitTorrent and other technology seeks to restrain an enormous range of lawful expression and conduct.[4]

## IV.  <u>ARGUMENT</u>

**A.**   <u>**Plaintiffs Have The Burden Of Establishing All Factors Necessary For Preliminary Injunctive Relief**</u>

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375-76 (2008).  A plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, ***and*** [4] that an injunction is in the public interest."  *Id.* at 374.  Plaintiffs are mistaken in relying on a pre-*Winter* standard providing that a "possibility" of irreparable harm or "serious questions" on the merits could be sufficient.  Mot. at 16:3-22 (citing *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F. 3d 824, 827 (9th Cir. 1997)).  Such cases are "no longer controlling, or even viable." *American Trucking Assocs, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see also Alliance for Wild*

---

[4] The Motion seeks to enjoin CBSI from three categories of activity: (1) directly or indirectly enabling, facilitating, permitting, and assisting downloading P2P software based on BitTorrent; (2) linking or hosting BitTorrent software; and (3) encouraging or inducing the infringement of copyrighted works through P2P software generally.  Proposed Order at 2:4-18.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Rockies v. Cottrell*, 622 F.3d 1045, 1052 (9th Cir. 2010) (requiring proof of all four *Winters* prongs).[5]

**B.      Plaintiffs Are Unlikely To Succeed On The Merits**

      **1.      Elements Required For Liability**

As shown below, to establish a claim of copyright infringement based on an inducement theory, Plaintiffs must show, at a minimum: (1) they own the works at issue; (2) those works have been directly infringed; (3) in the United States; (4) by users of CBSI's website and BitTorrent technology obtained therefrom; (5) that CBSI distributed a device with the object of promoting its use to infringe copyright including (a) the intent to bring about infringement; (b) knowledge of the existence of the work that is infringed; and (c) knowledge that the induced acts constitute infringement.  Plaintiffs fail at every step.

      **2.      Plaintiffs Have Not Shown Likely Success On Proving Liability**

      **(a)      Plaintiffs have not shown ownership of the works.**

Plaintiffs assert that they own the copyrights in the songs listed in the Motion, Mot. at 17, but 18 of them are not included in Plaintiffs' Form AO 121 and are not properly in the lawsuit.  Berger Decl. ¶¶ 2-6 & Exs. 1-2; Dkt. No. 35 (designating Oct. 30, 2012 as the last day to amend pleadings); *Peker v. Fader*, 164 Fed. Appx. 49, 2006 WL 172204 (2d Cir. Jan. 24, 2006) (affirming denial of motion for leave to correct Form AO 121).  Plaintiffs cannot seek relief as to works not part of the action.  C.D. Cal. L.R. 3-1 (AO 121 requirement).

---

[5] Intellectual property cases are subject to the same showing.  *Flexible Lifeline Sys. v. Precision Lift*, 654 F.3d. 989, 998 (9th Cir. 2011) (no presumption of irreparable harm; vacating injunction); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011) (plaintiff "must establish . . . . each of these four factors").  The Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837 (2006).

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

As to the works that are at issue, the documents submitted with the Motion actually *refute* Plaintiffs' claim of ownership, identifying third parties as copyright claimants.[6] Anstett Decl. Exs. AA & BB.  Documents belatedly produced in discovery are equally unavailing: as explained above, n. 2, these unauthenticated and untimely documents[7] fail to establish that Plaintiffs are the legal or beneficial owner of any copyright for any of the works they chose to put at issue in the Motion.

Plaintiffs' grossly deficient ownership evidence bars their Motion at the outset as ownership is an indispensible element of their claims.  17 U.S.C. § 501(b) (copyright plaintiff must be "legal or beneficial owner"); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (ownership is essential for standing); *Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, 2011 WL 281020 (C.D. Cal. Jan. 26, 2011) (dismissal based on inadequate ownership allegations).

> **(b)    Plaintiffs submitted no reliable evidence of direct infringement of their works, let alone direct infringement connected to CBSI.**

Plaintiffs also bear the burden of demonstrating likely success in proving direct infringement induced by CBSI.  *Grokster*, 545 U.S. 940-41 ("inducement theory . . .  requires evidence of actual infringement by recipients of the device, the software in this case"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability . . . does not exist in the absence of direct

---

[6] While a certificate of copyright registration may create a presumption of the validity of the copyright and the facts stated therein (*see* 17 U.S.C. § 410), that presumption is useless here.  The actual certificates are not before the Court, only printouts from the Copyright Office's website which are not entitled to this presumption and have been held insufficient by at least one court to carry a plaintiff's burden on a motion for preliminary injunction.  *Poon v. Roomorama, LLC*, 2009 WL 3762115 (S.D.N.Y. Nov. 10, 2009).  Further, these printouts suggest the "facts stated" in the certificate are that someone other than Plaintiffs owns those copyrights.  That would, of course, do Plaintiffs no good.

[7] The documents should not be permitted on Reply.  *See* Fed. R. Civ. Proc. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion.").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

infringement.").  As *Grokster* held, one who induces infringement may be liable "for the ***resulting acts*** of infringement by third parties"—not for infringement the defendant did not cause.  545 U.S. at 937, 938 (emphasis added).[8]

To establish even a hypothetical nexus between any asserted direct infringement of Plaintiffs' work and CBSI would require, at a bare minimum, proof that the direct infringer downloaded the BitTorrent client after following a link from download.com, and then used that client to infringe within the United States,[9] and within the three year statute of limitations window.  17 U.S.C. § 507(b).  Plaintiffs do not come close to meeting these requirements.

In the first place, Plaintiffs have provided no competent evidence that their works were actually infringed—only double and triple hearsay screenshots from PirateBay without establishing foundation, time period, or conduct in the United States.  Anstett Decl. Ex. E; *cf.* Reinman Decl. ¶¶ 30-35 (explaining lack of reliability of Pirate Bay printouts).  *Murphy v. I.N.S.*, 54 F.3d 605, 611 (9th Cir. 1995) (excluding double hearsay statements not subject to cross examination).[10]

---

[8] *See also MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir. 2011) (to establish direct infringement in the context of an inducement claim, plaintiff must demonstrate copyright ownership and a violation of one of its exclusive rights by the users of the defendant's products).

[9] *Subafilms, Ltd. v. MGM-Pathe Comms. Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994) (For purposes of secondary liability, a "primary activity [direct infringement] is not actionable" if it occurs outside the United States.); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A][3][b] (2012) (For indirect infringement, an extraterritorial act of direct infringement "cannot serve as the basis for holding [a party] liable under the Copyright Act.").

[10] CBSI sought discovery regarding the basis of Plaintiffs' allegations of direct infringement, but, to date, Plaintiffs have provided no such evidence beyond pointing CBSI back to the PirateBay screenshots.  *See* Berger Decl. ¶¶ 20, 24, Exs. 6 at 23:9-25 (RFP No. 30: "identify the alleged direct infringers of the works at issue.") & 10 at 6:19-25 (Interrogatory No. 2 Response: "Plaintiffs direct CBSI to pages 13-15, 21 of Plaintiffs motion for a preliminary injunction.").  No further evidence of direct infringement is forthcoming; Plaintiffs stipulated they would not put in further evidence on this issue in connection with their Motion.  *Id.* ¶ 25.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

13

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Even if the PirateBay printouts were evidence that Plaintiffs' works were being infringed, the printouts do not purport to connect any alleged copying to CBSI, or to any BitTorrent client obtained through CBSI.  Reinman Decl. ¶ 35 & Ex. 15.  Given the wide availability of BitTorrent clients at other locations accessible by routine searches on any major search engine, the existence of a copied file simply does not support an inference that it was created with client software obtained after clicking on a CNET link.  *Id.*  *Grokster*'s express holding requires that the Plaintiffs prove that the direct infringement be a "resulting act" of CBSI's conduct.  545 U.S. at 937.  Plaintiffs do not even attempt to do so.

### (c)   Plaintiffs are not likely to establish that CBSI's object is to induce or profit from copyright infringement.

*Grokster*'s inducement rule applies to "one who distributes a device with the object of promoting its use to infringe copyright" and "premises liability on purposeful culpable expression and conduct," which may give rise to an inference of such an objective.  545 U.S. at 937.  Plaintiffs cannot prove that CBSI had such a wrongful intent here.  None of the factors identified in *Grokster* as evidence of bad intent exists here, and CBSI's actual conduct—which was not in evidence on the prior motion to dismiss—belies any such intention here.

### (i)   CBSI pursues an entirely lawful business model.

In *Grokster*, defendants' "business model . . . confirm[ed] that their principal object was use of their software to download copyrighted works." *Id*. at 926; *see id*. at 940 (in context of entire record, "inference of unlawful intent" was clear).  Just the opposite is true here.  Plaintiffs cannot establish that CBSI's purpose was to "cause and profit from third-party acts of copyright infringement." *Id*. at 941.

CBSI operates one of the leading global publishers of premium content on the Internet.  Berger Decl. Ex. 26.  CBSI has a laudable business goal of providing useful information about a huge array of ever-changing technology.  Murphy Decl. ¶¶ 4-7 & Ex. A.  The download.com site provides only a small portion of CBSI's

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  offerings, the bulk of which provide editorial and entertainment content.  *Id.*
2  Further, the download.com portion, in providing a catalog of third-party
3  applications, serves an important purpose wholly unrelated to any intent to induce
4  infringement:  providing a comprehensive archive of available software
5  applications.  Golubchik Decl. ¶ 53.  BitTorrent applications comprise a miniscule
6  percentage of the applications available on download.com and do not rank in the top
7  20 applications viewed on that website.  Murphy Decl. ¶ 12.  Nor does CBSI receive
8  any payment for links to, downloads of, or uses of BitTorrent clients.  *Id.* ¶ 16.

9      CBSI is owned by CBS Corporation, a mass media company that provides
10  content across a variety of platforms to audiences around the world.  CBSI is
11  profoundly concerned with protecting content against infringement.  Murphy Decl.
12  ¶ 22.  Nothing about its business suggests an intent to encourage third parties
13  otherwise.

14              (ii)    CBSI's editorial reviews of P2P software do not
15                      demonstrate a purpose to induce infringement.

16      As a second basis for inferring intent to induce, *Grokster* found that
17  statements in that case relating to infringement raised questions of fact as to the
18  defendants' objectives. *Grokster*, 545 U.S. at 925, 938 (reversing grant of summary
19  judgment for defendants).  As the Plaintiffs here put it, a "defendant's statements
20  themselves are not the activity prohibited by the doctrine of inducement liability but
21  are just evidence of the [alleged] culpable intent to induce infringement which is the
22  underlying wrongful act."  Dkt. No. 17 at 13.  In context, however, CBSI's writings
23  about BitTorrent technology provide no basis to infer a culpable intent.

24      First, BitTorrent technology has a wide array of beneficial non-infringing
25  uses, from the Human Genome Project to TED talks to Stanford engineering courses
26  to ubiquitous software patches to free educational materials.  Reinman Decl. ¶¶ 17-
27  27.  Such technology has been embraced by academia and industry for its stability,
28  flexibility, and efficiency in transferring large data files.  *Id*. ¶¶ 9-16; Golubchik

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2
15
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

¶¶ 36-44.  While Plaintiffs cast all references by CNET editors to BitTorrent's capacity to copy "large files" as an invitation for copyright infringement, Mot. at 10:24, such pervasive open source software as Apache and Linux, as well as massive research databases, refute Plaintiffs' insinuation that copying large files is nefarious by nature.  Reinman Decl. ¶¶ 17-21.  Truthful descriptions of BitTorrent and its capacity do not infer an intent to induce infringement.

To the contrary, CBSI actively discourages copyright infringement.  It takes the affirmative step of warning users who click a link for a BitTorrent client that they are being transferred to a third-party website, that it can be unlawful to make copies without authority, and that they should not use the technology for purposes of infringement.  Murphy Decl. ¶¶ 19-20 & Exs. B, D, & E.  Moreover, CBSI policy forecloses the use of unauthorized works in demonstration of P2P software, thereby respecting copyright and avoiding any encouragement of infringement.  *Id.* ¶ 21.  Thus, in using works of Nine Inch Nails and Lovedrug in demonstrations, CBSI has used works subject to a Creative Commons license and authorized for redistribution.  Reinman Decl. ¶¶ 25-27.  Plaintiffs' condemnation of CBSI for using these licensed works (Mot. at 14:5-11) is thus deeply misleading.  *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010) (license negates claims of infringement.)

As the crux of their argument, Plaintiffs point to seven articles (of tens of thousands published by CNET over the past two decades) to argue that CBSI's overriding purpose is to induce infringement.  Mot. at 7-14.  None supports Plaintiffs' claims.  One article, titled "Download This Mr. Jones," discusses a popular music group's partnership with the BitTorrent client uTorrent to release an album via BitTorrent.  Mot. at 10; Anstett Decl. Ex. M.  Any suggestion that reporting on the distribution of authorized, *non-infringing* music through the BitTorrent protocol evidences intent to induce infringement is simply absurd.  Moreover, the article ends with an admonition that CBSI "does not encourage or condone the illegal duplication or distribution of copyrighted content."  *Id.*

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Two other articles (one of them a video review) demonstrate non-infringing uses of BitTorrent for software files and music releases that the bands Lovedrug and Nine Inch Nails authorized for distribution through BitTorrent.[11] Mot. at 7-10; Anstett Decl. Exs. H, I, & Y.  These reviews disprove Plaintiffs' false assumption that all copyrighted files available through BitTorrent necessarily infringe and that any reporting on BitTorrent therefore promotes infringement.  To the contrary, if these reviews encourage use of BitTorrent at all, it is to download authorized, non-infringing files like Linux distributions and Creative Commons-licensed music.

Plaintiffs also contend that news reporting on the existence of piracy is evidence of intent to encourage piracy.  Mot. at 10-11; Anstett Decl. Exs. O & V. These articles, however, do no more than acknowledge the reality that some content shared through P2P networks is unauthorized.  *See Grokster*, 545 U.S. at 937 ("mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability").  The articles do not encourage piracy; instead, one article discusses means of combating it.  Anstett Decl. Ex. O.  Neither article mentions Plaintiffs' works.

Plaintiffs' only other ostensible evidence of intent to induce are two articles published about earlier P2P technologies more than a decade ago which are no longer available on CBSI's websites.  Mot. at 12-13; Anstett Decl. Exs. P, Q & R.

---

[11] The article "uTorrent Preparing Paid Version" is illustrated with a screenshot showing a partially complete download of "Lovedrug – EP – I."  Mot. at 8, Anstett Decl. Ex. I.  Lovedrug released the album EP-I under a Creative Commons license permitting fans to share the album online.  Reinman Decl. ¶¶ 25, 27 & Ex. 13.  Similarly, the video review of uTorrent depicts a search for Nine Inch Nails songs, and Plaintiffs' claim that the "sample search results displayed in the video include copyrighted works."  Mot. at 13-14 & 19.  In fact, however, the search results consist almost entirely of "The Slip," Reinman Decl. ¶¶ 25-26, Exs. 11 & 12.  The reviewer opens a torrent of "The Slip" to download.  Nine Inch Nails used BitTorrent to release "The Slip" for free in high-quality formats due to the large size of the files.  *Id.* ¶ 26 & Ex. 12.  The uTorrent review also shows a download of a Linux distribution, another non-infringing use of BitTorrent.  Anstett Decl. Ex. H.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    These articles came long before CBS's purchase of CNET and well before the

2    Supreme Court's *Grokster* decision. Yet until that decision, the Ninth Circuit had

3    held that Grokster was legal.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,*

4    *Ltd.*, 380 F.3d 1154 (9th Cir. 2004).  These articles do not mention (or link to)

5    BitTorrent technology. They simply cannot support an inference that CBSI had a

6    purpose at any time—much less during the period from 2008 forward—to induce

7    infringing uses of BitTorrent technology.  Plaintiffs in essence argue that these

8    decade-old articles, not actionable in their own time, should now be considered as

9    evidence of CBSI's bad character, a use proscribed by Fed. R. Evid. 404(a)(1).[12]

10       Significantly, following *Grokster*, the Supreme Court has limited intellectual

11   property inducement claims to instances in which the defendant has knowledge that

12   the induced acts constitute infringement.  *Global-Tech Appliances, Inc. v. SEB S.A.*,

13   563 U.S. _, 131 S. Ct. 2060, 2066-68 (2011) (recognizing rule in copyright law and

14   applying in patent case).  Here, in light of BitTorrent's beneficial uses and the

15   absence of any adjudicated finding that the technology is inherently infringing,

16   CBSI cannot be deemed to have knowledge that publishing truthful information

17   about the technology and links would be unlawful.

18              (iii)    CBSI is not engaged in culpable conduct.

19       Just as CBSI has not engaged in culpable expression about BitTorrent

20   technology, Plaintiffs cannot show it has engaged in "culpable conduct."  As

21   *Grokster* recognized, "mere knowledge of infringing potential or of actual infringing

22   uses would not be enough here to subject a distributor to liability."  545 U.S. at 934.

23   Importantly, CBSI did not design, develop, or create any BitTorrent technology.

24   Thus, unlike the product developers in *Grokster*, CBSI was in no position to design

25

26       [12] User reviews or comments do not reflect the opinions of CBSI.  Murphy
27   Decl. ¶ 23.  CBSI has a reasonable process for addressing complaints about user
     comments and, due to the variety of such comments, considers take down requests
28   on a case-by-case basis.  *Id.* ¶ 24.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

the product to limit infringement.  545 U.S. at 939.

Indeed, because CBSI did not develop the BitTorrent clients, does not host them, and merely provides a link to the location where they can be accessed, CBSI falls far outside the *Grokster* paradigm of the "distributor" of software.[13]  *See* Reinman Decl. ¶¶ 36-37 & Exs. 16-17 (term "distributor" in the software context describes an entity that creates or directly provides a program to end users).  Thus, in *Limewire*, as in *Grokster*, the defendants programmed, developed, and distributed from their website the product at issue.  *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 410 (S.D.N.Y. 2011) ("A number of companies that have distributed file-sharing programs, including the distributors of the programs Napster, Kazaa, Morpheus, and Grokster have faced liability."); *see also Columbia Pictures Industries, Inc. v. Fung,* 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) (defendant (IsoHunt) distributed torrents that allowed download of infringing files that had no use but to make unauthorized copies).[14]  CBSI, by contrast, is more analogous to a search engine or news sources like NYTimes.com that provide links to software. Reinman Decl. ¶¶ 36-37 & Exs. 16-18; Golubchik Decl. ¶ 50 & Ex. 9.  Expanding inducement liability to those who merely provide commentary, tips, evaluations, and links would reach far beyond the distributors held liable in prior cases.

---

[13] Neither the defendants in *Grokster* nor their products bear any relation to CBSI.  *See, e.g., Grokster,* 545 U.S. at 938-39 (defendants designed products and embedded code to attract former Napster users); *id.* at 939 (business model depended on massive infringing use); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 987-89 (C.D. Cal. 2006) (on remand) (designers built system to facilitate sharing copyrighted music; implemented a search feature for "Top 40" content; and sought to block programs enabling copyright holders to track infringement).

[14] The IsoHunt and Torrentbox services at issue in *Fung*, which District Judge Wilson referred to as "an evolutionary modification of … Napster," are clearly distinguishable from CNET.  2009 WL 6355944 at *1.  In *Fung*, the defendant was "*primarily* engaged in" searching for, aggregating, and distributing copyrighted content.  *Id.* The defendant created site categories dedicated to "Box Office Movies" and film genres; asked users to search for and upload top-grossing copyrighted films; and utilized metadata popular in the piracy community; all in the service of  a "business model depend[ing] on massive infringing use."  *Id.* at *10-*15.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Finally, Plaintiffs do not contend that CBSI even mentions Plaintiffs or the works at issue in any context remotely related to file-sharing, because it does not. Murphy Decl. ¶ 25.  Plaintiffs cannot show culpable conduct because they have not come forward with any evidence that CBSI had knowledge of any of their works, much less any work in which they could actually substantiate their ownership.  Yet, such a showing is necessary to establish culpability for an inducement claim. *Global-Tech*, 131 S. Ct. at 2066-68 (analogizing patent to copyright law in holding that patent inducement liability "requires knowledge of the existence of the patent that is infringed").  In *Grokster,* unlike here, defendants unquestionably knew about and sought to profit from promoting access to the plaintiffs' works, some eight million popular audio-visual works which MGM had identified to defendants. *Grokster*, 545 U.S. at 923.  CBSI in contrast does not target Plaintiffs in any way.

Based on all these factors, Plaintiffs do not come close to showing a likelihood of success on the merits, falling short on numerous elements, any one of which would doom their Motion.

## C. **Plaintiffs Fail To Show Irreparable Harm**

### 1. **Irreparable Harm Is Required And Not Presumed**

Plaintiffs may not obtain preliminary relief without establishing that they are "likely to suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.  In addition, Plaintiffs must show "remedies available at law, such as monetary damages, are inadequate to compensate for [their] injury."  *eBay*, 547 U.S. at 391.  Unsupported statements premised on reputational injury or speculation cannot establish irreparable harm.[15]  Moreover, a plaintiff seeking a preliminary

---

[15] *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 725 (9th Cir. 1985) (upholding denial of a preliminary injunction based on a failure to provide evidence beyond statements of the owner that restaurant would face reputational harm); *see Solidus Networks, Inc. v. Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm.").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  injunction must show that the proposed injunction would remedy the harm alleged.

2  *eBay*, 547 U.S. at 388; *Winter*, 555 U.S. at 7.

3       **2.**     <u>**Plaintiffs Have Not Met Their Burden**</u>

4       **(a)**     **Plaintiffs' delay defeats their claim of irreparable harm.**

5       Plaintiffs' exceptionally long delay—first challenging a reviewer of

6  BitTorrent software more than a decade after release of the protocol—is fatal to

7  their assertion of irreparable harm.  A "long delay before seeking a preliminary

8  injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc.*

9  *v. Chronicle Publ. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  Delays of even several

10 months are regularly held sufficient to preclude any claim of irreparable injury.[16]

11      Here, the purportedly objectionable statements on CNET's websites happened

12 up to a decade ago.  Torrents for Plaintiffs' works have been available for years.

13 Reinman Decl. ¶ 32.  Plaintiffs waited a year after filing the Complaint, and several

14 months after the ruling on the Motion to Dismiss, before bringing this Motion.

15 Their unjustified delay confirms a lack of urgency and a lack of any irreparable

16 harm.[17]

17

18

19      [16] *See Metro-Media Broadcasting Corp. v. MGM/UA Entertainment Co.*, 611

20 F. Supp. 415, 427 (C.D. Cal. 1985)(delay of four months); *Playboy Enters. v.*

21 *Netscape Communications Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999)
   (five-month delay demonstrated lack of irreparable harm), *aff'd*, 202 F.3d 278 (9th

22 Cir. 1999).  *See also High-Tech Medical Instrumentation, Inc. v. New Image Indus.,*

23 *Inc.*, 49 F.3d 1551, 1556-57 (Fed. Cir. 1995) (17-month delay "militates against the
   issuance of a preliminary injunction"); *Protech Diamond Tools, Incorporation v.*

24 *Liao*, No. C 08-3684 SBA, 2009 WL 1626587, at *6 (N.D. Cal. June 8, 2009)
   ("delay alone . . . [is] sufficient to undermine the Plaintiff's claim of immediate,

25 irreparable harm"); 4 Nimmer & Nimmer, *Nimmer on Copyright* §14.06[A][3][c]

26 (2012) ("Injunctions go to the speedy, or at least the diligent.").

27      [17] Indeed, the only apparent cause for this Motion being filed is not an urgent
   need for relief, but an urgent need to retaliate against CBS for filing a motion for

28 preliminary injunction against Alki David in a different case.  *See* n.3, *supra*.

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**(b)    Plaintiffs submitted no evidence of harm.**

To overcome this fatal delay, Plaintiffs assert, in conclusory fashion and without citation or proof, that their works are allegedly infringed through BitTorrent applications purportedly "distributed" by CBSI; that CBSI has allegedly contributed to the growth of BitTorrent technology; and that "Plaintiffs' economic injuries and lost revenues are obvious and substantial."  Mot. at 21:14-15.  As demonstrated above, however, Plaintiffs have not in fact shown infringement of any of their works, any connection to CBSI, or any actual economic injury.

Nor have Plaintiffs explained why any unsubstantiated "economic injuries and lost revenues" are irreparable,[18] or how an injunction here would reduce them, given the alternative sources for BitTorrent clients.  This case thus stands in sharp contrast to the various non-binding cases Plaintiffs cite, Mot. at 22, in which preliminary injunctions were awarded based on substantial showings of serious and irreparable harm.[19]  At bottom, Plaintiffs ask the Court to presume irreparable harm if (contrary to the record) they establish infringement and the elements of inducement—precisely what *eBay* and binding Ninth Circuit precedent prohibit, and what their delay discredits.

---

[18] *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (reversing grant of an injunction because "lost revenues would be compensable by a damage award"); *Lamont v. Time Warner, Inc.*, 2012 WL 5248061 at *4 (C.D. Cal. Oct. 19, 2012) (finding that royalties are monetary in nature and not irreparable injuries).  Plaintiffs also make bizarre allegations concerning their reputations and the availability of pornography through BitTorrent technology that do not warrant a substantive response.

[19] *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, 2012 WL 3715350 (D. Md. Aug. 27, 2012) (injunction based on several third-party declarations attesting to reputational harm); *Tattoo Art, Inc. v. TAT Intern., LLC*, 794 F. Supp. 2d 634 (E.D. Va. 2011) (permanent injunction following a trial with multiple witnesses); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285-87 (2d Cir. 2012) (finding irreparable harm based in part on defendant's inability to pay monetary damages and difficulty calculating damages).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

22

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**D.** **Plaintiffs Fail To Show That The Balancing Of Equities Tips Sharply In Plaintiffs' Favor**

The balance of hardships strongly favors CBSI.  CBSI is in the business of providing a comprehensive directory of software available online.  Murphy Decl. ¶ 10.  Plaintiffs' proposed injunction would require CBSI to excise all references to P2P software, including BitTorrent applications with non-infringing uses, as well as discussion about them.  CBSI would be precluded from conducting a reputable business of providing news coverage and a comprehensive directory of software available online.  *Id*. ¶ 29.  This damage to CBSI strongly weighs against the issuance of an injunction when balanced against the absence of any irreparable harm to Plaintiffs.

In addition, users' ability to search the Internet for torrents would be unimpeded by any injunction.  Users would still be able to search via Google for BitTorrent clients and would still arrive at the very same websites CBSI links to (without a warning not to infringe).  Golubchik Decl. ¶¶ 51-52 & Exs. 10-11.  No hardship to Plaintiffs will follow denial of an injunction.  *See Perfect 10-Google*, 653 F.3d at 982 (upholding denial of an injunction because works were available through "search engines other than Google" and injunction would not remedy the purported harm).

**E.** **Plaintiffs Fail To Show That The Proposed Preliminary Injunction Is In The Public Interest**

Plaintiffs' proposed preliminary injunction would harm the public interest in two concrete ways.  First, Plaintiffs' proposed preliminary injunction, in seeking to curtail discussion about software that can be used for both infringing and non-infringing purposes, would remove significant amounts of news content from the website, diminishing the public's access to information of value to academics, businesses, and Internet users.  Golubchik Decl. ¶ 53.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Second, precluding links from CNET to BitTorrent client sites will both increase the number of users who will not see CNET's warning against infringement when searching for BitTorrent clients, and undermine informed public access for non-infringing users.  A BitTorrent client is required to access significant non-infringing content, like software releases and patches, online courses, TED talks, artists using BitTorrent protocol as distribution platforms, and even speech opposed by repressive governments.  Reinman Decl. ¶¶ 14-27.  BitTorrent technology reduces costs of transmission and increases efficient flow of Internet traffic.  *Id.* ¶¶ 9-13; Golubchik Decl. ¶ 44.  Relief must not be granted where it would "compromise legitimate commerce or discourage innovation having a lawful purpose."  *Grokster*, 545 U.S. at 937.  An injunction here would do exactly that.[20]

## F.  The Proposed Injunction Is Unconstitutionally And Inequitably Vague And Overbroad

"Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion."  *Winter*, 508 F.3d at 886; *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ("[a]n overbroad injunction is an abuse of discretion").

The proposed preliminary injunction does not meet these standards because it would require CBSI to cease functions that are not even alleged to constitute inducement.  As discussed above, it is conduct allegedly inducing third parties to infringe—not the availability of a non-infringing product—that is the essence of an inducement claim.  The proposed preliminary injunction would cover not only materials that could allegedly encourage misuse of BitTorrent software, but also

---

[20] Plaintiffs assert "a public interest can only be served by upholding copyright protections," suggesting an injunction might maintain the integrity of the music industry.  Motion at 23:20-21.  Plaintiffs' argument is unpersuasive given that the injunction will not actually prevent anyone who wants BitTorrent technology from getting it, is not directed at preventing any user from engaging in infringement, and is not narrowly focused on music or entertainment.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

125786.2

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  content that simply describes its function or use and links to the software itself.  This

2  could include news articles and even warnings about P2P software.  The proposed

3  injunction is also drafted to cover not only torrent software but all P2P software,

4  including products such as Skype or messaging services having nothing to do with

5  Plaintiffs' alleged copyrights.  Golubchik Decl. ¶¶ 27-28.  It is impossible to tell

6  from the injunction what types of statements would be prohibited.  Vague and broad

7  requests for injunctive relief aimed targeting speech or the press raise serious First

8  Amendment issues.[21]

## V.  CONCLUSION

10  For the reasons stated herein, CBSI respectfully requests that Plaintiffs'

11  Motion for Preliminary Injunction be denied in its entirety.

13  Dated:  January 25, 2013          KENDALL BRILL & KLIEGER LLP

16  By:      /s/ Laura W. Brill

17  Laura W. Brill
    Attorneys for CBS Interactive Inc. and
18  CNET Networks, Inc.

---

22  [21] *See, e.g.*, *Harper & Row Publishers Inc. v. Nation Enters.*, 471 U.S. 539,
23  582, 105 S. Ct. 2218 (1985) (observing that limitations on copyright are appropriate
    when necessary to "ensure[] consonance with our most important First Amendment
24  values."); *Hurley v. Irish-Am. Gay Grp. of Boston*, 515 U.S. 557, 573, 115 S. Ct.
25  2338 (1995) ("general rule" protecting freedom of speech applies to "expressions of
    value, opinion, or endorsement"; the point of this rule "is simply the point of all
26  speech protection, which is to shield just those choices of content that in someone's
27  eyes are misguided, or even hurtful."); *Compuware Corp. v. Moody's Investors
    Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (affirming dismissal of claims based
28  on First Amendment protection of product reviews and ratings).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067