LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
ERIN SIMON (CSB No. 268929)
esimon@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendant
CBS INTERACTIVE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUGAR HILL MUSIC, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> CBS INTERACTIVE INC., <br><br>　　　　Defendant. | Case No. 2:11-cv-09437-DSF-JC <br><br> **DEFENDANT CBS INTERACTIVE INC.'S OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION TO EXTEND DISCOVERY CUT-OFF  DATE, OR IN THE ALTERNATIVE, CONDUCT DISCOVERY AFTER THE CUT-OFF** <br><br> Hearing:　　*Ex Parte* <br> Time:　　　*Ex Parte* <br> Courtroom:　840 <br> Judge:　　　Hon. Dale S. Fischer |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# INTRODUCTION

Plaintiffs' brazen *ex parte* plea to extend the longstanding August 30, 2013 discovery cut-off in this case is untimely, unwarranted, and unreasonably disruptive to the case schedule. As illustrated by the need for multiple motions to compel in this case—none ever brought by Plaintiffs against Defendant CBS Interactive Inc. ("CBSI")—Plaintiffs consistently have shown a lack of diligence throughout the fact discovery period.[1] Despite Plaintiffs' recalcitrance, they shamelessly seek emergency relief from a discovery deadline they have known of for close to a year [Dkt. No. 39, Order re Jury Trial] and have had full opportunity to comply with.[2] Most glaringly, Plaintiffs' current lead counsel, Mr. Ryan Baker—who signed Plaintiffs' Rule 26(f) Report and agreed to the August 30, 2013 Discovery Cut-off [Dkt. No. 35], appeared at the August 27, 2012 scheduling conference that confirmed the Discovery Cut-off, signed discovery requests and deposition notices on behalf of Plaintiffs (Kelly Decl. ¶ 4), signed the First Amended Complaint [Dkt. No. 31], and has been counsel of record since the filing of the complaint in November 2011—claims that before July 1, 2013, "I had minimal involvement in the case" (Declaration of Ryan G. Baker ¶ 6) as justification for extending discovery.

Plaintiffs' self-inflicted failure to conduct timely discovery in good faith is no justification for allowing them additional discovery beyond August 30, 2013.

---

[1] As described in CBSI's motions to compel [Dkt. Nos. 64, 78, 96], numerous Plaintiffs have not shown up to scheduled depositions, and Plaintiffs have failed to provide verified interrogatory responses or timely produce documents. *See* Declaration of Jennifer L. Kelly ("Kelly Decl.") ¶¶ 14, 29–36, Ex. M.

[2] CBSI of course faced the same deadline and planned accordingly despite having to take discovery from *fifty-seven* distinct Plaintiffs—many of whom have simply refused to respond to discovery requests or show up to scheduled depositions—but CBSI nevertheless clearly informed Plaintiffs as early as April 2013 that it had no intention to stipulate to a later discovery cut-off. Plaintiffs *chose* not to move for a discovery extension at that time (or any time before yesterday), and CBSI should not suffer from that choice.

Tellingly, Plaintiffs do not identify the specific discovery they need but were supposedly prevented from obtaining before the discovery cut-off. CBSI asked Plaintiffs for that information when Plaintiffs sought a stipulation from CBSI to extend the discovery cut-off, to no avail. But Plaintiffs did not disclose what witnesses they want to depose or what written discovery they want to conduct after the current discovery-cutoff. Nor have Plaintiffs satisfactorily explained why they could not have timely obtained that discovery.

Plaintiffs' *ex parte* application also misleads, wholly omitting the fact that CBSI fully cooperated in scheduling the depositions of all its witnesses listed in CBSI's Initial Disclosures (and who have long been known to Plaintiffs) for the first half of July 2013, but rescheduled them at Plaintiffs' request. In fact, Plaintiffs served their first deposition notice in August 2012, subsequently served an amended notice scheduling the deposition on June 4, 2012, and then asked CBSI to postpone it on May 28. Plaintiffs also omit the fact that CBSI dutifully objected or responded to all of Plaintiffs' interrogatories no later than April 29, 2013, and also provided written objections and responses to Plaintiffs' document requests by October 10, 2012. Plaintiffs had ample time to propound more discovery or, if dissatisfied with CBSI's responses, to move to compel. But through yesterday, July 30, 2013, Plaintiffs neither served additional discovery nor moved to compel.

In light of CBSI's stated position since April that CBSI would not stipulate to extending the discovery cut-off, Plaintiffs also could have sought a discovery extension through the normal noticed motion process with ample time to spare before the close of discovery. They chose not to do so. Instead, Plaintiffs inexplicably seek relief *ex parte*, greatly prejudicing CBSI's ability to oppose such relief and hampering this Court's ability to consider the full extent of Plaintiffs' discovery abuses when deciding whether to grant the relief. Plaintiffs should not be allowed to manufacture a discovery emergency to seek *ex parte* relief.

OPPOSITION TO PLAINTIFFS' *EX PARTE* REQUEST FOR EXTENSION OF DISCOVERY CUT-OFF     3     CASE NO. 2:11-CV-09437-DSF-JC

# BACKGROUND

Plaintiffs filed this lawsuit on November 14, 2012. Their counsel of record, including Ryan Baker and Jaime Marquart, have represented all of the fifty-seven Plaintiffs since at least that time in this action.

### A. The Longstanding Scheduling Order and Discovery Cut-Off

On August 28, 2012, the Court issued a scheduling order [Dkt. No. 39, Order re Jury Trial]. Among other things, this scheduling order set August 30, 2013 as the "Discovery Cut-off." *Id.* at 1. The scheduling order clarified that the Discovery Cut-off "is not the date by which discovery requests must be served; it is the date by which all discovery, including all hearings on any related motions, is to be completed." *Id.* § II.B.1. As to written discovery, the Court ordered that "[a]ll interrogatories, requests for production of documents, and requests for admissions must be served sufficiently in advance of the discovery cut-off date to permit the discovering party enough time to challenge (via motion practice) responses deemed to be deficient." *Id.* § II.B.5. The Court also warned that "[a]ny motion challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date, if the motion is granted." *Id.* § II.B.3.

CBSI has long relied on the established Discovery Cut-off and heeded the Court's admonition in its Standing Order (http://tinyurl.com/mzwygxf ¶ 4.a.) that "the Court will impose strict deadlines for completion of discovery" and that "[i]nability to complete discovery within the deadlines set at the [scheduling] conference will not constitute grounds for a continuance in the absence of good cause."

### B. Plaintiffs' Failure to Meet Its Discovery Obligations, Even When Ordered by the Court

Despite freely agreeing to the August 30, 2013 Discovery Cut-off [Dkt. No. 35], Plaintiffs have shirked their discovery obligations, failing to produce key

documents or verified responses to CBSI's interrogatories, and failing to attend numerous scheduled depositions without even the courtesy of prior notice. Accordingly, CBSI had to move to compel multiple times, including for Plaintiffs' noncompliance with a Court Order granting CBSI's first motion to compel.

CBSI's first motion to compel was necessitated by Plaintiffs' near-total failure to produce any documents other than publicly-available Copyright Office webpage printouts and by their refusal to substantively respond on an individual basis to CBSI's written discovery. *See* Dkts. 64, 65. Magistrate Chooljian granted CBSI's motion nearly in full, ordering Plaintiffs to provide individualized responses and to *complete* production of all documents in their possession, custody, or control by June 25, 2013. Dkt. 72. To CBSI's dismay, Plaintiffs failed to comply with this order, necessitating another motion before the Magistrate Judge. Dkts. 78, 79. Plaintiffs were still producing supplemental responses and documents as late as last week, many of which came after the deposition of the person to whom the document related. Kelly Decl. ¶ 36. The Plaintiffs who were deposed last week, in fact, stated that they had not yet even *looked* for documents for this case, much less produced them, although they testified that they knew of relevant and responsive documents in their possession or control. *Id.* ¶ 35.

### C.  Plaintiffs' Failure to Identify Specific Discovery That It Cannot Complete Before the Discovery Cut-Off

Prior to bringing this *ex parte* application, Plaintiffs asked CBSI to stipulate to an extension of the discovery cutoff no fewer than four times. These requests (all of which CBSI rejected) were made on April 4, 2013, April 23, 2013, June 18, 2013, and July 16, 2013. Kelly Decl. ¶ 3. At no point when making these requests did Plaintiffs ever specify what discovery they need that they cannot obtain during the discovery period—including in the instant *ex parte* application. *Id.*

### 1. CBSI Has Appropriately Responded to Plaintiffs' Written Discovery Requests

Plaintiffs served their first and (until today, the only) set of requests for production on CBSI on August 27, 2012. CBSI responded on October 10, 2012. From November 2012 through February 2013, the parties focused their discovery efforts on the pending motion for preliminary injunction, which the Court denied on February 19, 2013. CBSI's current counsel joined the case during this period, and had a telephonic conference with Plaintiffs' counsel on April 4 to discuss the status of discovery. Kelly Decl. ¶ 11, Ex. F. CBSI explained that its document production would begin after (1) the Court entered a protective order, and (2) the parties reached agreement on electronic search terms. *Id.* ¶ 12. CBSI sent Plaintiffs a letter on April 19, 2013, setting forth its final positions on areas of disagreement relating to document production, including the timing of that production. *Id.* ¶ 12, Ex. H. CBSI had previously sent Plaintiffs a draft stipulated protective order in December 2012, to which Plaintiffs did not respond until April 2013. *Id.* The protective order was ultimately entered on May 23, 2013 (Dkt. No. 68). The parties never reached complete agreement regarding electronic search terms, but CBSI began collecting and reviewing documents using its final proposal in order to expedite document production in advance of the first scheduled deposition. Kelly Decl. ¶ 16, Ex. Q. CBSI has produced nearly 35,000 pages of documents to date, which includes internal emails and documents as well as articles and reviews. Kelly Decl. ¶ 16. At all times, CBSI has honored the parties' agreement to produce a deponent's documents no less than 7 days before the deposition. Plaintiffs, however, have not, as described in Paragraphs 34–36 of the Kelly Declaration.

Plaintiffs served interrogatories on CBSI on March 28, 2013. CBSI responded on April 29, 2013. The parties met and conferred about these responses, as well as CBSI's document production, on June 7, 2013. Kelly Decl. Ex. I. One

disagreement was over Plaintiffs' request for detailed information about CBSI's websites, such as the IP address of every visitor to certain pages or the revenue derived from advertising on those pages. *Id.* at 2. CBSI told Plaintiffs that it could not provide information about particular pages until Plaintiffs identified those pages, a position it has maintained consistently throughout the parties' negotiations. *Id.* Plaintiffs have never done so. On June 18, 2013, CBSI received a letter from Plaintiffs' counsel accusing it of discovery misconduct. Kelly Decl. ¶ 17, Ex. R. CBSI responded on June 27, 2013, denying these unfounded accusations and unsupported allegations. *Id.* ¶ 17, Ex. S. CBSI stated that it would not debate the facts in the guise of a discovery letter and invited Plaintiffs to seek Court assistance if they believed CBSI's responses were inadequate. *Id.* Plaintiffs did not respond.

Until July 31, 2013, Plaintiffs had not served any requests for admission on CBSI. Kelly Decl. ¶ 6.

In all the time between when they first met and conferred with CBSI's current counsel in April 2013 and the present, Plaintiffs have never filed a motion to compel. They first served CBSI with their portion of a joint stipulation on July 30, 2013, which under the schedule established in L.R. 37-2.2 cannot be heard within the discovery cutoff. Kelly Decl. ¶ 36. In contrast, CBSI timely filed three joint stipulations, one of which has already been heard and granted. Dkts. 65, 72, 79, 97.

### 2. CBSI Has Appropriately Responded to Plaintiffs' Requests for Depositions of Its Witnesses

At all times, CBSI has cooperated with Plaintiffs to schedule the depositions of its witnesses and has accommodated Plaintiffs' repeated requests to reschedule. Plaintiffs noticed the deposition of CBSI's first witness, Seth Rosenblatt, for June 4, 2013. Kelly Decl. ¶ 15. Mr. Rosenblatt was prepared and available to appear in San Francisco (where he works and resides), but on May 28, 2013, Plaintiffs requested to postpone his deposition. *Id.* ¶ 15, Ex. N. In cooperation with

Plaintiffs, CBSI rescheduled his deposition to July 2, with other employees' depositions—the three other employees mentioned in CBSI's initial disclosures—scheduled for July 3, 11, and 12. *Id.* Ex. O, ¶ 5. Late in the evening of July 1, Plaintiffs informed CBSI that they wanted to postpone those depositions, ostensibly because of medical issues involving Jaime Marquart. Kelly Decl. ¶¶ 22-24, Exs. Y-AA. Although Plaintiffs did not explain why their team of attorneys could not proceed with taking the depositions as scheduled, CBSI accommodated Plaintiffs' request, making Mr. Rosenblatt and another witness available on July 9 and 10. *Id.* This necessitated postponing the two depositions scheduled for July 11 and 12 (as CBSI's counsel had planned to prepare those witnesses on July 9 and 10), to which Plaintiffs agreed. *Id.* On July 12, Plaintiffs informed CBSI that they wanted to depose two additional employees whom no party had listed on its initial disclosures. *Id.* ¶ 25, Ex. BB. In light of the numerous depositions scheduled for late July and early August and the witnesses' availability, CBSI proposed scheduling the four remaining depositions of its employees on August 14, 15, 28, 29, and 30. *Id.* ¶ 26, Ex. CC. Plaintiffs accepted these dates without objection. *Id.* At present, the parties have scheduled all depositions of CBSI employees to occur before the Discovery Cut-off.

Plaintiffs have not been equally solicitous of CBSI. Their counsel waited until July 16, 2013, to confirm any individual Plaintiff's appearance at depositions scheduled to begin on July 22. Kelly Decl. ¶ 27. They waited until July 22 to inform CBSI that individual Plaintiffs who were noticed for depositions on July 23 would not appear. *Id.* ¶ 29. They waited until July 23 to confirm that other deponents scheduled for that week would similarly not appear. *Id.* ¶ 30. They requested that CBSI reschedule one Plaintiff's deposition to July 24, confirmed he would appear, and then notified CBSI the evening of July 23 that he would not. *Id.* ¶ 31. (The purported reason was another court matter, but CBSI offered to postpone his deposition if he would provide proof of his obligation to be in court

OPPOSITION TO PLAINTIFFS' *EX PARTE* REQUEST FOR EXTENSION OF DISCOVERY CUT-OFF        8        CASE NO. 2:11-CV-09437-DSF-JC

that day and if he would commit to another date for his deposition; Plaintiffs did not even respond to this request. *Id.*)  And during these depositions, Plaintiffs' counsel repeatedly broke the parties' longstanding agreement to produce a deponent's documents at least 7 days before his or her deposition, by producing documents late the night before—and even a day or two *after*—the relevant Plaintiff's deposition. *Id.* ¶ 34.  Plaintiffs even produced testifying Plaintiffs' verifications after their depositions that Plaintiffs had executed *before* their depositions—on one occasion handing a signed verification to CBSI's counsel and then taking it back when CBSI's counsel stated that she had not yet received the supplemental interrogatory response at issue. *Id.* ¶ 36.

### D. Plaintiffs' Well-Staffed Team of Attorneys[3]

Describing himself as Plaintiffs' lead counsel, Mr. Baker has actively participated throughout this case, including discovery and schedule setting. Mr. Baker signed Plaintiffs' Rule 26(f) Report and agreed to the August 30, 2013 Discovery Cut-off [Dkt. No. 35]. The Court's Standing Order[4] makes clear that "lead trial counsel shall attend any proceeding set by this Court, including all scheduling, pretrial, and settlement conferences" (¶ 2), and Mr. Baker was the sole partner appearing for Plaintiffs at the August 27, 2012 scheduling conference that confirmed the August 30, 2013 Discovery Cut-off.  Kelly Decl. ¶ 4.  He signed Plaintiffs' Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1). *Id.* He signed discovery requests and deposition notices on behalf of Plaintiffs. *Id.*

Moreover, Mr. Baker has oversight over a substantial team of other attorneys

---

[3] On July 30, 2013, Plaintiffs moved for leave to have Marquart Baker LLP withdraw as counsel for numerous Plaintiffs.  CBSI, which will respond on the normal briefing schedule, notes for now that Plaintiffs have not explained why such withdrawal would delay Plaintiffs' ability to complete the discovery they seek *from CBSI* before the Discovery Cut-Off.

[4] http://court.cacd.uscourts.gov/CACD/JudgeReq.nsf/2fb080863c88ab47882567c9007fa070/cd555de45894255a882579f5006b081f/$FILE/CV%20ORDER%20re%20INITIAL%20CASE%20STANDING%20ORDER%20%28rev.5-12%29%20.pdf

in his firm actively assisting with discovery. In addition to Mr. Baker, his partner Brian Klein and associates Kevin Boyle, Christian Anstett, and Ashley Martabano have taken or defended depositions or corresponded about discovery issues. *Id.* Indeed, Plaintiffs' well-staffed team had sufficient resources to file the present *ex parte* application and yet has continued to refuse to identify any specific discovery that they would be unable to obtain from CBSI before the Discovery Cut-off.

# ARGUMENT

## I. EX PARTE RELIEF IS EXTRAORDINARY AND RARELY GRANTED.

The Court's Standing Order (¶ 7.a.) makes clear that motion papers must be filed and served not later than 28 days before the next available Monday hearing date. The Court also makes clear that "[e]x parte applications are solely for extraordinary relief and are rarely justified." *Id.* ¶ 11 (citing *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).

Plaintiffs' choice to wait until the end of discovery to seek an extension is wholly unjustified, especially for an astonishing eight-week extra period that would disrupt other longstanding schedules such as the period for expert discovery.[5] Knowing that the Standing Order states that the Discovery Cut-off is a "strict" deadline for completion of discovery, CBSI relied on and planned for fact discovery ending on August 30, 2013. *Id.* ¶¶ 9–12, 15–16. CBSI had no reason to believe that the Court would entertain a discovery extension merely because the parties desired one. But Plaintiffs asked CBSI to stipulate to a discovery extension numerous times between early April and July 2013. Kelly Decl. ¶ 3. CBSI consistently declined to agree to the proposed stipulation, advising Plaintiffs of CBSI's view that the request was driven by Plaintiffs' own failure to comply with their discovery

---

[5] Initial Expert Witness disclosures are due October 11, 2013, with the expert discovery cut-off on December 30, 2013, only three months before the motion hearing cut-off. *See* Dkt. No. 39, at 1.

OPPOSITION TO PLAINTIFFS' *EX PARTE* REQUEST FOR EXTENSION OF DISCOVERY CUT-OFF    10    CASE NO. 2:11-CV-09437-DSF-JC

obligations. *Id.* ¶¶ 3, 17 & Ex. 5, 19. Thus, for four months now, Plaintiffs have known that if they wanted to extend the Discovery Cut-off, they would have to move for such an extension. Indeed, on June 18, 2013, Plaintiffs stated their intention to ask the Court for a discovery extension but inexplicably did not do so until July 30, six weeks later. *Id.* ¶ 17, Ex. R. Plaintiffs' *ex parte* application conveniently omits this fact.

On the morning of July 29, 2013, Plaintiffs' counsel surprised CBSI by stating—for the first time—that Plaintiffs intended to seek a discovery extension *ex parte*. Kelly Decl. ¶ 42. Plaintiffs refused to identify specific discovery they could not reasonably obtain before the Discovery Cut-off, instead merely suggesting that Plaintiffs might want to bring some motions to compel later (which would be untimely under the current scheduling order). *Id.* CBSI informed Plaintiffs' counsel that CBSI would oppose their unjustified *ex parte* application.[6] *Id.* Plaintiffs' self-imposed delay in seeking relief from the Court does not excuse its abuse of the *ex parte* process, and their application should be denied as untimely. *See Dugan v. County of Los Angeles*, 2013 U.S. Dist. LEXIS 34878, at *3 (C.D. Cal. Mar. 13, 2013) (denying schedule modification because movant's two-month delay in seeking relief was "a lack of diligence given this passage of time).

## II. PLAINTIFF HAS SHOWN NO GOOD CAUSE FOR EXTENDING THE DISCOVERY CUT-OFF.

A scheduling order shall be modified "only for good cause and with the judge's consent." Fed. R. Civ. Proc. 16(b)(4). As the Ninth Circuit has explained:

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."

---

[6] To the extent that Plaintiffs are really seeking an extension to give their clients extra time because they cannot or will not complete their own production and fulfill their discovery obligations, any extension would greatly prejudice CBSI, which has worked diligently to complete its production of documents and witnesses before August 30, 2013.

OPPOSITION TO PLAINTIFFS' *EX PARTE* REQUEST FOR EXTENSION OF DISCOVERY CUT-OFF

11

CASE NO. 2:11-CV-09437-DSF-JC

1   *Gestetner Corp.*, 108 F.R.D. at 141. The district court's decision to
2   honor the terms of its binding scheduling order does not simply exalt
3   procedural technicalities over the merits . . . . Disregard of the order
4   would undermine the court's ability to control its docket, disrupt the
5   agreed-upon course of the litigation, and reward the indolent and the
6   cavalier. Rule 16 was drafted to prevent this situation . . . .

7 *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). "Rule
8 16(b)'s 'good-cause' standard primarily considers the diligence of the party"
9 seeking the schedule modification (citing *Johnson.*, 975 F.2d at 609).
10 "Accordingly, the Court must withhold consent to modification of a scheduling
11 order where the parties fail to establish good cause for the modification." *Chapman*
12 *v. 7-Eleven, Inc.*, 2012 U.S. Dist. LEXIS 154903, at *4-5 (C.D. Cal. Oct. 29, 2012)
13 (citing Fed. R. Civ. P. 16(b)(4)).

14   The determinative question is whether the scheduling order could not
15   have been reasonably met despite the diligence of the party seeking the
16   extension. [] Although prejudice to the opposing party might supply
17   additional reasons to deny a motion, the focus of the inquiry is upon
18   the moving party's reasons for seeking modification. If that party was
19   not diligent, the inquiry should end.

20 *Id.* at *5 (quotation marks and citations omitted); *see also Zivkovic v. S. Cal. Edison*
21 *Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of motion to modify
22 schedule where plaintiff failed to "demonstrate diligence in complying with the
23 dates set by the district court" and waited four months to seek an extension). In
24 *Chapman*, the court denied the plaintiff's *ex parte* request for a continuance of
25 pretrial dates despite a recent substitution of counsel for the plaintiff, because the
26 plaintiff and his former counsel were not "diligent in complying with the Court's
27 Scheduling and Case Management Order. *Chapman*, 2012 U.S. Dist. LEXIS
28 154903, at *7 ("litigants are also charged with knowledge of their case file—

OPPOSITION TO PLAINTIFFS' *EX PARTE*               12          CASE NO. 2:11-CV-09437-DSF-JC
REQUEST FOR EXTENSION OF DISCOVERY
CUT-OFF

'including the case management dates set by the court.'")

### A. The Remaining Tasks to Complete Discovery Do Not Justify an Extension.

Here, as in *Zivkovic*, Plaintiffs' recalcitrance in conducting and providing discovery combined with their delay in seeking relief prevent them from demonstrating good cause for the relief they seek. *See Zivkovic*, 302 F.3d at 1087. As noted above, Plaintiffs also waited *four* months to seek an extension after CBSI made it clear that it planned to adhere to the existing Scheduling Order. Kelly Decl. ¶ 3.

Aside from their inexcusable delay, Plaintiffs have stated no substantive justification other than a concern that they might want to file a (currently untimely) discovery motion or conduct "additional depositions" or "follow-up discovery." *See* Declaration of Christian Anstett ¶ 13. But Plaintiffs could have noticed additional depositions or propounded "follow-up" discovery at a far earlier date. Plaintiffs' desire to conduct a flurry of last-minute discovery—including propounding additional interrogatories and requests for admission this very afternoon (Kelly Decl. ¶ 6)—reveals that their present *ex parte* request for relief arises merely from a panic that they did not conduct discovery when they should have. There is no reason why Plaintiffs could not have propounded today's written discovery requests weeks or months ago. In addition, notwithstanding their speculation that they might want to bring a discovery motion over unidentified issues, Plaintiffs wholly fail to explain why—if they truly had any legitimate concern about CBSI's production in discovery—they failed to seek that relief in a timely manner. In light of this failure to show good cause, "the Court must withhold consent to modification of a scheduling order." *See Chapman*, 2012 U.S. Dist. LEXIS 154903, at *4-5.

OPPOSITION TO PLAINTIFFS' *EX PARTE* REQUEST FOR EXTENSION OF DISCOVERY CUT-OFF

13

CASE NO. 2:11-CV-09437-DSF-JC

B. **A Shift in Workload from One Partner to Another Does Not Merit an Extension.**

It is unclear how Plaintiffs' counsel defines "minimal," but Mr. Baker's involvement appears to be much more than that. *See* Kelly Decl. ¶ 4. To the contrary, he has been involved in everything from choosing the date of the Discovery Cut-off to serving Rule 26(a)(1) disclosures and propounding written discovery and deposition notices. *Id.* While close of discovery can be a busy time, that inconvenience to attorneys cannot justify a belated request for an extension of time. *See Chapman*, 2012 U.S. Dist. LEXIS 154903, at *7 (denying extension despite plaintiff's change from one attorney to another attorney within the same firm). Plaintiffs may now regret their cavalier and last-minute treatment of their discovery tasks, but Plaintiffs' counsel was aware of the peril of that approach and cannot now claim that the Discovery Cut-off they agreed to is unfair. *See Johnson*, 975 F.2d at 610.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' *Ex Parte* Application to Extend the Discovery Cut-off Date and order the parties to continue to abide by the existing scheduling order that has long been in effect.

Dated: July _31, 2013          FENWICK & WEST LLP


By: _____*/s/ Jennifer L. Kelly*_____
          Jennifer L. Kelly

Attorneys for Defendant
CBS INTERACTIVE INC.