LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
ERIN SIMON (CSB No. 268929)
esimon@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant
CBS INTERACTIVE INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SUGAR HILL MUSIC, *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br>CBS INTERACTIVE INC.,<br><br>              Defendant. | Case No. 2:11-cv-09437-DSF-JC<br><br>**DEFENDANT CBS INTERACTIVE INC.'S SUPPLEMENTAL MEMORANDUM RE PLAINTIFFS' PROPOSED MOTION TO COMPEL**<br><br>Hearing:      n/a<br>Time:         n/a<br>Courtroom:  20<br>Judge:        Hon. Jacqueline Chooljian |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Pursuant to the Court's instruction on September 16, 2013 and L.R. 37-2.3, Defendant CBSI submits this supplemental memorandum regarding Plaintiffs' proposed Motion to Compel Further Responses to Interrogatories and Requests for Production (Dkts. 126, 127).  Nearly every topic raised in that Motion was moot as of or shortly after its filing, and Plaintiffs' few remaining issues are illusory.  The time is long past for this to end, and Plaintiffs' untimely proposed motion, to the extent it is considered at all, should be denied in full.

## I.    MOOTED ISSUES

The following requests are moot:  RFP Nos. 7-10, 12-37; Rog Nos. 2-5, 7, 9, 15-18; documents and information dating back to 2001; and production of a privilege log.  CBSI supplemented its interrogatory responses on August 7, 2013.  A copy of those responses is Exhibit JJ to the Simon Declaration in Opposition to the Joint Stipulation on Plaintiffs' proposed Motion to Compel (Dkt. 126-6).

As explained in the joint stipulation (Dkt. 126), CBSI's September 6 status report (Dkt. 163, 168) and supplement thereto (Dkt. 176), the following issues[1] are now moot:

1. Hosting of P2P software (p. 31, RFP Nos. 7-10, 21; Rog. Nos. 2, 4, 7);

2. Requests relating to CBSI's relationships with or advertising for P2P software publishers (p. 44, RFP Nos. 12-17, 21, 31-34, 36, 37);

3. Inducement evidence (p. 55, RFP Nos. 18-20, 22-25, 35; Rog. No. 8);

4. CBSI's awareness of P2P software's uses (p. 67, RFP Nos. 26-29);

5. Advertisement of P2P software on CBSI's websites (p. 71, Rog. No. 3);

6. Revenues from P2P software (p. 76, RFP No. 30; Rog. Nos. 5, 6, 9);

7. CBSI's efforts to discourage infringement (p. 93, Rog. Nos. 15, 16);

8. Evidence that CBSI stopped using certain software (p. 98, Rog. No. 17); and

---

[1] In their portions of the joint stipulation, Plaintiffs group the information they seek into different categories in the introduction and factual background sections than in the argument.  CBSI adopts the categorization in the argument section.

9. Distribution agreements (p. 100, Rog. No. 18).

## II.  PLAINTIFFS' REMAINING REQUESTS SHOULD BE DENIED

CBSI fully addressed most of the non-moot issues in its portions of the joint stipulation, status report, and supplement thereto:  (1) production of documents from every website CBSI controls, such as CBSNews.com; (2) an unspecified number of additional depositions; and (3) more time with Seth Rosenblatt.  Three issues, however, may warrant further elaboration.

### A.  Electronic Search Terms

CBSI negotiated search terms with Plaintiffs at length, and made several significant compromises in a good-faith effort to reach agreement.  Plaintiffs proposed an initial set of terms which CBSI viewed as vastly overbroad, and so responded with a counterproposal.  Simon Decl. Ex. 1.  Plaintiffs responded by suggesting several broadening modifications.  *Id.* Ex. 3.  CBSI accepted most of them, including the terms 'pira*,' 'theft,' 'steal*,' 'market*,' and 'advert*,' and agreed to expand the proximity limitation from 25 words to 50 words.  *Id.*  Ex. 4.  But it explained that 'MP3,' 'movies,' 'films,' and 'episodes' were not likely to lead to responsive documents, and thus, should not be included.  *Id.*

CBSI first informed Plaintiffs that it would not use 'MP3' as a search term on April 19, 2013.  *Id.* Ex. 2 p. 11.  Plaintiffs first stated that they would move to compel on this issue on May 10, 2013, an intention they repeated three days later.  *Id.* Ex. 5 p. 18; Ex. 6.  Plaintiffs also insisted that CBSI proceed with document collection and review using the terms on which the parties had reached agreement (*Id.*), then waited to bring any motion at all until CBSI's collection and review was nearly complete and noticed it for hearing after discovery had closed.  Plaintiffs' delay in bringing this matter before the Court, while simultaneously insisting CBSI proceed with production and depositions, ensures that any order requiring CBSI to add 'MP3' as a search term now will be far more burdensome than if Plaintiffs had brought their motion in May: CBSI would now have to re-do much of the work of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

searching its repositories and processing, reviewing, and producing documents.

That burden is wholly unjustified by the limited value of adding the term 'MP3.'  In the course of reviewing and producing documents on which the agreed-upon search terms hit, CBSI produced 3,004 documents containing the term MP3 within 50 words of the relevance filter[2] it used.  *Id.* ¶ 8.  CBSI reviewed another 10,883 documents containing 'MP3' within 50 words of the relevance filter which it determined were not relevant or responsive to Plaintiffs' requests.  *Id.*  This experience shows that the term MP3 is more than three times as likely to appear in an irrelevant document than a relevant one—and that was for documents that also contain concededly relevant search terms.  The odds of a document containing the term 'MP3' being relevant will be even lower for documents that contain *only* 'MP3' and any of the agreed-upon search terms.  'MP3' is a file format for digital audio files and the *de facto* standard for most authorized electronic music sales and digital music players, which are often called MP3 players.  CBSI reviews a wide variety of (indisputably legal) MP3 players (*Id.* Ex. 7) and has an entire category of MP3 & Audio Software on Download.com (*Id.* Ex. 8).  Every page in that category contains the word 'MP3' in the navigation bar at the top of the page.  *See, e.g.*, *id.* Ex. 9 (an example of one irrelevant page in the MP3 & Audio Software category).  Such documents are completely outside the scope of this case unless they have something to do with P2P, file-sharing, or the name of a particular P2P software—in which case *CBSI's search terms already captured them*, because CBSI's search terms include 'P2P,' 'file-sharing,' and the names of many types of P2P software.

The lack of relevance of the terms 'movie,' 'episodes,' and 'show' for a case about music copyrights should be self-evident.  Plaintiffs have offered no

---

[2] That is, MP3 within 50 words of (infring* OR illeg* OR unauthoriz* OR authoriz* OR legal* OR noninfring* OR licens* OR unlicens* OR copyright* OR pira* OR theft OR steal* or advert* or market*).  The asterisks indicate to the computer that it should search for all words beginning with the given string.  Plaintiffs agreed to the use of this proximity filter.

justification for including them.

### B.    IP Addresses

One remaining issue, data regarding IP addresses for viewership of CBSI content (p. 86, Rog. Nos. 10-12), was also moot by the close of discovery. Nonetheless, for the first time on September 11, 2013, Plaintiffs requested even more granular information—IP addresses on a daily basis for clicks on P2P software download links.  Simon Decl. ¶¶ 12-13.  CBSI has now provided that more granular information.  *Id.*¶ 14, Ex. 11.

In their September 12 Response (Dkt. 180) to CBSI's supplement to its status report (the "Response"), Plaintiffs included another request—asking for IP addresses relating to various unidentified news articles and editorial content in addition to the ones CBSI provided.  As CBSI explained to Plaintiffs in its initial interrogatory responses (April 29, 2013), the parties' June 7, 2013 meet and confer, and many times since, it could not provide IP addresses of visitors unless and until Plaintiffs identified the webpages for which they want this information.  *See* Dkt. 126-4 at 22-23; Dkt. 126-6 at ¶ 26(a).  Plaintiffs never did.  Indeed, between CBSI's August 19 production of IP addresses and Plaintiffs' September 12 Response, Plaintiffs never raised any issue about other CBSI webpages for which they wanted this data.  CBSI thus believed it had reached a compromise—and a reasonable one—by producing IP addresses related to clicks on download links for P2P software and for visitors to the download.com catalog pages for P2P software.

Plaintiffs now generally say they want "all page views of every P2P related article," without identifying each of those articles in a way that would permit CBSI to locate them or their visitors.  Such a vague request, months after CBSI asked Plaintiffs to identify *specific pages* of interest, and weeks after CBSI undertook to collect and produce IP addresses, should be rejected.  Indeed, Plaintiffs have made no effort to justify their untimely request or explain why they need such data.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### C.   Videos and Podcasts

At the September 10, 2013 status conference, Plaintiffs explained that the reason they want CBSI to produce copies of its publicly-available videos and podcasts is to provide Plaintiffs with higher-quality copies than they can download from CBSI's websites.  In its supplemental statement, CBSI stated that it was amenable to producing such higher-quality copies, provided it possessed them, ***for any videos and podcasts Plaintiffs identified***.  Dkt. 176 at 14.  CBSI explained that it could not search the audio contents of videos and podcasts for key words the same way it can for email and other electronic documents.  *Id.*

In the face of CBSI's offer, Plaintiffs backtracked from the justification they provided the Court.  They have not identified any video or podcast for which they need a higher-quality copy; nor have they provided any explanation why CBSI's proposed compromise is not sufficient, other than to reject it out of hand.  Instead, their Response simply states that they were capable of searching CNET for these materials, so CBSI ought to be as well.  Dkt. 180 at 13.

This completely dodges the issue CBSI raised:  because CBSI does not have automated means of searching the *content* of videos and podcasts, any search for P2P content would be both burdensome and incomplete.[3]  If Plaintiffs do not wish to take CBSI up on its offer, made in good faith in response to their proffered justification, that is their choice.  But they should not be heard to complain at this late stage.  There is no reason to order CBSI to do what Plaintiffs themselves have already done, and no reason to order CBSI to locate and produce videos that Plaintiffs themselves apparently have located but refused to identify.

---

[3] Contrary to Plaintiffs' suggestion, CBSI never said the search box on its website does not search its website.  *See* Dkt. 180 at 13.  Instead, CBSI has said it has no capacity to perform an *automated* search of its website to ensure that every page containing a key term would be located.  *E.g.*, Dkt. 126 at 23.  As CBSI explained, its searches have to be performed by a person typing into a search box or clicking on links—exactly what Plaintiffs say they have done and can do.  *Id.*

Fenwick & West LLP
Attorneys at Law
San Francisco

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  September 20, 2013          FENWICK & WEST LLP


By:  _____ */s/ Jennifer Kelly* _____
           Jennifer Kelly

Attorneys for Defendant
CBS INTERACTIVE INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO