LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
ERIN SIMON (CSB No. 268929)
esimon@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendant
CBS INTERACTIVE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUGAR HILL MUSIC, *et al.*, | Case No. 2:11-cv-09437-DSF-JC |
| Plaintiffs, | |
| v. | **DEFENDANT CBS INTERACTIVE INC.'S SECOND SUPPLEMENT TO STATUS REPORT FOLLOWING CLOSE OF DISCOVERY** |
| CBS INTERACTIVE INC., | |
| Defendant. | ▮▮▮▮▮▮▮▮ |
| | Hearing:     None set |
| | Time:         None set |
| | Courtroom:  20 |
| | Judge: Hon. Jacqueline Chooljian |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | ...................................................................................... | 1 |
| II. | KEY DEVELOPMENTS SINCE THE CLOSE OF DISCOVERY | .............. | 1 |
| | A. | Only 13 of the 57 Plaintiffs Produced Any Documents | ...................... 1 |
| | B. | Plaintiffs Did Not Produce or Even Identify During Discovery the Data They Plan To Offer To Prove Direct Infringement | .................................................................................. 2 |
| | C. | Baker Marquart's Withdrawal From Representing 16 Plaintiffs | .................................................................................. 3 |
| | D. | Twelve Plaintiffs Have Now Been Dismissed, With Prejudice | .................................................................................. 4 |
| | E. | ██████ence Produced ██████████████ 13 Days After t██████ | ........................... 4 |
| | F. | Production of Additional Spence Documents | ...................................... 6 |
| | G. | Judge Fischer Determined that Gerald Spence Remains a Plaintiff | .................................................................................. 7 |
| III. | FOR THEIR VIOLATIONS OF MULTIPLE COURT ORDERS, AND TO AVOID FURTHER PREJUDICE TO CBSI, THE GROUP A PLAINTIFFS SHOULD BE DISMISSED | ............................. | 7 |
| IV. | THE COURT SHOULD IMPOSE THE FOLLOWING SANCTIONS ON ALL PLAINTIFFS WHO ARE NOT DISMISSED | ............... | 8 |
| | A. | Exclude All Documentary Evidence Not Produced Prior to the Close of Discovery. | ........................................................... 8 |
| | B. | Re-Depositions of Plaintiffs Who Produced Evidence After Their Depositions, In Person, at Plaintiffs' Expense. | ........................... 9 |
| | C. | Evidentiary Sanctions For Repeated Failures To Respond to Written Discovery As Ordered | ............................................... 11 |
| | | 1. | Interrogatories Nos. 1-4 | .................................................. 11 |
| | | 2. | Interrogatories Nos. 6-13 | ................................................ 13 |
| | | 3. | Requests for Admission | ................................................... 14 |
| | D. | Attorneys' Fees | ..................................................................... 14 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fenwick & West LLP
Attorneys at Law
San Francisco

V.    SPENCE SHOULD BE ORDERED TO PRODUCE
      DOCUMENTS HE HAS WRONGFULLY WITHHELD AND SIT
      FOR RE-DEPOSITION ...................................................................... 14

      A.    Production of Documents Wrongfully Withheld ................................ 14

      B.    Privilege Issues ......................................................................... 15

      C.    Further Deposition of Spence ........................................................ 16

VI.   ALKI DAVID COMMUNICATIONS WITH PLAINTIFFS'
      COUNSEL ....................................................................................... 17

VII.  CONCLUSION ............................................................................... 20

Fenwick & West LLP
Attorneys at Law
San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amersham Pharmacia Biotech, Inc. v. The Perkin-Elmer Corp.,*
190 F.R.D. 644 (N.D. Cal. 2000) .......................................................... 8

*Cressler v. Neuenschwander,*
170 F.R.D. 20 (D. Kan. 1996) ............................................................ 10

*David v. Hooker, Ltd.,*
560 F.2d 412 (9th Cir. 1977) ...................................................... 14, 20

*Falstaff Brewing Corp. v. Miller Brewing Co.,*
702 F.2d 770 (9th Cir. 1983) ............................................................. 14

*Harris v. New Jersey,*
259 F.R.D. 89 (D.N.J. 2007) .............................................................. 11

*Hoffman v. Constr. Protective Servs., Inc.,*
541 F.3d 1175 (9th Cir. 2008) ............................................................. 9

*Jahr v. IU Intern. Corp.,*
109 F.R.D. 429 (M.D.N.C. 1986) ...................................................... 10

*Miller v. Federal Express Corp.,*
186 F.R.D. 376 (W.D. Tenn. 1999) .................................................... 11

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.,*
Case No. CV 05-2200 MMM, 2008 U.S. Dist. LEXIS 71761
(C.D. Cal. March 17, 2008) ................................................................. 9

*Raiford v. Pounds,*
640 F.2d 944 (9th Cir. 1981) (per curiam) .......................................... 8

*Rehau, Inc. v. Colortech,*
145 F.R.D. 444 (W.D. Mich. 1993) ................................................... 10

*United States v. $160,066.98 from Bank of Am.,*
202 F.R.D. 624 (S.D. Cal. 2001) ....................................................... 10

*United States v. Sumitomo Marine & Fire Ins. Co., Ltd.,*
617 F.2d 1365 (9th Cir. 1980) ........................................................... 11

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Yeti By Molly, Ltd. v. Deckers Outdoor*,
  259 F.3d 1101 (9th Cir. 2001) ............................................................... 9

*Zendel v. ABC Video Prods.*,
  CV 10-2889- VBF EX, 2011 WL 3625399 (C.D. Cal. July 25, 2011) ............... 8

*Zhang v. Am. Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ............................................................... 9

**RULES**

Fed. R. Civ. P. 26 ............................................................................... 9

Fed. R. Civ. P. 26(a) .......................................................................... 9

Fed. R. Civ. P. 33(d) ......................................................................... 13

Fed. R. Civ. P. 36(a)(3) ..................................................................... 14

Fed. R. Civ. P. 37(b) .................................................................. 11, 14

Fed. R. Civ. P. 37(c)(1) ..................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.      INTRODUCTION

This report will first identify significant developments since the close of discovery, then summarize the relief CBSI requests for Plaintiffs' non-compliance with their discovery obligations, and, finally, respond to Plaintiffs "Response" to Defendant's Supplemental Status Conference Statement regarding Alki David.

To put it simply, it was Plaintiffs (through Gerald Spence and Alki David) who orchestrated one action combining 57 Plaintiffs and over 500 songs—each of which could comprise a substantial lawsuit on its own, with its own set of issues. As to each song, each Plaintiff bears the burden to prove ownership, direct infringement, inducement, and damages, and to identify during the discovery period exactly what facts substantiate each element.  The proliferation of the facts Plaintiffs must marshal is a problem Plaintiffs have created.  It is one which Judge Fischer warned Plaintiffs' counsel about at the outset.  Yet Plaintiffs' refusal (or inability) to provide the facts, even after two orders by the Court—especially when combined with the shrouding of the facts under unsupported claims of privilege— makes it impossible for CBSI adequately to defend itself.

The appropriate remedy at this stage is dismissal of the 43 Plaintiffs who have not produced a single document and/or appeared at their own depositions; evidentiary sanctions precluding introduction by the remaining ten Plaintiffs of evidence not timely provided[1]; compelled production of information withheld on unjustified privilege claims; and supplemental depositions, at Plaintiffs' expense, for those about whom information was provided only after their initial depositions.

## II.     KEY DEVELOPMENTS SINCE THE CLOSE OF DISCOVERY

There are six key developments CBSI wishes to put into the record:

### A.      Only 13 of the 57 Plaintiffs Produced Any Documents

On September 5, 2013, Plaintiffs finally provided CBSI with custodial information for their collective document production, which was made throughout

---

[1] Twelve Plaintiffs recently were dismissed pursuant to stipulation.  Dkt No. 188.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

discovery without any indication of which Plaintiff produced what.  Decl. of Jennifer L. Kelly ("Kelly Decl."), ¶ 2, Ex. A.  This confirmed that only 13 Plaintiffs actually collected and produced documents.  *Id.*  The remainder of the production consists of documents generated by Gerald Spence or Baker Marquart for this case, primarily printouts from the Copyright Office, CBSI's websites, and third party websites.  *Id.* at Ex. B.

Thus, that leaves ***43 Plaintiffs who have not produced a single document in this case***.  This group of Plaintiffs—which includes each of the 11 Plaintiffs who failed to appear for their noticed depositions (Dkt. No. 163 at 2; Simon Decl. [Dkt. 163-1] ¶ 9)—is listed in paragraph 20 of the Kelly Declaration and the chart attached as Exhibit Q, and will be referred to herein as "**Group A**."

**B.     Plaintiffs Did Not Produce or Even Identify During Discovery the Data They Plan To Offer To Prove Direct Infringement**

At the September 10, 2013 status conference, Plaintiffs' counsel represented that there is historical data on which Plaintiffs intend to rely to prove instances of direct infringement.  (Dkt. No. 193 at 11-12; 20-22).  They further conceded this data has never been produced or identified in discovery.  *Id.*  Their justification is that the data is stored in "proprietary" databases operated by unidentified persons who Plaintiffs may retain as experts to opine about whether such data, when compared to IP addresses produced by CBSI, reveals direct infringement from such IP addresses.  *Id.*

To be clear, CBSI's issue here is the identification and production of the percipient data itself, not any expert testimony about what that data purports to show.  If Plaintiffs intend to rely on such data, it should have been (a) identified in Plaintiffs' initial disclosures; (b) provided in response to the Court's June 11 Order, which directed them to identify and produce all evidence of direct infringement by June 25, 2013; and (c) produced in response the Court's August 13 Order, which again directed its production, this time by August 30, 2013.  Dkt Nos. 72 & 133.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    To be sure, Plaintiffs have expressed their intention to obtain evidence of
2  direct infringement from third parties from the outset of discovery: in their
3  December 10, 2012 interrogatory responses (Kelly Decl. Ex. C at 6); an April 23
4  meet and confer letter (Kelly Decl. Ex. D); and in briefing to this Court (Dkt. Nos.
5  65 at 12, 21; 70 at 3; 79 at 141).  But never, until the supplemental responses to
6  CBSI's First Set of Interrogatories delivered on September 4, 2013, did Plaintiffs
7  ever object to producing this data on the basis that it is the subject of expert
8  testimony.  Kelly Decl. ¶ 10.  Indeed, Plaintiffs' numerous prior discovery
9  responses contained no such objection.  *See, e.g.*, Kelly Decl. Exs. C & E.

10   Getting the pieces of data Plaintiffs choose to produce midway into the
11 expert discovery period would be incredibly prejudicial to CBSI.  The schedule
12 allows less than five weeks between initial and rebuttal reports, not nearly enough
13 time for CBSI to review and digest what Plaintiffs give and move to compel
14 additional information CBSI may need, much less to write a rebuttal report
15 addressing what the data is and what it purports to show.

16   **C.    Baker Marquart's Withdrawal From Representing 16 Plaintiffs**
17   On August 30, 2013, Judge Fischer conditionally granted Baker Marquart's
18 amended motion to withdraw (Dkt. 129) from representation of 16 of the Plaintiffs
19 (Dkt. 149).  The basis for Baker Marquart's motion was that there had been a
20 "breakdown in communications" with these Plaintiffs, which had led their "fail[ure]
21 to meet any deadlines set by counsel and the Court."  Dkt. 129 at 2.

22   While Judge Fischer did allow withdrawal, her Order expressly left any
23 remedy for these Plaintiffs' failure to comply with discovery obligations in the
24 hands of this Court.  *See* Dkt. 149 at 4.  Judge Fischer also expressed concern that
25 Baker Marquart did not have mailing addresses for two of the Plaintiffs.  Dkt. 149
26 at 3.  This concern, shared by CBSI, was not alleviated by Baker Marquart's
27 subsequent filing of a declaration admitting it did not have contact information for
28 *any* of these 16 Plaintiffs, and had to employ a private investigator to find their

Fenwick & West LLP
Attorneys at Law
San Francisco

addresses and phone numbers, most of which remain unverified.  Dkt. No. 161 at 4.
As a result, CBSI does not know whether it has any way to contact them, much less
how to obtain their compliance when their own counsel could not.

### D.    Twelve Plaintiffs Have Now Been Dismissed, With Prejudice

On September 18, 2013, Judge Fischer granted the parties' stipulation to
dismiss, with prejudice, the claims of 12 Plaintiffs. Dkt. No. 188.  This group of
Plaintiffs is listed in paragraph 20 of the Kelly Declaration and the chart attached as
Exhibit Q, and will be referred to herein as "**Group B**."

### E.    Gerald Spence Produced ████████████████
         13 Days After the Close of Discovery

An hour after CBSI filed its September 12 supplemental report, Plaintiffs'
counsel produced ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████  Kelly Decl. ¶ 11 and Exs. G-K.  These ████████
████████████████████  were within the scope of CBSI's document
requests to Plaintiffs,[2] the subpoena to Mr. Spence,[3] and the materials the Court had
ordered to be produced by June 25.  However, they had never even been identified
on privilege logs.[4]

_____

[2] _E.g._, Request No. 39, for "All COMMMUNICATIONS and DOCUMENTS
RELATED TO COMMUNCIATIONS with any PERSON RELATED to the claims
in this action . . . ." (Dkt. 65 at 49) on which the Court Ordered production to occur
by June 25.  Dkt. 72.

[3] _E.g._, Request Nos. 5 ("All documents and communications referring or relating to
This Action, including without limitation communications with the Plaintiffs") and
6 ("Documents sufficient to identify any Plaintiffs for whom you act or have acted
as . . . agent [or] representative . . . and documents sufficient to show your duties,
responsibility and authority in such capacity").  Dkt. 97 at 21.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    At Mr. Spence's first deposition, he testified at length that he did not have or

2  enter into written agreements with Plaintiffs.  With respect to Douglas Davis and

3  others he acknowledged he has served as publishing administrator for, he testified:

4       "Q:  Did you have – and you had no written agreement with any of those

5       persons, Correct?

6       A: No, basically oral agreements."

7  Ex. N at 102:14-16; *see also id.* at 161:3-15.  ███████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████

10    Only at the second day of his deposition did Mr. Spence admit that he had

11  entered written agreements to act as agent for "some" Plaintiffs.  *Id.* at 293:13-

12  294:16.  But Spence still was unable to identify with whom or how many

13  agreements he had entered.  *Id.*  In fact, Spence falsely testified that he had *not*

14  entered a written agreement with Plaintiffs Douglas Davis and Dayquan Davis (*id.*),

15  when such agreements were produced two weeks later. *Id.* Exs. G, H.  Spence also

16  now testified that, rather than ████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████  Again, the documents produced proved this testimony

19  partially false: ███████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████  Kelly Dec. Exs. G-K.  Spence also testified at

23  deposition that these agency agreements had been turned over to counsel.  *Id.* Ex. N

24  at 295:24-25.  Nonetheless, ignoring CBSI's follow up requests to produce these

25  (and other) documents after Spence's deposition (Simon Decl. [Dkt. 163-1] Ex. 21;

26

27  ████████████████████████████████████████████████

28  ████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Dkt 163 at 5-6), Plaintiffs failed to produce any of the agency agreements until after
2   the September 12 Supplemental Report. As described below, this belated
3   production requires an opportunity to inquire from Spence and Plaintiffs about
4   these records.

5         **F.**    **Production of Additional Spence Documents**

14       When, on September 16, CBSI requested immediate production of ▮
15   ▮ Plaintiffs advised on September 19 that
16   they had obtained ▮ but refused to produce it, purportedly because it was
17   not responsive to any document request in the case.  Kelly Decl. Ex. M.  Plaintiffs'
18   position is baseless, as CBSI explained in detail in Exhibit M to the Kelly
19   Declaration. ▮

23   ▮. It is
24   squarely within the scope of Request 58 (for "COMMUNICATIONS with
25   Alkiviades David relating to this action") as well as other requests.  *See id.*
26   Plaintiffs have cagily stated that ▮ does not involve "strategy," "issues"
27   or "claims or defenses" "in the lawsuit," but they have not denied that the message

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   is related to the lawsuit.[5]  *Id.*



4   Finally, even if there
5   were anything particularly sensitive about ▮▮▮▮▮▮, (and Plaintiffs have not
6   asserted any privacy or other confidentiality interest), Plaintiffs have shown no
7   reason why production under the protective order would not suffice.

**G.    Judge Fischer Determined that Gerald Spence Remains a Plaintiff**

9   On September 19, 2013, Judge Fischer issued an order denying Plaintiffs'
10   motion to amend the caption to remove Mr. Spence (Dkt. 190), finding that it was
11   "not clear" that Mr. Spence ever dropped his claims, particularly since "Plaintiffs'
12   counsel has been filing documents and litigating on behalf of Mr. Spence, as if he
13   were a plaintiff, until August 2013."  *Id.* at 1.  Mr. Spence thus remains a Plaintiff
14   in this case, subject to the same discovery obligations as all the others.

**III.   FOR THEIR VIOLATIONS OF MULTIPLE COURT ORDERS, AND TO AVOID FURTHER PREJUDICE TO CBSI, THE GROUP A PLAINTIFFS SHOULD BE DISMISSED.**

17   When CBSI first requested dismissal sanctions as part of its Motion to
18   Compel Compliance in July, Plaintiffs opposed on these grounds: (1) they had
19   violated only "a single" order of the Court; (2) they were "put[ting] forth their best
20   efforts to comply with the Court's order" and their failure to do so was at most
21   "*de* minimus (sic)" and an "unfortunate minor delay;" and (3) CBSI had suffered no
22   actual prejudice because discovery was ongoing.  (Dkt. 79 at 5-6, 136.)  To the
23   extent those arguments had any merit before, they certainly do not now.

24   CBSI's discussion of the law governing the propriety of the sanctions it seeks
25   is set forth in prior briefing and will not be repeated.[6]  (Dkt. 79 at 119-122.)

---

[5] Just the day before, CBSI had informed Plaintiffs's counsel ▮▮▮▮▮▮ file
mpliance and for sanctions (Dkt. 78), ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮  Kelly Decl. ¶ 13.

[6] In retrospect, Plaintiffs' own account of the case law granting terminating
sanctions (Dkt. 79 at 136-7) reads as a self-description:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

However, subsequent developments have only shown why dismissal is appropriate:

> (1)     Plaintiffs have now violated two orders of the Court, the June 11 and the August 13 orders;

> (2)     Plaintiffs made false representations to the Court about their efforts to comply.  Despite the passage of months, the Group A Plaintiffs elected not to search for or produce documents and/or attend their depositions; indeed, these Plaintiffs have shown *zero* interest in participating in this case; and

> (3)     Fact discovery is now closed and expert discovery deadlines are approaching.

The prejudice to CBSI resulting from the discovery cutoff is clear, and distinguishes the current case from cases in which lesser sanctions were ordered. *See, e.g.*, *Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981) (per curiam) (less drastic sanctions should be considered when "a case is still young"); *Amersham Pharmacia Biotech, Inc. v. The Perkin-Elmer Corp.,* 190 F.R.D. 644, 649 (N.D. Cal. 2000) (no fact discovery cutoff set).  CBSI has been unable to obtain evidence to support its defenses from these Plaintiffs, and has not been able to examine or test the evidence Plaintiffs would offer in support of their claims.  For these reasons, all the Group A Plaintiffs, who produced no documents and/or failed to appear for depositions, should be dismissed with prejudice.

## IV.     THE COURT SHOULD IMPOSE THE FOLLOWING SANCTIONS ON ALL PLAINTIFFS WHO ARE NOT DISMISSED

### A.     Exclude All Documentary Evidence Not Produced Prior to the Close of Discovery.

"If a party fails to provide information or identify a witness as required by

---

- "[*Adriana*] concerned a party that was <u>twice</u> ordered to produce documents, failed to appear for three depositions and made numerous misrepresentations about the depositions."
- "In that case [*In re PPA Products Liab. Litig.*], plaintiffs failed to provide requested information after the Court provided 'second and third chances'…"
- "The plaintiff in *Zendel* []violated multiple court orders…."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Ninth Circuit and this Court consistently have held that litigants may not offer surprise testimony or documentary evidence to support their positions that they did not previously disclose during the discovery period. *See, e.g.*, *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (affirming preclusion sanctions against many plaintiffs who had not *each* provided individualized information regarding damages); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (no abuse of discretion in excluding document not produced in discovery); *Yeti By Molly, Ltd. v. Deckers Outdoor*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (stating that "Rule 37(c)(1) gives teeth to [the requirements of Rule 26] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed," and imposing preclusion sanctions for failure to disclose before discovery deadline); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, Case No. CV 05-2200 MMM (MCx), 2008 U.S. Dist. LEXIS 71761, at *29-31 (C.D. Cal. March 17, 2008) (excluding screenshots purportedly showing direct infringement that were not produced during discovery).

CBSI previously requested exclusion of documentary evidence not produced prior to the June 25, 2013 deadline ordered by the Court. To the extent the re-depositions that are requested in Section IV.B are permitted, CBSI modifies its request to seek only exclusion of all materials not produced prior to September 18, 2013 (the most recent of Plaintiffs' productions).

**B.      Re-Depositions of Plaintiffs Who Produced Evidence After Their Depositions, In Person, at Plaintiffs' Expense.**

CBSI submits that re-depositions of certain Plaintiffs who remain in the case should be ordered to appear for deposition again, in person, at their expense. This would include the 9 Plaintiffs CBSI identified in its September 12 statement who

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   produced documents after their depositions (Dkt. 176 at 11), the 3 Plaintiffs who

2   produced documents during the last week of discovery or after the August 30 cutoff

3   (Dkt. 176 at 12), and all Plaintiffs for whom Spence produced agreements on

4   September 13 (the Group C Plaintiffs).  In light of the stipulated dismissal of the

5   Group B Plaintiffs, if the Group A Plaintiffs are dismissed as requested here, that

6   would leave 10 Plaintiffs who would be subject to re-deposition:  Derrick Braxton,

7   Oscar Brown, Luther Campbell, Soloman Conner, Attrell Cordes, Douglas Davis,

8   Darryl Gibson, Oran Jones, Quame Riley, William Tennyson Estate ("**Group D**").

9       In their supplemental statement, Plaintiffs agree that depositions of the

10  Plaintiffs who produced documents after their depositions should occur.  (Dkt. 180

11  at 10.)  However, they seek to force CBSI to take them by telephone.[7]  *Id.*  That is

12  not appropriate.  None of Plaintiffs' cited cases order a telephonic or

13  videoconference deposition unless (1) the party seeking to ***take*** the deposition ***does***

14  ***not want*** to proceed in person, or (2) the witness is located overseas. *United States*

15  *v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 625 (S.D. Cal. 2001)

16  (defendants had to appear for deposition in person in the U.S. despite residing in

17  Pakistan; telephonic deposition would not suffice); *Rehau, Inc. v. Colortech*, 145

18  F.R.D. 444 (W.D. Mich. 1993) (telephonic deposition justified where witnesses

19  were located in Europe); *Cressler v. Neuenschwander*, 170 F.R.D. 20 (D. Kan.

20  1996) (noticing party requested to take deposition telephonically). Moreover, the

21  rule followed by the cases is that the party seeking the deposition telephonically

22  must first give "***a legitimate reason for taking a deposition telephonically***," and

23  only after it has done so does the burden shift to the opposing party "to establish

24  why the deposition should not be conducted telephonically." *Jahr v. IU Intern.*

25  *Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986) (noticing party requested to take

26  deposition telephonically, emphasis added).  Here, Plaintiffs have offered no such

27

28

---

[7] Plaintiffs also seek to ensure they will not be precluded from offering as evidence the documents they will be questioned about at the re-depositions.  As set forth above, CBSI has limited its request for sanctions such that this is not an issue.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

justification, it is Plaintiffs' misconduct that is requiring the depositions to resume, and CBSI has established that proceeding telephonically or by videoconference has already impeded its ability to depose the Plaintiffs.  (Dkt. 177 at ¶ 15.)

Finally, although Plaintiffs' supplemental statement is silent on this point, Plaintiffs should be ordered to bear the costs of these depositions, including the costs of the reporter and videographer, counsel's travel expenses, and CBSI's reasonable attorney fees.  *Harris v. New Jersey*, 259 F.R.D. 89, 94-95 (D.N.J. 2007) (permitting re-deposition where party produced documents after discovery closed, fees and costs to be borne by the deponent); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 389 (W.D. Tenn. 1999) (re-opening deposition of witness who produced documents the day after deposition, and awarding expenses, including attorneys' fees, associated with re-deposition**).**

## C.   Evidentiary Sanctions For Repeated Failures To Respond to Written Discovery As Ordered

Rule 37(b) of the Federal Rules of Civil Procedure empowers this Court to, *inter alia*, "deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters" as a sanction for Plaintiffs' violation of its discovery orders.  *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (finding preclusive sanctions appropriate after "18 months of delays and failures to comply with court-ordered discovery").  Such sanctions are necessary and appropriate here, where Plaintiffs have ignored two court orders to provide complete responses to CBSI's interrogatories and thus deprived CBSI of the chance to prepare a defense to the surprise information Plaintiffs may seek to introduce on these subjects.  Accordingly, CBSI believes the following sanctions should be imposed on any Plaintiff who remains in the action.

### 1.   Interrogatories Nos. 1-4

**Interrogatory No. 1** seeks facts regarding ownership and registration of the asserted copyrights.  Kelly Decl. Ex. C at 5.  Plaintiffs should be precluded from

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

introducing any evidence to show any fact that they list as "unknown at this time" (or leave blank) in their response to Interrogatory No. 1.

**Interrogatory No. 2** seeks facts regarding direct infringement. *Id.* at 6. Plaintiffs should be instructed to supplement their written responses to specifically identify, by Bates number, any document produced in discovery that reflects alleged direct infringement, on the Pirate Bay or elsewhere. Plaintiffs should then be precluded from introducing or relying on any evidence of direct infringement other than CBSI-produced IP addresses or the specifically-identified documents.

Plaintiffs also produced a collection of approximately 250 music files on August 30, 2013, which their counsel did not identify until a meet and confer on September 4, 2013 as content downloaded by an unidentifed consultant of Baker Marquart purportedly using P2P software obtained via a link on download.com. Kelly Decl. ¶ 19. This late production denied CBSI an opportunity to investigate the provenance of these files. CBSI therefore requests either that it be permitted to depose the consultant about his or her use of download.com and subsequent use of P2P software, or that Plaintiffs be precluded from admitting these files or testimony about them.

**Interrogatory Nos. 3 and 4** seek Plaintiffs' contentions of which statements and conduct by CBSI allegedly induced infringement. Kelly Decl. Ex. C at 7, 9. Plaintiffs should be precluded from introducing any evidence of ostensible inducement that they did not *specifically* identify in their responses. For that purpose, Plaintiffs should be instructed to supplement their responses to identify by Bates number three types of articles or reviews: those (1) previously identified by name, date, and author in their prior responses, (2) submitted in connection with Plaintiffs' preliminary injunction motion, or (3) used as a deposition exhibit with any CBSI witness. Plaintiffs should then be precluded from introducing any other documents or testimony about inducement.

To be clear, CBSI requests that the Court preclude Plaintiffs from relying on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

any document in the 3,000-page range of documents referenced in their interrogatory responses as Bates range P001282 – P004158, unless that document falls into one of the three categories above. That range of documents includes LinkedIn articles, Wikipedia pages, and numerous other unaccused websites, and seems calculated to waste CBSI's time rather than apprise it of Plaintiffs' contentions. The Court already found this document dump did not constitute an appropriate response to this interrogatory. Dkt. 134 at 72:20-73:4 (requiring narrative responses to these interrogatories and instructing Plaintiffs, "don't use Rule 33(d) – in other words, articulate what the responses are. Don't just refer them to documents or invoke 33(d).").

### 2. Interrogatories Nos. 6-13

**Interrogatory Nos. 6-9** relate to Plaintiffs' knowledge of infringement and of CBSI's activities, which information CBSI requires for its affirmative defenses, such as laches and the statute of limitations. This information is exclusively in Plaintiffs' hands, so Plaintiffs' failure to respond threatens to deprive CBSI of facts essential to its defenses. Accordingly, CBSI requests that the Court impose a presumption that, if infringement is proven, each Plaintiff who failed to supplement his or her responses as ordered shall be presumed to have known before November 2008 (the limitations period) of such infringement by software available through links on download.com, and chose to take no action about it.

**Interrogatory Nos. 10 and 11** seek identification of business managers and others likely to possess discoverable information. CBSI requests that the Court prohibit Plaintiffs from introducing any evidence obtained from persons they should have identified pursuant to these interrogatories and did not.

**Interrogatory No. 12** seeks information about damages. CBSI requests that Plaintiffs be precluded from introducing any evidence of actual damages that they did not disclose in response to these interrogatories (including amounts of royalties received), and that, apart from already disclosed evidence, the Court presume actual

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

damages were *de minimis* as relevant to assessing statutory damages.

**Interrogatory No. 13** seeks information about Plaintiffs' reasons for denying various admissions in CBSI's requests for admissions; it is moot.

### 3. Requests for Admission

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Accordingly, CBSI requests that the Court deem admitted all requests for admissions to which Plaintiffs failed to respond as ordered.

### D. Attorneys' Fees

Rule 37(b) requires an award of expenses incurred in seeking compliance with a discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) ("The party against whom an award of expenses is sought has the burden of showing the special circumstances that make his or her failure to comply substantially justified"); *see also David v. Hooker, Ltd.*, 560 F.2d 412, 419 (9th Cir. 1977). Plaintiffs have made no showing of any exculpatory circumstance that justifies their continuing failure to comply with either the June 11 or August 13 orders. CBSI respectfully requests the Court award its fees and expenses incurred in moving to compel compliance and related briefing and argument. Upon request CBSI will supply the Court with documentation of its fees and expenses expended on these months-long efforts.

## V. SPENCE SHOULD BE ORDERED TO PRODUCE DOCUMENTS HE HAS WRONGFULLY WITHHELD AND SIT FOR RE-DEPOSITION

### A. Production of Documents Wrongfully Withheld

Spence should be ordered to produce each of the documentary items uncovered at his deposition and demanded prior to the discovery close. These categories of documents are described in detail in CBSI's September 12

Fenwick & West LLP
Attorneys at Law
San Francisco

1   Supplemental Statement (Dkt. 176 at 9); Simon Decl. [Dkt. 163-1] Ex. 20.  Spence

2   should also be required to produce ███████████████████████████████████████

3   ██████

4      **B.    Privilege Issues**

5      Spence and Plaintiffs should be ordered to produce all communications with

6   any Plaintiff to which no attorney was a party, for three independent reasons.[8]

7      **First,** Plaintiffs have simply waived their privilege in these communications

8   by never producing their own privilege logs.[9]  Further, as Mr. Spence's log remains

9   completely unreliable and does not substantiate a basis for a privilege claim, it

10   should not prevent production.

11      **Second,** no common interest exists for communications between parties

12   outside the presence of an attorney.  Dkt. 163 at 4. Plaintiffs have not proven—or

13   even tried to prove—that any particular communications between themselves and

14   Spence contained such information.

15      **Third,** Plaintiffs' attempt to conjure up a privilege by recharacterizing

16   Mr. Spence as counsel's "consultant" is neither substantiated nor credible.  While

17   Plaintiffs rely exclusively on Mr. Spence's testimony for this characterization,[10] his

18   credibility is further damaged by his false deposition testimony about the written

19   agency agreements.  Moreover, these agreements further corroborate that the role

20   he played was as agent for the Plaintiffs ████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ───────────────

[8] CBSI requests that any documents already in the possession of Plaintiffs counsel
24   (including those on privilege logs) be produced within seven days, and any other
documents not yet in their possession be produced with 10 days.

25   [9] The record demonstrating that the log produced by Mr. Spence was only his
26   materials, not other Plaintiffs', is collected in CBSI's Supplemental Report, Dkt.
176, at 6-7.

27   [10] Plaintiffs' counsel have never attested to any such consultancy, only Mr. Spence
28   did so.  *See* Anstett Decl. Dkt. 99.  Indeed, the backdated consulting agreement
Spence produced was not even signed by counsel.  Simon Decl. Ex. 20.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████ Given the careful documentation of

4 Spence's agency role, it defies credulity to claim he became a "consultant" within

5 the attorney client privilege without any terms or documentation.

6      In all events, even Mr. Spence does not claim that any consultancy existed

7 before an unidentified date in October, 2011. Ex. N at 154:20-156:24. Thus, as to

8 communications before that date—of which there are over 28 pages logged (Simon

9 [Dkt. 163-1] Ex. 14 at 138-165) —there is no possible argument that Spence was

10 acting other than as a party or party's agent in this action.

11      **C.**    **Further Deposition of Spence**

12      Plaintiffs' failure to provide the various documents requested have prevented

13 CBSI's inquiry at depositions. As examples, withholding the agency agreements

14 precluded CBSI from inquiring about ████████████████████ with the various

15 Plaintiffs who have been revealed, only after discovery closed, to be parties to such

16 agreements. The withholding of these agreements also prevented CBSI from

17 inquiring as to whether, as the agreements contemplated, ████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ████████████████████████ Kelly Decl. ¶ 11 & Exs. G-K.

21      More fundamentally, the withheld evidence as to Mr. Spence's and Mr.

22 David's roles is critical to prove CBSI's theory of this case: *i.e.*, that this is a

23 meritless lawsuit, trumped up by Mr. David to retaliate against CBS, in which

24 David has recruited Mr. Spence to procure Plaintiffs who have suffered no injury

25 and do not even own the copyrights that Mr. Spence falsely registered on their

26 behalves.[11] In addition to the documents Plaintiffs concealed until the end of

27 ─────────────────────

28 [11] At deposition, Mr. Spence repeatedly testified that he registered copyrights for Plaintiffs who had not authorized the registrations (Kelly Decl. Ex. N at 187:20-188:5), for compilations of works that never existed as such (*Id.* at 165:10-166:18),

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   discovery, CBSI's theory may be substantiated by the documents still withheld,

2   including Spence's phone records, voicemails, and texts with Mr. David; invoices

3   and payments by David to Spence for services[12]; and the hundreds of

4   communications by Spence with other Plaintiffs.  As the Court's prior orders

5   recognized, the motivations behind Plaintiffs' prosecution of this lawsuit are

6   relevant and discoverable, and the factual basis for Plaintiffs' claims cannot be

7   hidden behind privileges.  Both by withholding documents and giving overbroad

8   instructions that witnesses not answer *any* questions regarding Mr. Spence's

9   discussions with Plaintiffs,[13] they have sought to obscure this critical information.

10         Finally, although Judge Fischer on September 19 denied Mr. Spence's

11   motion to "amend the caption" to escape this lawsuit, it can be expected that he will

12   next make an actual motion to dismiss his claims, which, if granted, may render

13   him unavailable at trial.  Adequate time should be allowed to question Mr. Spence

14   at deposition, which CBSI suggests be up to 4 additional hours.

## VI.   ALKI DAVID COMMUNICATIONS WITH PLAINTIFFS' COUNSEL

16         As explained above, Alki David's continuing control and sponsorship of this

17   lawsuit is a key fact explaining the existence and motivation for this action. In their

18   Response to CBSI's Supplemental Status Conference Statement, Plaintiffs

---

20   for works already registered in the name of other entities (*Id.* at 171:21-173:3) and
     in registrations that failed to disclose all authors (*Id.* at 167:2-168:17; 170:21-
21   171:15).

22   [12] Plaintiffs' assertion that they do not know if invoices exist is baffling.  Spence's
     privilege log repeatedly describes "Email re copyrights with invoice for copyright
23   services attached."  Simon Decl. Eh. 14 at 46, 48 [Dkt. 163-15 at 183, 185].
     Defendants' requests for such invoices date not just from August 29 but from at
24   least August 18—more than a week before his second sitting for deposition.  *Id.* Ex.
     17 [Dkt. 163-18].

25   [13] *See e.g.,* Kelly Decl. Ex. N at 28:10-21; Ex. O at 9:20-10:10) (counsel instructs
26   "do not reveal specific conversations as to you and Mr. Spence, because we're
     going to be objecting on the basis of joint prosecution privilege, attorney-client
27   privilege throughout the day."); Ex. P at 11:16-21 ("I'm going to object; privileged,
     and instruct you that you should not be testifying or answering as far as any
28   conversation that you've had with Mr. Spence or myself.  It's privileged.")

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

submitted a seven page opposition to production of Mr. David's communications with Plaintiffs' counsel about this case. (Dkt. 180 at 1-7).  Yet Plaintiffs never dispute that, having withdrawn from this action and dismissed all claims in it, Mr. Davis shares no common interest with the Plaintiffs.  *Id.*  Instead, Plaintiffs argue that communications between Mr. David and counsel for Plaintiffs are irrelevant; that CBSI has demanded these documents too late; and that Mr. David's other cases with the same counsel allow his role in *Plaintiffs' case* to stay hidden.  Not so.

Plaintiffs claim that the requested records are irrelevant because there is no evidence that Mr. David is "directing or orchestrating the litigation strategy for this lawsuit."  Response (Dkt 180) at 5:25.  The Response ignores the FrostWire documents, which show Mr. David seeking evidence "we" want to advance this case, through a subpoena issued in this case.  Simon Decl. [Dkt. 163-1] Ex. 10.  The Response also mischaracterizes the facts revealed by the Skype log's June 18, 2013 entry.  Plaintiffs argue:

> Mr. David's statement that CBSI perjured itself in another case is unremarkable—nothing in the Settlement Agreement prevents Mr. David from sharing his feelings regarding about [sic] a public hearing with Mr. Spence or anyone else.  Nor does the vague statement "so next time around we are going to reveal all this" imply that Mr. David is directing or orchestrating the litigation strategy for this lawsuit.

Dkt. 180 at 5:21-26.  Contrary to Plaintiffs' argument, Mr. David's statement in the Skype log was not about "another case." ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Furthermore, Mr. David's statement on June 18 that CBS "at the last hearing totally perjured themselves . . . so next time around we are going to reveal all this" (Simon Decl. [Dkt. 163-1] Ex. 18) is not, as Plaintiffs' claim, some "vague statement" of his "feelings."  This accusation is exactly what Plaintiffs

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

proceeded to implement as strategy *that very day*, when Mr. Anstett wrote:

> CBSI has intentionally misrepresented its conduct with respect to P2P
> Software, to Plaintiffs and the Court, in declarations submitted in conjunction
> with its opposition to Plaintiffs' motion for preliminary injunction, arguments
> in open court during the motion to dismiss hearing, discovery responses, and
> a number of conversations with Plaintiffs' counsel.

Dkt. 108 Ex. R at 1 (Anstett Letter of June 18).[14]   Counsel's implementation of
exactly what Mr. David advised "we are going to reveal" reflects David's
participation and control over an action.  Indeed, that it was Mr. David who shared
this news with Mr. Spence (who responded "Oh, Okay!"), rather than the other way
around, shows who has been really running this show.  Simon Decl. [Dkt. 163-1]
Ex. 18 at 329.

Plaintiffs' assertion that CBSI first raised this issue at the September 10
hearing and after the close of discovery (Dkt. 180 at 2) is also demonstrably false.
CBSI specifically demanded production of David's communications with Baker
Marquart in an August 29, 2013 letter, as well as in the September 6 Status Report.
Simon Decl. [Dkt. 163-1] Ex. 21; Dkt. 163 at 6.  Why then?  Because until CBSI
obtained the long-withheld Skype log and FrostWire records just days earlier, CBSI
lacked this substantiation that Mr. David was, contrary to his agreement, still
controlling this litigation.  That Plaintiffs had not disclosed this evidence prior to
the June and early August discovery hearings does not warrant denying production
now that there is evidence of Mr. David's control.

Plaintiffs contend that Mr. David's employment of Baker Marquart for other
cases not involving P2P file sharing, or for representation with respect to
Mr. David's role as a "potential deponent" in this action, somehow insulates all
communications about this action from discovery.  Dkt. 180 at 7.  This argument

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[14] Plaintiffs' accusations of false representations are absolutely false, as CBSI has
demonstrated elsewhere.  Dkts. 106, 108 & Ex. S.

would let the tail wag the dog.  Even if Baker Marquart has conferred with David about a deposition that CBSI never sought (Simon Supp. Decl. [Dkt. 177] ¶ 14), any specific communications about depositions could be identified, logged and/or redacted.  But this would not insulate the communications unrelated to that deposition, such as communications participating in the strategy for Plaintiffs' case. Plaintiffs have expressly admitted that communications with Mr. David not about his deposition have occurred.  *Id.*  Given the lack of any common legal interest, there is nothing privileged about those communications.[15]

## VII.   CONCLUSION

For the foregoing reasons, CBSI respectfully requests that the Court dismiss the 43 Plaintiffs who have not produced a single document and/or appeared at their own depositions; issue the evidentiary sanctions and order re-depositions and further responses and production as requested herein with respect to the Plaintiffs who remain in the case; and award CBSI its attorneys' fees in connection with its motions to compel.

Dated:  September 20, 2013          FENWICK & WEST LLP


                                    By:  ___*/s/ Jennifer Kelly*_____
                                         Jennifer Kelly

                                    Attorneys for Defendant
                                    CBS INTERACTIVE INC.

_____
[15] Plaintiffs' contention that CBSI never requested these communications is also false.  Request No. 20, on which this Court compelled production, included all communications about CBSI and this lawsuit, which certainly include such communications with Mr. David.  Dkts. 65, 72.  Further, in request 58, CBSI expressly requested all communications with Mr. David.  The Court's order (in June) that such production could omit communications between Mr. David and his "former counsel" assumed that such communications were privileged while Mr. David was a party.  *Id.*  That ruling was also before the revelation of evidence that Mr. David is directing this litigation after any common interest ended.  Dkt. 72.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO